ADAM J. GUTRIDE (State Bar No. 181466)
SETH A. SAFIER (State Bar No. 197427)
GUTRIDE SAFIER LLP
835 Douglass Street
San Francisco, California 94144
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRIS CHAVEZ, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>        v.<br><br>BLUE SKY NATURAL BEVERAGE CO., a foreign corporation; HANSEN NATURAL CORP., a foreign corporation; HANSEN BEVERAGE COMPANY, a foreign corporation; AND DOES 1 THROUGH 10<br><br>    Defendants | Case No. CV-06-06609 (VRW)<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**REDACTED FOR PORTIONS OF PAGES 1-8, 10 AND 22**<br><br>DATE:        May 27, 2010<br>TIME:        10:00 am<br>CTRM:      Courtroom 6, 17th Floor<br><br>Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

I.  INTRODUCTION ................................................................................................................1

II. STATEMENT OF FACTS ..................................................................................................2

     A.  Summary Of The Defendants' Misleading, False And Deceptive Marketing........2

         1.  The Original Blue Sky Natural Beverage Co. Was Based In New Mexico. ..........................................................................................................2

         2.  Defendants Purchased Blue Sky To Control More Of The Natural Soda Sales In The Health Food Market. ...................................................3

         3.  Defendants Purchased The Assets Of The Blue Sky Natural Beverage Company And Moved Everything To California. .......................................3

         4.  After The Purchased, Defendants Engaged In A Six-Year-Long Scam To Make It Appear That Blue Sky Was Still A Small, Independent Company Based In New Mexico. ..........................................................4

         5.  Defendants Knew The Representations On The Cans And Website To Be False................................................................................................7

         6.  Defendants Changed Their Practices In Part After Receiving Notice of This Dispute................................................................................8

     B.  The Class Representative .........................................................................................9

     C.  Defendants' Omissions and Misrepresentations Are Material And Likely To Deceive. .................................................................................................................9

III. Procedural history ............................................................................................................11

IV. ARGUMENT....................................................................................................................11

     A.  Plaintiff's Claims Center On Unlawful Practices And Deceptive Advertising. ....11

     B.  Legal Standards For Class Certification ................................................................12

     C.  The Proposed Class Meets All Requirements of Rule 23(a) .................................13

         1.  The Proposed Class Is Sufficiently Numerous .........................................13

         2.  This Litigation Concerns Common Questions Of Law and Fact................14

         3.  Plaintiff's Claims Are Typical Of Class Members' Claims. .....................16

         4.  The Proposed Class Representative Will Fairly And Adequately Protect Class Interests ...............................................................................17

a.   The Representative Plaintiff Has No Conflicts Of Interest With Other Class Members...........................................................17

b.   The Representative Plaintiff Will Vigorously Prosecute This Action.........................................................................................18

c.   Gutride Safier LLP Will Continue to Vigorously Represent the Class..........................................................................................18

D.   The Requirements of Rule 23(b) Have Been Satisfied .............................19

1.   Common Questions of Law or Fact Predominate .........................19

a.   There Are No Individual Reliance Issues.........................................20

(1)   UCL Claim........................................................................20

(2)   CLRA Claim......................................................................20

(3)   Fraud Claim.......................................................................21

b.   California Law Is Applicable to All Class Members....................21

2.   A Class Action Is Superior ...........................................................22

a.   Class Members Have No Interest In Pursing Individual Litigation.............................................................................22

b.   There Are No Other Actions Pending.............................................23

c.   This Court is the Appropriate Forum for this Litigation...............23

d.   There Are No Manageability Issues ..............................................23

V.   CONCLUSION ...........................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) ....................................12

*Benson v. Kwikset Corporation*, 152 Cal. App. 4th 1254 (2007) ..................................................16

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)..................19

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..................................................24

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999).........................14

*Chern v. Bank of Am.*, 15 Cal. 3d 866 (1976) ..............................................................................14

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987)...................................................21

*Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197 (1983) ...............14

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ......................................14

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001)...........23

*Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D. Ariz. 1982)........................................12

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)....................................................................13

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007)...................................20

*General Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ........................................................................18

*Greenwood v. Compucredit Corp.*, 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010)..20, 22

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)........................................................13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. passim

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).......................................................16

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) .........................12, 13

*Hunter v. Up-Right, Inc.*, 864 P.2d 88 (1993)..............................................................................16

*In re CornerStone Propane Ptnrs. L.P. Sec. Litig.*, C03-2522 MHP, 2006 WL 1180267 (N.D. Cal. May 3, 2006) ......................................................................................................................13

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ...............................................21

*In re THQ, Inc. Secs. Litig.*, 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ...............................14

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009).....................................................................15, 20

*In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) .....................19, 24

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ........................................13, 17

*Kasky v. Nike,* 27 Cal.4th 939 (2002) ........................................................................12, 15

*Keilholtz v. Lennox Hearth Prods., 2010 U.S. Dist. LEXIS 14553* (N.D. Cal. Feb. 16, 2010)......21

*Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003)........................................14, 16

*Lymburner v. U.S. Fin. Funds, Inc.*, 2010 U.S. Dist. LEXIS 5081 (N.D. Cal. Jan. 22, 2010)......23

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603 (1992)........................20

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004)....................................................18

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..........................................................................12

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983)...............................................13

*Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482 (C.D. Cal. 2006) ..............................20

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ..................................................................13

*Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437 (N.D. Cal. 2009)................................13, 20

*Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003)...............................................24

*State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434 (2003)......................21

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..............................................................14, 17

*Steroid Hormone Product Cases,* 181 Cal. App. 4th 145 (2010) ..........................................15, 20

*Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931 (9th Cir. 2001)..........................................21

*Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971)......................................................................20

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) ...............................................21

*Yokoyama v. Midland Nat'l Life Ins. Co.*, 74 Fed. R. Serv. 3d 459 (9th Cir. 2009)....................12

## **STATUTES**

15 U.S.C. § 1125 ..............................................................................................................1, 12, 14

Cal. Bus & Prof. Code § 17200 ..................................................................................................11

Cal. Bus. & Prof. Code § 17203 .................................................................................................15

Cal. Health & Safety Code § 109935..........................................................................................12

Cal. Health & Safety Code § 110675.....................................................................................12, 14

## **RULES**

Fed. R. Civ. P. 23 ...................................................................................................................... passim

1

## **TREATISES**

2    3 Alba Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)..........................................13

3    7A Wright & Miller, Federal Practice and Procedure (2d ed. 1986)..........................................23

4    *Newberg on Class Actions* (3d ed. 1992)....................................................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 27, 2010 at 10:00 am, or as soon thereafter as the matter may be heard, in Courtroom 6, 17th Floor of the above-entitled court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff will, and hereby does, move for an order, pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying this action as a class action, appointing him class representative and appointing his counsel as class counsel.

Specifically, Plaintiff will and hereby does move this Court for the following:

(A)     To certify the following class:

All persons who, any time between May 16, 2002 and June 30, 2006, purchased in the United States any beverage bearing the Blue Sky mark or brand.

(B)     To appoint Plaintiff Chris Chavez as class representative;

(C)     To appoint the firm of Gutride Safier LLP as counsel for the class; and

(D)     To order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, proposed notice to the certified class.

This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the accompanying Declarations of Seth A. Safier and Dean Fueroghne, as well as the pleadings and papers on file in this action.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

This case concerns Defendants' false and deceptive labeling of Blue Sky natural beverages. Defendants are the Hansen Natural Corp. (collectively "Defendants" or "Hansen") and its subsidiaries. During the class period, each Blue Sky beverage can contained the legend "CANNED FOR THE BLUE SKY BEVERAGE COMPANY SANTA FE, NM 87501 USA" or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL BEVERAGE CO. SANTA FE, NM USA www.blueskysoda.com." (**REDACTED**

to the Declaration of Seth A. Safier In Support of Plaintiff's Motion for Class Certification ("Safier Decl.").) Each soda can also had "SANTA FE, NEW MEXICO" or "SANTA FE NM" printed on the front of the label. (Id., **REDACTED** The Blue Sky website further had in bold print in the center of the homepage, the line "**Santa Fe, New Mexico, U.S.A. (505) 995-976.**" (Id., **REDACTED**). But during the entire class period, the beverages were not made or canned in New Mexico, nor was the Blue Sky Beverage Company located there, nor, for that matter, was any "authority" over the canning exercised in Santa Fe or New Mexico. Indeed, two years before the class period began, Defendants had purchased the Blue Sky brand and moved all operations to Corona, California. Since that time, all authority over canning and other operations of Blue Sky has been controlled not by the "Blue Sky Beverage Company" or the "Blue Sky Natural Beverage Company" but by Hansen Beverage Company in Corona. Nowhere on the cans or website was Hansen mentioned. Defendants' misrepresentations and omissions violate federal and California law, including 15 U.S.C. § 1125; Cal. Health & Safety Code § 110675; and constitute false and deceptive advertising and unfair trade practices under California law. During the class period, Defendants sold more than $ **REDACTED** of the mislabeled beverages. (**REDACTED** Plaintiffs seek to certify a class of purchasers of the Blue Sky beverages from June 2002 to June 2006, to obtain restitution pursuant to Business & Professions Code § 17200, *et seq.* and other relief.[1]

---

[1] The Complaint proposed a class of "All persons who, any time on or after May 16, 2002, purchased in the United States any beverage bearing the Blue Sky mark or brand that indicated 'Santa Fe, New Mexico' or 'Santa Fe, NM' on the packaging." Complt ¶ 10. As explained below, discovery has revealed that all Blue Sky beverage cans and bottles had references to Santa Fe until at least June 2006. Plaintiff reserves the right to seek to amend the Complaint and/or expand the

## II.   STATEMENT OF FACTS

### A.   Summary Of The Defendants' Misleading, False And Deceptive Marketing.

#### 1.   The Original Blue Sky Natural Beverage Co. Was Based In New Mexico.

Blue Sky was founded in Santa Fe, New Mexico in 1980 by Marla Becker and Robert Black.  (Safier Decl. Ex. A (Sacks Depo. Ex. 7.)  The company was originally focused on fruit juices.  (Id.)  In 1983, it expanded to include natural soda.  (Id.)  On its website, Blue Sky New Mexico highlighted its New Mexico origins:

> We at Blue Sky Natural Beverage Co. in Santa Fe, New Mexico, design and produce a wide variety of Natural Beverages which are distributed throughout the United States and in select international markets.

> \* \* \*

> Our business started as Blue Sky Juice Company in 1980, expanding into soda pop in 1983. The idea was to supply a growing market with all natural, delicious, and convenient drink alternatives. With purpose, integrity and honesty, and the right products, Blue Sky has become a source of strength, and a launching pad for its founders/owners, Robert Black and Marla Becker. Blue Sky is the kind of family-owned business that Robert and Marla envisioned when they got married and moved to Santa Fe: a company with a variety of healthy products, management and business practices that reflect and develop their inner beliefs and outward commitments; profits to share with those in need and those doing things to improve our planet and its environment.

> **Santa Fe, New Mexico, U.S.A.**
> **(505) 995-9761**

(Id.; *see also* **REDACTED**)

The company was named for the "blue skies of New Mexico" and its distinctive soda cans reflected "the blue and gold of the New Mexico landscape."  (Paula Heeschen, "Beverages with a Natural Pop," In Business, Nov/Dec 1998 (attached as Safier Decl. Ex. C)).  Indeed, "for [Robert] Black, who had been in the meat business for 20 years in California, Santa Fe and natural foods offered a more relaxed business environment and an opportunity to offer customers good, healthy products."  (Id.)  The company was officially named the Blue Sky Natural Beverage Company and was registered with the New Mexico secretary of state as a New Mexico corporation with its principal place of business in Santa Fe.  (Id. Ex. D.)

---

class to include later purchasers, based on the continuing misrepresentation that control is being exercised by the Blue Sky Natural Beverage Company rather than Hansen.

**2.      Defendants Purchased Blue Sky To Control More Of The Natural Soda Sales In The Health Food Market.**

Defendants purchased the assets of Blue Sky New Mexico in order to

**REDACTED**

The Blue Sky beverages, with their small town, small company origins, were primarily positioned in the health food market.  (Id.; *see also* Declaration of Dean K. Fueroghne In Support Of Class Certification ("Fueroghne Decl.") Ex. H (showing stores where Blue Sky was sold in 2006).)  Even when being sold in the same stores, the beverages could be positioned differently; as explained in one internal document, "**REDACTED**

."  (Safier Decl. Ex. E).  Defendants liked the fit.  They could sell essentially the same product for more money in a different channel, and it would not cannibalize sales of Hansen sodas.  **REDACTED**  Defendants focused their advertising of Blue Sky on niche consumers in the natural and health food space, advertising through such magazines

**REDACTED**

.  (Fueroghne Decl. Ex. G; Safier Decl. Ex. F.)

**3.      Defendants Purchased The Assets Of The Blue Sky Natural Beverage Company And Moved Everything To California.**

In anticipation of purchasing the assets of Blue Sky, Defendants formed a new corporation, also known as the Blue Sky Natural Beverage Company, but which they incorporated in Delaware, and which they registered with the California Secretary of State as having its principal place of business in Corona, California. **REDACTED**                                        On September 20, 2000, the newly formed Delaware corporation entered into an agreement to purchase the assets of the New Mexico corporation.  (**REDACTED**)  Pursuant to that agreement, the New Mexico company would transfer all its goods, packaging, contracts, and trademarks and could no longer sell any beverages under the Blue Sky name.        **REDACTED** Defendants then moved all

the operations of the company to Corona, California. **REDACTED**).

**4.    After The Purchased, Defendants Engaged In A Six-Year-Long Scam To Make It Appear That Blue Sky Was Still A Small, Independent Company Based In New Mexico.**

The only downside to the purchase from Defendants' perspective was that, to maintain the existing sales base of Blue Sky sodas in the natural and health food marketplace, they also had to maintain the small town, small company, health food image of the Blue Sky beverages. It could not be known that the Blue Sky beverages were now no different from the more mainstream Hansen beverages. It also could not be revealed that the Blue Sky company was no longer a small company doing business in Santa Fe, New Mexico, but rather nothing more than a trademark held by a multi-billion dollar corporation doing business in Riverside County, California. Thus, as explained below, they engaged in artful scam to make it appear as if Blue Sky soda continued to be produced by, and for, an independent company based in Santa Fe, New Mexico. The scam included the following actions.

First, they continued to include on the side of the can or bottle of every Blue Sky beverage (including sodas, sport drinks, and energy drinks) the legend "CANNED FOR THE BLUE SKY BEVERAGE COMPANY SANTA FE, NM 87501 USA" or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL BEVERAGE CO. SANTA FE, NM USA www.blueskysoda.com." **REDACTED** Although they redesigned the cans in 2004 or 2005, these legends remained. Even worse, they were *added* to new beverages that had not existed before the acquisition, including the energy drinks, green-tea based sodas, sport drinks, natural sodas with real sugar, and lite sodas. (**REDACTED**

Second, on the bottom of every Blue Sky soda can, in the same location that other premium beverages like sparkling water, wine, or micro-brewed beers use to state their place of origin, they prominently continued to state, "**SANTA FE, NEW MEXICO**" or "**SANTA FE NM**." (Safier Decl. **REDACTED**   ); Fueroghne Decl. ¶ 32.) Indeed, when they redesigned the cans in 2004 or 2005, they not only left the "Santa Fe" legend on the cans, but tried to cement the connection in consumers' minds to Santa Fe by including a background picture of the Sangre de Cristo mountain range outside of Santa Fe and adopting a Southwestern Native American themed

design.  (**REDACTED**  Fueroghne Decl. ¶ 21.)  Moreover, they *added* the "Santa Fe" legend to packaging for new lines of beverages—such as the green tea-based sodas, natural sodas with real sugar, and lite sodas—that had not even existed before the acquisition and thus had *never* been connected to Santa Fe or New Mexico. (Safier Decl. Ex A. (**REDACTED**.))[2]

Their CEO admitted that


**REDACTED**


Defendants' CEO also admitted that **REDACTED**


Defendants' SEC filings further make clear that the purpose of this decision was to "differentiate" the Blue Sky beverages to induce sales.  Their 10-K says that "We believe that one of the keys to success in the beverage industry is differentiation, such as making Hansen's products visually distinctive from other beverages on the shelves of retailers. We review our products and packaging on an ongoing basis, and, where practical, endeavor to make them different, better, and unique." (**REDACTED**; *see also* Safier Ex. S.)

Third, Defendants continued to maintain on the Blue Sky website information not only about the humble origin of Blue Sky but also, in bold print in the center of the website homepage, the lines "**Santa Fe, New Mexico, U.S.A. (505) 995-9761**".  (Id. Ex. A. (**REDACTED** ).  The website also continued to state:

> Our business started as Blue Sky Juice Company in 1980, expanding into soda pop in 1983. The idea was to supply a growing market with all natural, delicious, and convenient drink alternatives. With purpose, integrity, honesty, and the right products, Blue Sky has become a source of strength, and a launching pad for a variety of healthy natural products. Our management and business practices reflect and develop our inner beliefs and outward commitments: profits to share

---

[2] In interrogatory answers, Defendants had falsely stated that the product labels did not change at all from the time of acquisition until the receipt of Plaintiff's demand: (HBC 2d Supp. Resp. to Interrogatory 8, attached as Safier Decl. Ex. I.)

with those involved in improving our planet and its environment.

(Safier Decl. Ex. H.)  They kept this information on the home page despite making a host of other changes to this page and other pages of the website, including adding new products and promotions and redesigning the website navigation.  (Id. **REDACTED**

Upon introducing the Blue Sport beverages in 2006, they further increased the perceived connection to Santa Fe on the website by superimposing the "Blue Sky" logo on a large picture of local landmark Camel Rock.  (Id. Ex. H & ¶ 7.)   At no time was any mention made of Hansen.  (Id. Ex. H.)

Fourth, Defendants paid the New Mexico phone company and a local UPS store to secretly forward all calls and mail to Corona.  (Id. **REDACTED**                    Ex. I (HBC 2d Supp. Resp. to Interrogatory No. 12.)  The forwarding occurred **REDACTED**

Even in 2005--more than four years after the acquisition--when Defendants discovered

**REDACTED**

.[3]

Fifth, Defendants engaged in targeting advertising designed to reinforce the connection between Blue Sky and New Mexico and to hide the connection to Hansen.  For example, Defendants **REDACTED**

Fueroghne Decl. Ex. F.  In an advertisement to the trade press highlighting this FSI campaign, Defendants stated, **REDACTED**

(Id. (emphasis added).)  Defendants also ran an advertisement campaign to introduce the

---

[3] When asked why the old phone number was kept,

**REDACTED**

This hardly explains, however, why the number on the website could not be changed—even more than four years later—or why the *cans* had to have a false address.  Moreover, this statement contradicts **REDACTED**

new tea sodas in 2005 in magazines such as **REDACTED**, which were done in connection with the

Natural Journeys Yoga company, and which had the tag line "East meets Southwest…Tea meets

Soda…Mind & Body meet Spirit." (Id. Ex. E.)  As Mr. Fueroghne has explained, "Santa Fe, New

Mexico is well-known by the public, both in the United States and internationally, as a center for

the lifestyle attributes of good health and fitness. Santa Fe has a large holistic and wellness

community and following.  Marketing the connection between a healthy and fit lifestyle draws a

direct connection between Santa Fe, New Mexico and Blue Sky and the natural products they

produce." (Id. ¶ 23.)

> **5.** **Defendants Knew The Representations On The Cans And Website To Be False.**

Defendants' CEO has admitted that as far as he knows, at the time these representations

were made

> **REDACTED**

He also admitted that all authority over the canning of the beverages was **REDACTED**

He further admitted that he

was aware of

> **REDACTED**

In answers to interrogatories, Defendants made perfectly clear that they not only have no

connection to New Mexico, but that Hansen Beverage Company, not Blue Sky Natural Beverage

Company, exercises all "authority" over the canning of the Blue Sky-branded products.  Both

companies were asked to "Please state, set forth and describe in detail, the names, job titles, job

descriptions and current and former contact information for all DEFENDANT'S employees,

contractors, agents, subagents or other persons or entities who canned or were involved in or

otherwise exercised any CANNING AUTHORITY over BLUE SKY BEVERAGES from

September 1, 2000 through the present."  Hansen Beverage Company answered by giving a list of

seven persons who were "employee(s) of Hansen Beverage Company" and three outside

contractors.  Blue Sky answered that "the entity at whose direction canning occured under license from BLUE SKY was Hansen Beverage Company, a party to this lawsuit....BLUE SKY did not have employees or other contractors involved in the process."[4]  Moreover, both companies were asked "Other than the advertising, sale and distribution of your products in New Mexico, set forth and describe in detail any and all contacts YOU have had with New Mexico since January 1, 2002." Hansen Beverage Company answered only that it had provided support to three charities in New Mexico.  (HBC 2d Supp. Resp. to Interrogatory No. 15, attached as Safier Decl. Ex. I.)  Blue Sky answered, "None."  (Blue Sky Natural, 2d Supp. Resp. to Interrogatory No. 15, attached as Safier Decl. Ex. V.)

### 6.   Defendants Changed Their Practices In Part After Receiving Notice of This Dispute.

Sometime after June 2006, Defendants finally made a decision to change the legend on the sides of the cans to state "CANNED FOR THE BLUE SKY NATURAL BEVERAGE COMPANY CORONA, CA 92882 USA."  **REDACTED**                          ); id. Ex. L.)  Initially, Defendants

**REDACTED**


)

                                                                                      To date, however, Defendants still have not changed the cans to state that they are actually canned for the Hansen Beverage Company.

Defendants' CEO explained that the decision to remove the Santa Fe information was made

**REDACTED**

                                                                                      This response begs the question.  If it really did not "make a difference," then why did Defendants choose to dupe its customers for the prior six years?  And why do the cans still imply that there is an

---

[4] Despite a request for the alleged "license," none was produced.  (Safier Decl. ¶ 25.)

entity called Blue Sky that has some role in the process?[5]

**B.    The Class Representative**

Plaintiff is a native of New Mexico.  (Declaration of Chris Chavez In Support of Class Certification ¶ 2.)  He has frequently purchased a variety of Blue Sky Beverages since he was a child.  (Id. ¶ 3.)  In or about August 1999, Plaintiff relocated to California.  (Id. ¶ 2.)  Since that time, he continued purchasing Blue Sky Beverages due to the fact that he saw and believed the statements on the front of the cans referencing Santa Fe, New Mexico and on the sides of the cans referencing "Blue Sky Beverage Company, Santa Fe, NM."  (Id. ¶ 5.)   At least one of these purchases during the class period was made at the Berkeley Bowl, a market specializing in whole and natural foods.  (Id. ¶ 4.)

Plaintiff last purchased Blue Sky soda in the summer of 2003 at a café in San Francisco, California.  (Id. ¶ 4.)   Plaintiff would not have purchased Blue Sky beverages had he known that they had no connection to New Mexico and were under the control of Hansen.  (Id. ¶ 5.)

**C.    Defendants' Omissions and Misrepresentations Are Material And Likely To Deceive.**

Plaintiff's expert, Dean Fueroghne, an advertising and marketing professional for over 40 years, has explained that the misrepresentations about Blue Sky's connection to Santa Fe and omissions about the true connection to Hansen were material and likely deceptive to reasonable consumers.  (Fueroghne Decl. ¶¶ 1, 37.)  As he explained, "[t]he American marketing system is a brand-based methodology where our free-market environment is not a battleground for products, but rather a battleground for brands.  The American consumer views the brand as the product and, in fact, uses the brand to distinguish one company's products from another.… The Blue Sky brand promoted very effectively the fact that it is a product by a small independent company in Santa Fe, New Mexico.  The perceived "small company" feel and geographic connection, and what they stands for in the mind of the consumer, promotes a uniqueness in the marketplace.  All of Blue

---

[5] Interestingly, Defendants continue to use the Southwestern tribal design and drawings and images of Pueblo-type buildings and mountains on their cans and website.  *See* www.drinkbluesky.com (last visited April 21, 2010).

Sky's marketing focuses around building a sense of uniqueness based in large part on the mystique of its origins and location.…By purchasing their products consumers invest in the brand, and expect to get what they pay for. In Blue Sky's case, they do not." (Id ¶¶ 28-29.)

Fueroghne explained that the misrepresentations were "particularly central considering the market niche in which their beverages compete. These are high-end, 'natural' and 'organic' beverages that are directed toward a particular consumer who seeks out such products. They are distributed and sold primarily through natural foods markets, rather than large supermarkets or convenience stores… They are advertised in magazines such as **REDACTED**

These consumers seek out qualities like origin, quality of ingredients, company ethics and morals, and manufacturing processes, as all being valued elements of the brand.  Consumers for niche products tend to be substantially more motivated by smaller local manufacturers who exemplify their locale and origin.  In fact, they are a symbol of the part of the country they originate from."  (Id. ¶ 32.)  As examples of this marketing and purchasing behavior, Fueroghne cited specific other products such as micro-brewed beer, sparkling waters, wines, and juices.  (Id.).

Fueroghne also explained that the maintaining the "Blue Sky" identity and "Santa Fe" connection was important to reassure customers that the Hansen acquisition had not changed anything:

> Maintaining continuity in packaging, and through all advertising and marketing is extremely important when transitioning an established brand to a new owner. Consumers are leery of change, especially when they follow a brand that they have a connection with. When a company is purchased by a larger entity, customers naturally anticipate that the product will change (usually for the worst). A company buy-out typically (in the mind of the consumer) equates to a greater focus on profit and a lesser focus on quality, reliability and value. … Hansen did an effective job of maintaining the consistency of the Blue Sky brand through the purchase of the company, and therefore lessening (or obfuscating) any negative impact on consumer loyalty, and therefore sales. However in doing so, they perpetuated the misconception in the mind of the consumer that Blue Sky was (still) a product made by a small, independent company closely connected to Santa Fe, New Mexico.

(Id. ¶ 22.)[6]

---

[6] Fueroghne's conclusions are borne out by anecdotal evidence from other consumers.  For example, one website posting in 2006 Blue Sky consumers touted a New-Mexico themed restaurant in California, mentioning that "Selection of native New Mexcian [sic] products such as Blue Sky soda was quite a surprise." Safier Decl. Ex. U.  Another 2006 contributor to a website blog regarding Albuquerque, New Mexico's cultural scene commented that

III.    **PROCEDURAL HISTORY**

Plaintiff provided Defendants notice of their wrongful conduct in a letter dated March 30, 2006.  On or about May 16, 2006, Defendants agreed in writing to toll the statutes of limitations applicable to this action for all members of the Class until such time as either party terminated the agreement in writing.  (Safier Decl. Ex. N.)  On or about September 21, 2006, after mediation attempts failed, Defendants terminated that agreement.  (Id. Ex. O.)  This lawsuit followed.

In his complaint, Plaintiff alleges that Defendants violated the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"); California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"); and the California Legal Remedies Act, Cal. Civ. Code § 1750 et seq. ("CLRA").  Plaintiff also alleges that Defendants committed fraud, misrepresentation and/or deceit.  He brings all claims on behalf of himself and a proposed class of similarly situated persons.

IV.    **ARGUMENT**

**A.    Plaintiff's Claims Center On Unlawful Practices And Deceptive Advertising.**

A UCL claim requires proof of "unfair competition" which includes "any unlawful, unfair or fraudulent business act or practice" and any "unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200.  Here, Plaintiff's UCL claims center on "unlawful...practice[s]" and "deceptive...advertising."  The conduct is "unlawful," in that it violates the Lanham Act, which prohibits any false designations of origin, or false or misleading description or representation of fact that in any "commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities...."  15 U.S.C. § 1125.  It is also unlawful in that it violates California Health and Safety

---

One thing that we get in New Mexico that you can't get in other places (at least not most other places) and that's Blue Sky sodas.

***

It used to be pretty NM--only, though--it's produced in Santa Fe, it used to be difficult (or at least expensive) to get it in ABQ. I guess they've gotten more widespread lately--good, our state sure as hell needs the money. (posted 4/1/06).

(Complt. ¶ 37; Safier Decl. ¶ 22.)

Code section 110675, which states that "Any food is misbranded if it is in package form, unless it bears a label containing…. The name and place of business of the manufacturer, packer, or distributor." Cal. Health & Safety Code § 110675(a); *see also* id. § 109935 ("food" defined to include "drink").[7] The advertising is untrue because in fact the beverages were not canned for or under the authority of any entity in New Mexico, and it was deceptive because "members of the public are likely to be deceived." *Kasky v. Nike*, 27 Cal.4th 939, 951 (2002). These facts of false and deceptive advertising also form the basis of the FAL, CLRA, and fraud claims.

### B.   Legal Standards For Class Certification

Class actions in the Ninth Circuit are favored. They are particularly appropriate in instances where, like here, individual damages are small. *See, e.g., Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"); *quoting Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607, 610 (D. Ariz. 1982); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) (holding that class certification by the district court was appropriate because litigation costs would dwarf potential recovery by members of the class if forced to pursue actions individually.)

The decision regarding whether to certify a class is committed to the discretion of the district court. *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 74 Fed. R. Serv. 3d 459 (9th Cir. 2009); *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). Any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to class members. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964).

A class action must satisfy all four requirements in Rule 23(a) of the Federal Rules of Civil Procedure: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties

---

[7] The conduct also appears to violate 21 C.F.R. § 101.5, which governs labeling of food and beverage items. Plaintiff will not invoke this regulation, however, if doing so would preempt his UCL or other claims.

are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008), *quoting* Fed. R. Civ. P. 23(a).

In addition, the proposed class must also satisfy at least one of the three subdivisions of Rule 23(b).  *See id.*, 536 F.3d at 978 n.1.  As demonstrated below, the proposed Class satisfies Rule 23(b)(3), as "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b).

Although the plaintiff bears the burden of satisfying Rule 23, *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996), the requirements of Rule 23 "should be liberally construed." 3 Alba Conte & Newberg, *Newberg on Class Actions* §7.20 (4th ed. 2002).  "Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage." *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983), citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *see also In re CornerStone Propane Ptnrs. L.P. Sec. Litig.*, C03-2522 MHP, 2006 WL 1180267 (N.D. Cal. May 3, 2006) ; *Plascencia v. Lending 1st Mortgage*, 259 F.R.D. 437, 442 (N.D. Cal. 2009).

## C.  The Proposed Class Meets All Requirements of Rule 23(a)

### 1.  The Proposed Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable" does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *See Harris*, 329 F.2d at 913-14. "Where a class is large in numbers, joinder will usually be impracticable.  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).  The exact size of the class need not be known as long as general knowledge and common sense indicate that the class is sufficiently numerous.  *Id.*

Defendants have admitted that they have sold during the proposed class period in excess of $20 million worth of Blue Sky beverages, more than 500,000 cases per year.  (Safier Decl. Ex. A

1   (Sacks Depo. 140:8-23); ¶ 15 & Ex. P-Q (Sacks Depo. Ex. 16-17).)  Joinder of all purchasers is

2   clearly impracticable.

3          **2.       This Litigation Concerns Common Questions Of Law and Fact**

4          Like all the requirements of Rule 23(a), the commonality requirement is to be construed

5   permissively.  *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  "All questions of fact

6   and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent

7   factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal

8   remedies within the class."  *Id.*, *quoting Hanlon*, 150 F.3d at 1019-1020.  The commonality

9   requirement may be satisfied if the claims of the prospective class have even one significant issue

10  common to the class.  *See, e.g., Hanlon*, 150 F.3d at 1019-1020*; see also In re THQ, Inc. Secs.*

11  *Litig.*, 2002 WL 1832145 at *11 (C.D. Cal. Mar. 22, 2002).

12         This action will require the Court to address a series of questions that will commonly affect

13  all Class members.  The key common question on the UCL and CLRA claims is whether the Blue

14  Sky packaging and marketing materials are unlawful, unfair, deceptive or misleading to reasonable

15  consumers.  *See Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)

16  (UCL prohibits conduct that is unfair or deceptive, even if it is not unlawful); *Cortez v. Purolator*

17  *Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000) (UCL does not require intent to injure);

18  *Comm. on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *Lavie v.*

19  *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) (advertisement "is judged by the

20  effect it would have on a reasonable consumer"); *Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th

21  39, 54 (2003) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA); *Chern*

22  *v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976) ("statement is false or misleading if members of the

23  public are likely to be deceived.  Intent of the disseminator and knowledge of the customer are both

24  irrelevant.").

25         Here, there is little doubt that the question of "unlawfulness" is a common question.  Not

26  only does the Federal Lanham Act prohibit misrepresentations of geographic origin, but the

27  California Health and Safety Code requires that beverage labels state the "name and place of

28  business of the manufacturer, packer, or distributor." 15 U.S.C. § 1125; Cal. Health & Safety Code

§ 110675(a).  Defendants' CEO contended that they complied with such regulations because they maintained a  post box at a UPS store, from which mail was forwarded to Santa Fe.  (Safier Decl. Ex. A (Sacks Depo. 56:9-21.))  Defendants also apparently believe it is acceptable to use the Blue Sky name rather than the Hansen name on the "Canned Under The Authority Of" legend because Blue Sky (which has no role) has "licensed" Hansen (Safier Decl. Ex. V), even though there appears to be no actual written "license" (Safier Decl ¶ 25.)  Whether Defendants' conduct was lawful is a question common to all class members.  *See also Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 155 (2010) (ordering class certified on UCL claim where allegation was that product sales were unlawful in that they contained a controlled substance).

There is also no doubt that the question of deceptiveness under the UCL is common:  as it asks whether "members of the public are likely to be deceived."  *Id.* at 313*, citing Kasky*, 27 Cal.4th at 951.  As long as the Plaintiff himself relied on the misrepresentations or omissions (as he did here, *see* Complt. ¶¶ 27-29), it is not necessary to show reliance by absent class members.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 313 (2009).  In *Tobacco II,* the California Supreme Court reversed decertification of class of cigarette purchasers where plaintiffs alleged that the defendant manufacturers had engaged in a "campaign of deceptive advertising and misleading statements about the addictive nature of nicotine and the relationship between tobacco use and disease.  *Id.* at 306.  Although the trial court had acknowledged that there were a "myriad of distinct issues exist as to each class member's exposure to the alleged deceptive marketing, reliance thereon, whether same was a causal factor of the person's smoking and whether each class member sustained injury," *id.* at 309, the Supreme Court held that these issues were not relevant.  It explained that "The class, as certified, consists of members of the public who were exposed to defendants' allegedly deceptive advertisements and misrepresentations and who were also consumers of defendants' products during a specific period of time. The nature of the claim is the same--the right to be protected against defendants' alleged deceit--and the remedies remain the same--injunctive relief and restitution."  *Id.* at 324; *see also Steroid Hormone Product Cases,* 181 Cal. Ap. 4th at 155 (ordering certification of UCL claim against manufacturer of products that contained a controlled substance; holding that there were common questions of "(1) whether GNC's sale of androstenediol products was unlawful;

and if so, (2) the amount of money GNC 'may have ... acquired by means of' those sales that must be restored to the class") *quoting* Cal. Bus. & Prof. Code § 17203.

On the CLRA claim, although it is necessary to show reliance by the class, such reliance may be presumed when the alleged misrepresentations and omissions were material. *Id.* at 156-57. Materiality, in turn, is demonstrated by showing that "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id.* at 157 (citations omitted). Thus, the question of materiality—how a "reasonable person" would perceive the labeling—creates another issue that is common for all class members. Plaintiff will present evidence that these statements about the name and location of the manufacturer and the origin of the product are material to persons who are the intended customers of Blue Sky beverages—that is, consumers in the natural and health foods marketplace. *See, e.g., Benson v. Kwikset Corporation*, 152 Cal. App. 4th 1254 (2007) (holding that trial courts "must view the labeling from the perspective of those consumers for whom the geographic designation is important…[F]or some people country of origin labeling is a critical factor when making a purchasing decision."); *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003) (stating "where advertising is aimed at a particularly susceptible audience ..., its truthfulness must be measured by the impact it will likely have on members of that group, not others to whom it was not primarily directed."); *see also* Fueroghne Decl ¶ 32.[8]

On the fraud claim, a similar question affecting every Class member is whether Defendants intended to deceive, or acted recklessly in placing the Santa Fe information on their marketing materials. *See Hunter v. Up-Right, Inc.*, 864 P.2d 88, 93 (1993).

### 3.    Plaintiff's Claims Are Typical Of Class Members' Claims.

The purpose of the "typicality" requirement of Rule 23(a)(3) is to ensure that the named

---

[8] To the extent that Defendants dispute the nature of the target audience, there is accordingly another common legal question:  what is the group of "reasonable consumers" by which materiality must be judged?

representative's interests "align" with those of the class.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  As recently recognized by the Ninth Circuit, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.  Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality."  *Hanlon*, 150 F.3d at 1020; *Staton*, 327 F.3d at 957.  Typicality is satisfied so long as the named plaintiff's claims stem from the same event, practice, or course of conduct that forms the base of the class claims and [is] based upon the same legal remedial theory.  *See Jordan*, 669 F.2d at 1321.

Here, the class representative alleges that he purchased Defendants' Blue Sky soda, which is the same injury alleged to have occurred to absent Class members.  Such claims are not based on conduct that is unique to the class representative.  Instead, the factual basis for the claims is that Defendants created and perpetuated uniformly deceptive packaging and marketing materials.

### 4. The Proposed Class Representative Will Fairly And Adequately Protect Class Interests

Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."  The Ninth Circuit has established a two-prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton*, 327 F.3d at 957.

### a. The Representative Plaintiff Has No Conflicts Of Interest With Other Class Members

Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020.  The test for typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon*, 976 F.2d at 508 (citation omitted).

Because adequacy is closely related to typicality, where, as here, the claims of the class

members and the class representative are reasonable co-extensive, there is no conflict.  *See General Tel. Co. v. Falcon*, 457 U.S. 147, 157-8, n.13 (1982).  Moreover, if there are any doubts as to the adequacy of representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration.  *See Newberg on Class Actions* §7.24 at 7-80 to 7-81 (3d ed. 1992).  Here, the proposed class representative has no interests that are in conflict with the interests of the members of the proposed Class.

### b. The Representative Plaintiff Will Vigorously Prosecute This Action

"It is not necessary that a representative be intimately familiar with every factual and legal issue in the case; rather, it is enough that the representative understand the gravamen of the claim." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004) (citations and internal quotes omitted).   To date, the class representative's participation in this litigation has been exemplary.  He has reviewed drafts of pleadings, been involved in settlement discussions, stayed up-to-date on all of the proceedings, and communicated with counsel throughout this litigation.

### c. Gutride Safier LLP Will Continue to Vigorously Represent the Class

When a court certifies a class, the court must also appoint class counsel unless a specific statute provides otherwise.  Fed. R. Civ. P. 23(g)(1)(A).  The basic requirement for appointment as class counsel is that such counsel must fairly and adequately represent the interests of the class.  *See* Fed. R. Civ. P. 23(g)(1)(B).  In appointing class counsel, the court considers "the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class…."  Fed. R. Civ. P. 23(g)(1)(c)(i) .

Gutride Safier is well qualified for appointment as Class Counsel in this action. Gutride Safier has considerable experience in complex litigation and with consumer class actions and has no conflicts that would prevent them from adequately representing the interests of the Class. (Safier Decl. Ex. R & ¶ 18.) Moreover, Gutride Safier has spent considerable time and effort litigating this

1   matter to date and will continue to commit considerable resources to the on-going prosecution of

2   this action.  (Id.)

3        **D.    The Requirements of Rule 23(b) Have Been Satisfied**

4            In addition to meeting the prerequisites of Rule 23(a), the present action also satisfies the

5   requirements of Rule 23(b)(3) because common questions of law or fact predominate over any

6   purported individual questions, and a class action is the superior method for the fair and efficient

7   adjudication of this controversy.

8            **1.    Common Questions of Law or Fact Predominate**

9            Questions that are common to the class predominate over individual questions where a

10  plaintiff alleges a common course of conduct of misrepresentations, omissions, and other

11  wrongdoing that affected all the class members in the same or similar manner.  *See Blackie v.*

12  *Barrack*, 524 F.2d 891, 905-908 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).  "The Rule

13  23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to

14  warrant adjudication by representation."  *In re Visa Checks/MasterMoney Antitrust Litig.*, 280 F.3d

15  124, 136 (2d Cir. 2001).  This criteria is normally satisfied when there is an essential common

16  factual link between all class members and the defendant for which the law provides a remedy.  *Id.*

17  at 136.

18           Here, each Class member purchased Blue Sky beverages.  Each Class member was subject

19  to the same deceptive marketing and advertising—i.e., during the proposed class period every Blue

20  Sky soda can deceptively stated "SANTA FE, NM," or "SANTA FE, NEW MEXICO."  In addition

21  every Blue Sky beverage can said "CANNED FOR THE BLUE SKY BEVERAGE COMPANY,

22  SANTA FE, NEW MEXICO 87501, U.S.A." and/or "CANNED UNDER THE AUTHORITY OF

23  BLUE SKY NATURAL BEVERAGE CO. SANTA FE, NM USA www.blueskysoda.com."

24  During the Class period, Defendants' website also always presented deceptive contact information

25  aimed at making it appear that the Blue Sky company was independent and located in Santa Fe,

26  New Mexico.

27           Each Class member accordingly proffers the same legal theories and the same theory of

28  recovery.  A finding of Defendants' culpability for a single Class member will yield the same result

for all.  Inasmuch as the claims against Defendants arise out of the same unfair, deceptive and illegal practices and are premised on the same legal theories, the predominance of common questions of law and fact is clear.[9]

Defendants will undoubtedly argue that individual issues exist, because many class members would have purchased the soda even in the absence of the false representations and material omissions.  But as explained below, such issues are not relevant to class certification.

### a.    There Are No Individual Reliance Issues

#### (1)    UCL Claim

As explained above, California law is now well-settled that classwide reliance is not required for UCL claims.  *See, e.g., Greenwood v. Compucredit Corp.*, 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010); *In re Tobacco II Cases*, 46 Cal. 4th at 326-27 (2009); *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 155.   Indeed, the *Steroid Hormone Product Cases* are indistinguishable from this case.

#### (2)    CLRA Claim

As also explained above, there are no individual reliance issues on the CLRA claim because classwide reliance is presumed when the misrepresentations or omissions would have been material to "reasonable persons."  *Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156-57; *see also Keilholtz v. Lennox Hearth Prods*., 2010 U.S. Dist. LEXIS 14553 (N.D. Cal. Feb. 16, 2010) (holding that "the causation required by the [CLRA] does not make plaintiffs' claims unsuitable for class treatment.  Causation as to each class member is commonly proved more likely than not by materiality. That showing will undoubtedly be conclusive as to most of the class. As noted above, common questions predominate even if Defendants can defeat the showing of causation as to a few individual class members.   As long as Plaintiffs can show that material misrepresentations were made to the class members, an inference of reliance arises as to the entire class.");*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).

---

[9] Differences among class members concerning the amount of their individual damages, which are unavoidable in class action litigation, do not prevent a suit from proceeding as a class action. *Blackie,* 524 F.2d at 905.

### (3)       Fraud Claim

Even for Plaintiff's fraud claims on which reliance is required, it can be presumed if the misrepresentations or omissions were material.  The California Supreme Court in *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971), noted with respect to reliance that:

> Whether an inference or a presumption of reliance arises upon proof of a material false representation we need not determine in this case.  It is sufficient for our present purposes to hold that if the trial court finds material misrepresentations were made to the class members, at least an inference of reliance would arise as to the entire class.

*Id.* at 815, n.9 (citation omitted); *see also Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 491 (C.D. Cal. 2006) (in cases involving material omissions, reliance may be proven on a classwide basis); *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612-613 (1992).

Numerous federal courts have similarly held that "[c]lass certification of a fraud claim may be appropriate if the plaintiffs allege that an entire class of people had been defrauded by a common course of conduct."  *Plascencia*, 259 F.R.D. at 447 *citing In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006).

### b.       California Law Is Applicable to All Class Members

As this Court is sitting in diversity jurisdiction, it must apply California choice of law principles.  *See Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). Under those principles, California law should be applied to the claims of all Class members.

California has a stronger interest than any other state in having its laws apply, because Defendants are headquartered and have their administrative offices in this state.  (Safier Decl. Ex. A (**REDACTED**; Ex. S (Sacks Depo. Ex. 19, p. 1437).)  All relevant decisions—

**REDACTED**

—were made by corporate officers and employees in California. **REDACTED**

[10]  The can label designs

---

[10] Defendants, in their online terms of use agreements, also bind their customers to have their disputes with Defendants governed by the laws of the State of California.  Specifically, Defendants state, "By visiting Hansen.com, you agree that the laws of the state of California, without regard to principles of conflict of laws, will govern these Terms and Conditions and any dispute of any nature that might arise between you and Hansen."  (Safier Decl. Ex. T.)

1

2          **REDACTED**

3   (Fueroghne Decl. Ex. D.)  The website redesign in 2006, which led to the inclusion of the

4   photograph of Camel Rock, was performed under contract with Hansen by the Buddy Group, Inc., a

5   website designer based in California.  (Safier Decl. ¶ 9.) When a defendant's wrongful conduct

6   emanates from this state, California courts have concluded that California's consumer protection

7   laws apply to non-California residents.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Superior Court*,

8   114 Cal. App. 4th 434 (2003); *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 241-242

9   (2001); *Clothesrigger, Inc. v. GTE Corp*., 191 Cal. App. 3d 605, 614 (1987).  Indeed, California law

10  is almost invariably applied to a multi-state class when the defendant is headquartered in California

11  and the challenged decisions were made in this state.  *Id*

12              **2.      A Class Action Is Superior**

13          Rule 23(b)(3) enumerates the following factors for the court to consider in its superiority

14  analysis:  (A) the interest of members of the class in individually controlling the prosecution ... of

15  separate actions; (B) the extent and nature of any litigation concerning the controversy already

16  commenced by ... members of the class; (C) the desirability ... of concentrating the litigation of the

17  claims in the particular forum; (D) the difficulties likely to be encountered in the management of a

18  class action.  Fed. R. Civ. P. 23(b)(3).   In the Ninth Circuit, the ultimate test for superiority of the

19  class action mechanism merely requires "determination of whether the objectives of the particular

20  class action procedure will be achieved in the particular case," which "necessarily involves a

21  comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023

22  *citing* 7A Wright & Miller, Federal Practice and Procedure, § 1779 (2d ed. 1986); *see also*

23  *Lymburner v. U.S. Fin. Funds, Inc.*, 2010 U.S. Dist. LEXIS 5081 (N.D. Cal. Jan. 22, 2010);

24  *Greenwood, supra,* 2010 U.S. Dist. LEXIS 3839.

25              **a.      Class Members Have No Interest In Pursing Individual Litigation**

26          The first factor to be considered is the interest of each class member in "individually

27  controlling the prosecution or defense of separate actions."  Fed. R. Civ. P. 23(b)(3)(A).  Here, as in

28  *Hanlon*, the alternative mechanism would be individual claims for relatively small amounts of

damages.   This would not only burden the court system that would be deciding the same legal

issues in a number of small cases, but would also not make economic sense for litigants or lawyers.

It is clear that in many, if not most, individual cases, "litigation costs would dwarf potential

recovery." *Hanlon*, 150 F.3d at 1023; *see also Culinary/Bartender Trust Fund v. Las Vegas Sands,*

*Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some-perhaps

most-will be unable to proceed as individuals because of the disparity between their litigation costs

and what they hope to recover.")   While the aggregate damages of the class members may be large,

each class member likely paid only several dollars for the beverages.   Because the costs of litigation

and attorneys' fees would swamp any amount that he or she could recovery, no individual class

member would be motivated to pursue litigation and Defendants would be rewarded for their false

and deceptive marketing and advertising with over $20 million in ill-gotten gains.  *See Hanlon*, 150

F.3d at 1023.

### b.      There Are No Other Actions Pending

The second factor to be considered, "the extent and nature of any litigation concerning the

controversy already commenced," Fed. R. Civ. P. 23(b)(3)(B) , by members of the classes, also

supports proceeding with certification in this action.   Plaintiff is not aware of any other individual or

class litigation concerning the claims alleged in this case on behalf of the Class.   Thus, Plaintiff has

satisfied the requirement of Rule 23(b)(3)(B).

### c.      This Court is the Appropriate Forum for this Litigation

Consideration of the third factor (the desirability of concentrating the litigation of the claims

in the particular forum) further demonstrates that a class action is superior.   This forum is the most

efficient forum to litigate the claims alleged in the Complaint.   The case has already been pending

in this Court since 2006, and the Ninth Circuit has already heard one appeal.

### d.      There Are No Manageability Issues

There is no reason to believe that the prosecution of the claims of the putative Class

members in a single class action will create more management problems than the alternative (*i.e.*,

the prosecution of hundreds or thousands of separate lawsuits by each class member).   Given the

number and importance of the common questions described above, the adjudication of class claims

1  would not be significantly more burdensome than if the matter were prosecuted individually.

2  Moreover, it is well accepted that "a class action has to be unwieldy indeed before it can be

3  pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376

4  F.3d 656, 661 (7th Cir. 2004); *In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (The

5  mere possibility of complexity or un-manageability does not defeat a class action); *see also*

6  *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768 *64 (C.D. Cal. Nov. 9, 2009)

7  *citing Negrete*, 238 F.R.D. at 494 ("The individuation of damages in consumer class actions is

8  rarely determinative under Rule 23(b)(3).") and *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32,

9  40 (1st Cir. 2003) ("Where as here, common issues predominate regarding liability, and then courts

10  generally find the predominance requirement to be satisfied even if individual damages issues

11  remain.")

12  **V.    CONCLUSION**

13        For the foregoing reasons, Plaintiff respectfully requests that this Court (a) certify the Class;

14  (c) appoint plaintiff as representative of the Class; and (d) appoint Gutride Safier LLP as counsel for

15  the Class pursuant to Fed. R. Civ. P. 23(g).  Plaintiff further requests that the Court order the parties

16  to meet and confer and within fifteen (15) days provide to this Court a draft of a notice to be

17  disseminated to the class.

18  Dated:      April 22, 2010          **GUTRIDE SAFIER LLP**

19

20                                         /s/ Seth A. Safier

21                                         _____
                                           Adam J. Gutride (State Bar No. 181446)
                                           Seth A. Safier (State Bar No. 197427)
22                                         835 Douglass Street
                                           San Francisco, California 94114
23                                         Telephone: (415) 271-6469
                                           Facsimile: (415) 449-6469
24                                         adam@gutridesafier.com
                                           seth@gutridesafier.com
25
                                           Counsel for Plaintiff and
26                                         Proposed Class Counsel

27

28

# **CERTIFICATE OF SERVICE**

I, Seth A. Safier, hereby declare the following:

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On April 22, 2010, I served the following documents:

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (LODGED UNDER SEAL)

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (REDACTED)

DECLARATION OF SETH A SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (LODGED UNDER SEAL)

DECLARATION OF SETH A SAFIER IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (REDACTED)

DECLARATION OF DEAN K. FUEROGHNE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION  (LODGED UNDER SEAL)

DECLARATION OF DEAN K. FUEROGHNE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (REDACTED)

DECLARATION OF CHRIS CHAVEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

ADMINISTRATIVE MOTION TO FILE DOCUMENTS UNDER SEAL

ON THE FOLLOWING PERSON(S) IN THIS ACTION BY PLACING A TRUE COPY THEREOF AS FOLLOWS:

William Kammer, Esq.
Norman Smith, Esq.
Alison Pivonka, Esq.
Solomon Ward et al
401 B St #1200
San Diego, CA 92101
apivonka@swsslaw.com; nsmith@swsslaw.com;
wkammer@swsslaw.com

[x]     BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail pursuant to the parties' stipulation for email service.  Large documents (above 10MB) were sent with the electronic mail service www.yousendit.com.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on April 22, 2010, at San Francisco, California.

/s/Seth A. Safier

_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff