1  NORMAN L. SMITH [SBN 106344]
   nsmith@swsslaw.com
2  WILLIAM N. KAMMER [SBN 53848]
   wkammer@swsslaw.com
3  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
4  San Diego, California 92101
   Telephone: (619) 231-0303
5  Facsimile: (619) 231-4755

6  Attorneys for Defendants Blue Sky Natural Beverage Co.,
   Hansen Beverage Company and Hansen Natural Corporation
7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10

11 CHRIS CHAVEZ, an individual, on behalf of      CASE NO.  06-CV-06609 (VRW)
   himself, the general public and those similarly
12 situated,                                      OPPOSITION TO PLAINTIFF'S
                                                  MOTION FOR CLASS CERTIFICATION
13            Plaintiffs,
                                                  Date:        May 27, 2010
14    v.                                          Time:        10:00 a.m.
                                                  Ctrm:        6, 17th Floor
15 BLUE SKY NATURAL BEVERAGE CO., a
   foreign corporation; HANSEN BEVERAGE          Complaint Filed:  September 21, 2006
16 COMPANY, a foreign corporation; HANSEN
   NATURAL CORP., a foreign corporation; and     Honorable:     Vaughn R. Walker
17 DOES 1 THROUGH 10, inclusive,
                                                  ORAL ARGUMENT REQUESTED
18            Defendants.

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE(S)**

I        INTRODUCTION ................................................................................................. 1

II       THE NINTH CIRCUIT'S *DUKES* DECISION CHANGES THE CLASS ACTION
         LANDSCAPE .................................................................................................... 1

         Rigorous Analysis Required ............................................................................... 1

         A Court Must Engage in an Even More Precise Factual Analysis of Rule 23(b)(3)
                 Predominance Requirements. .................................................................. 3

III      CHAVEZ IS BOUND BY LAW OF THE CASE ................................................. 4

IV       EACH MEMBER OF CHAVEZ PURPORTED CLASS MUST HAVE ARTICLE
         III STANDING ................................................................................................. 5

         Each Class Member Must Have Article III Standing .......................................... 6

         *In re Tobacco II Cases* Cannot Compel a Different Result. ............................... 9

         Chavez Claims Preclude Article III Standing For Class Members. .................... 11

V        THE PROPOSED CLASS FAILS TO MEET FUNDAMENTAL RULE 23
         REQUIREMENTS ........................................................................................... 12

         No Ascertainable Class Exists ........................................................................... 12

VI       CHAVEZ CANNOT SATISFY THE OTHER REQUIREMENTS OF RULE 23 ........... 14

         Chavez Does Not Meet the Numerosity Requirement. ....................................... 14

         Chavez' Claims Fail to Satisfy Rule 23(a)'s Commonality and Typicality
                 Requirements ........................................................................................ 16

                 Chavez' Claims Are Too Individualized to Satisfy Rule 23(a)'s
                         Commonality Requirement. ........................................................ 16

                 Chavez' Claims are Not Typical of the Purported Class. ....................... 17

VII      CHAVEZ CANNOT SATISFY THE REQUIREMENTS OF RULE 23(b)(3) ................ 18

         Certification is Inappropriate Because Individual Issues Predominate ................ 18

                 Individual Factual Issues Predominate ................................................... 19

         Individualized Showing of Damages Still Required Under *Tobacco II* ............... 20

         The Law Applicable to the Proposed Class is Not Uniform. ............................... 22

Individual Issues Necessarily Trump Class Issues. ............................................... 23

On These Facts, A Class Action is Neither Superior Nor Manageable. ............................ 23

The Process of Determining Damages Makes Class Treatment Untenable. ....................... 24

VIII   CONCLUSION .................................................................................................... 25

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adashunas v. Negley*,
 626 F.2d 600 (7th Cir. 1980)................................................................... 8, 10

*Akkerman v. Mecta Corp.*,
 152 Cal.App.4th 1094 (2007)................................................................... 13

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)................................................................... 4, 6, 9, 23

*Argoquest Holdings, LLC v. Israel Discount Bank Ltd.*,
 2005 U.S. Dist. LEXIS 46314 (C.D. Cal. Apr. 8, 2005)................................. 6

*Birdsong v. Apple, Inc.*,
 590 F.3d 955 (9th Cir. 2009)................................................................... 7

*Blackie v. Barrack*,
 724 F.2d 891 (9th Cir. 1975)................................................................... 2, 3

*Burdick v. Union Security Ins. Co.*,
 2009 U.S. Dist. LEXIS 121768 (C.D. Cal. Dec. 9, 2009)............................. 6

*Cantrell v. City of Long Beach*,
 241 F.3d 674 (9th Cir. 2001)................................................................... 6, 7

*Cetacean Cmty. v. Bush*,
 386 F.3d 1169 (9th Cir. 2004)................................................................. 5

*Clay v. American Tobacco*,
 188 F.R.D. 483 (S.D. Ill. 1999)................................................................. 8, 10, 13

*Cohen v. DirecTV, Inc.*,
 178 Cal.App.4th 966 (2009)................................................................... 22

*Cotes v. Nyko Techs., Inc.*,
 247 F.R.D. 589 (C.D. Cal. 2007)............................................................. 16

*Deitz v. Comcast Corp.*,
 2007 U.S. Dist. LEXIS 53188 (N.D. Cal. 2007)........................................ 13

*Denney v. Deutsche Bank AG*,
 443 F.3d 253 (2d Cir. 2006)................................................................... 6, 7, 10

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
 177 F.R.D. 54 (D. Mass. 1997)............................................................... 16

*Dukes, et al., v. Wal-Mart Stores, Inc.*,
 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26, 2010) ............................... 1, 2, 3, 4

*Eisen v. Carlisle and Jacquelin*,
 417 U.S. 156 (1974)................................................................... 2, 3, 18

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Eliasen v. Green Bay & W.R.R.*,
    464 U.S. 874 (1983) ................................................................................................ 18

*Elliott v. ITT Corp.*,
    150 F.R.D. 569 (N.D. Ill. 1992) ........................................................................... 12

*Endres v. Wells Fargo Bank*,
    2008 U.S. Dist. LEXIS 12159 (N.D. Cal. 2008) ............................................... 23

*Fiedler v. Clark*,
    714 F.2d 77 (9th Cir. 1983) .................................................................................... 9

*Fraker v. KFC Corp.*,
    2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 27, 2007) ................................. 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*,
    528 U.S. 167 (2000) .................................................................................................. 5

*General Telephone Company v. Falcon*,
    457 U.S. 147 (1982) ......................................................................................... passim

*Hanon v. Dataprods., Inc.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................... 17

*Hodes v. Van's Int'l Foods*,
    2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) ................................. 23

*In Re Copper Antitrust Litigation*,
    196 F.R.D. 348 (W.D. Wis. 2000) ................................................................... 8, 10

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*,
    194 F.R.D. 484 (D.N.J. 2000) ............................................................................... 23

*In re Ford Motor Co. Vehicle Paint Litig.*,
    182 F.R.D. 214 (E.D. La. 1998) .......................................................................... 20

*In re Hotel Tel. Charges*,
    500 F.2d 86 (9th Cir. Cal. 1974) ........................................................................ 24

*In re Steroid Hormone Prod. Cases*,
    181 Cal.App.4th 145 (2010) ......................................................................... 20, 21

*In re TJX Co.'s Retail Security Breach, Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ............................................................................ 8

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ....................................................................... 9, 10, 19, 20

*Kohen v. Pac. Inv. Mgmt. Co.*,
    571 F.3d 672 (7th Cir. 2009) .................................................................................. 7

*Lee v. American National Ins. Co.*,
    260 F.3d 997 (9th Cir. 2001) ........................................................................ 5, 6, 7

*Local Union 598 v. J.A. Jones Constr. Co.*,
    846 F.2d 1213 (9th Cir. 1988) ............................................................................... 9

*Ludke v. Philip Morris, Inc.*,
  2001 WL 1673791 (D. Minn. Nov. 21, 2001)....................................................................... 24

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ...................................................................................... 17

*McElhaney v. Ely Lilly & Co.*,
  93 F.R.D. 875 (D. S.D. 1982) ...................................................................................... 8, 10

*Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Securities Litig.* ("*IPO*"),
  471 F.3d 24 (2d Cir. 2006)................................................................................................ 2, 3

*Miller v. General Motors Corp.*,
  2003 U.S. Dist. LEXIS 1467 (N.D. Ill. Jan. 27, 2003) .................................................... 22

*Mirkin v. Wasserman*,
  5 Cal.4th 1082 (Cal. 1993) .......................................................................................... 21, 22

*Mirto v. American Int'l Group*,
  2005 U.S. Dist. LEXIS 42455 (N.D. Cal. Apr. 8, 2005)..................................................... 6

*Nguyen Da Yen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) ....................................................................................... 15

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal.App.4th 214 (1999)........................................................................................... 22, 23

*O'Neill v. Gourmet Systems of Minnesota, Inc.*,
  219 F.R.D 445 (W.D. Wis. 2002) ....................................................................................... 8

*O'Sullivan v. Countrywide Home Loans, Inc.*,
  319 F.3d 732 (5th Cir. 2003)............................................................................................ 24

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004)...................................................................................... 16, 23

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
  244 F.Supp.2d 289 (S.D. N.Y. 2003) ................................................................................ 8

*Qwest Corp. v. City of Surprise*,
  434 F.3d 1176 (9th Cir. 2006)............................................................................................ 6

*Rush v. Obledo*,
  517 F.Supp. 905 (N.D. Cal. 1981) .................................................................................... 9

*Sanders v. Apple, Inc*,
  673 F.Supp.2d 978 (N.D. Cal. 2009) ....................................................................... 5, 7, 20

*Sathianathan v. Smith Barney, Inc.*,
  2005 U.S. Dist. LEXIS 34409 (N.D. Cal. June 6, 2005) .................................................... 4

*Schwartz v. Upper Deck Co.*,
  183 F.R.D. 672 (S.D. Cal. 1999)....................................................................... 12, 14, 15, 23

*Shady Grove Ortho. Assoc. v. Allstate Ins. Co.*,
  2010 U.S. LEXIS 2929 (Mar. 31, 2010) .................................................................... 10, 19

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*Siles v. ILGWU Nat'l Ret. Fund*,
    783 F.2d 923 (9th Cir. 1986) ........................................................................... 14, 15

*Stanford v. Home Depot USA, Inc.*,
    2009 U.S. App. LEXIS 25758 (9th Cir. Nov. 5, 2009) ....................................... 6

*United Steel, etc. v. Shell Oil Co.*,
    2010 U.S. App. LEXIS 8208, at *10 (9th Cir. Apr. 21, 2010) ............................ 7

*USA v. Chapman University*,
    2006 U.S. Dist. LEXIS 53686 (C.D. Cal. May 23, 2006) ................................... 6

*Vasquez v. Sup. Ct.*,
    4 Cal.3d 800 (1971) ......................................................................................... 22

*Vuyanich v. Rep. Nat. Bank*,
    82 F.R.D. 420 (N.D. Tex. 1979) ...................................................................... 10

*Wiener v. Dannon*,
    255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................... 17

*Zelman v. JDS Uniphase Corp.*,
    376 F.Supp.2d 956 (N.D. Cal. 2005) ................................................................. 7

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ......................................................................... 12

**STATUTES**

28 U.S.C. § 1453 ..................................................................................................... 7

28 U.S.C. § 1453(b) ................................................................................................. 7

28 U.S.C. § 2072(b) ................................................................................................. 9

Civil Code § 1770 .................................................................................................. 21

Civil Code § 1783 .................................................................................................. 13

Code of Civil Procedure § 338(d) .......................................................................... 13

**RULES**

Federal Rule of Civil Procedure 23 ................................................................. passim

Federal Rule of Civil Procedure 23(a) ............................................................. passim

Federal Rule of Civil Procedure 23(a)(2) .......................................................... 3, 4

Federal Rule of Civil Procedure 23(b)(1) ............................................................ 18

Federal Rule of Civil Procedure 23(b)(2) ............................................................ 18

Federal Rule of Civil Procedure 23(b)(3) ....................................................... passim

Federal Rule of Civil Procedure 82 ....................................................................... 8

1

**TREATISES**

2    C. Wright, A. Miller, M. Kane, Fed. Prac. & Proc. Civ. 3d § 1785.1 (2005) .................................... 8

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**I
INTRODUCTION**

2

3    Chavez' proposed class cannot withstand the "rigorous analysis" that the Ninth Circuit

4  requires of each Rule 23(a) and Rule 23(b)(3) element.  First, the members of the purposed class

5  lack Article III standing.  That alone defeats Chavez' attempted end-run around the Constitution's

6  "case or controversy" requirement for every action in federal court, including for members of class

7  actions.  As a consequence, consistent with Article III's mandate, this Court cannot certify

8  Chavez' proposed class.

9    Next, setting aside the class members' lack of Article III standing, Chavez fails Rule 23's

10  requirements.  For this reason as well, this Court cannot certify Chavez' proposed class.

11

**II
THE NINTH CIRCUIT'S *DUKES* DECISION CHANGES THE CLASS ACTION
LANDSCAPE**

12

13    On April 26, 2010, the Ninth Circuit issued its *en banc* decision in *Dukes, et al., v. Wal-*

14  *Mart Stores, Inc.*, 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26, 2010)..  It engaged in its lengthy

15  analysis because:  "The parties vigorously contest the standards governing the district court in

16  finding the Rule 23 requirements satisfied.  For a number of reasons, we must clarify this

17  standard."[1]  *Id*. at *12-13.

18  **Rigorous Analysis Required.**

19    The court started with *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982), and reiterated what

20  *Falcon* held:  that a class action "'may only be certified if the trial court is satisfied, **after a**

21  **rigorous analysis**, that the prerequisites of Rule 23(a) have been satisfied.'"  *Dukes* at *15, citing

22  *Falcon* at 161.  Emphasis added.

23    > In conducting this rigorous analysis the Court explained that 'the class
   > determination generally involves the considerations that are enmeshed in the factual
24   > and legal issues comprising the plaintiff's cause of action.'

25

---

26  [1]   Although the *en banc* decision was 6 to 5, the dissent took no issue with the "rigorous
   analysis" requirement for class certification.  Rather, the dissent said the district court's

27  analysis had not been sufficiently rigorous, *id*. at *163-236, and, for example, would have
   required the court to hold a *Daubert* hearing.  Here, Blue Sky has filed *Daubert* objections to

28  Chavez' expert's report.

1   *Id.*, citing *Falcon* at 160.

2       *Dukes* found that some district courts within this Circuit have misunderstood language in

3   *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974), because, in determining whether Rule

4   23's requirements are met, they felt constrained not to consider any aspect of the merits or to

5   analyze the facts of a case if those facts overlapped with an aspect of its merits.  *Id.* at *17, *citing*

6   *Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Securities Litig.* ("*IPO*"), 471 F.3d 24 (2d

7   Cir. 2006).[2]

8       *Dukes* adopted the distinction *IPO* made.  Key to *Falcon* and *Eisen* are the **purposes** for

9   which the court uses the underlying facts—whether to address a merits issue unnecessarily or to

10  determine whether the class plaintiff has met each Rule 23 requirement.  *Dukes* at *18; *IPO*,

11  *supra*, at 32-35.  Thus, *Dukes* held:

> It is whether courts are using the facts to probe the plaintiffs' claims of compliance
> with Rule 23, or to hear either party's' claims directed to stand-alone merits issues,
> that renders a court's use of the facts proper or improper.  Courts have thus strayed
> from *Falcon* when they have myopically invoked *Eisen* to avoid considering facts
> properly relevant to the Rule 23 determination because the facts happen to be
> relevant to the later merits inquiry as well.

16  *Id.* at *18-19 (emphasis added).

17      *Dukes* then summarized the law in circuits that had addressed the question:

> [D]istrict courts must satisfy themselves that the Rule 23 requirements have been
> met before certifying a class, which will sometimes, though not always, require an
> inquiry into and preliminary resolution of disputed factual issues, even if those
> same factual issues are also, independently, relevant to the ultimate merits of the
> case.

21  *Id.* at *22.  In short, the Ninth Circuit concluded that *Eisen* does not limit a district court's duty to

22  resolve Rule 23 factual and legal issues even if they overlap with the merits.  *Id.* at *28.

23      Next, *Dukes* addressed a common misreading of the court's own oft-quoted statement in

24  footnote 17 of *Blackie v. Barrack*, 724 F.2d 891, 901, n.17 (9th Cir. 1975), that district courts are

25  "bound to take the substantive allegations of the complaint as true."  *Dukes* found that statement

---

[2]   The language from *Eisen* that *Dukes* believes district courts misunderstood or misapplied is:
"We find nothing in either the language or history of Rule 23 that gives a court any authority
to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may
be maintained as a class action."  417 U.S. at 177.

1  taken out of context. *Id.* at *40-41.  *Dukes* sees *Blackie* as:

2      [E]ntirely consistent with the Supreme Court's guidance, explicitly requiring a
        district court to probe behind the pleadings if doing so is necessary to make
3      findings on the Rule 23 certification decision.  Thus, *Blackie* does not, and could
        not, require the district court to unquestioningly accept a plaintiff's arguments as to
4      the necessary Rule 23 determinations.

5  *Id.* at *42.  Thus, *Dukes* held:

6      A district court must sometimes resolve factual issues related to the merits to
        properly satisfy itself that Rule 23's requirements are met, but the purpose of the
7      district court's inquiry at this stage remains focused on, for example, common
        *questions* of law of fact under Rule 23(a)(2), or predominance under Rule 23(b)(3),
8      not the proof of answers to those questions or the likelihood of success on the
        merits.

9

10  *Id.* at *43-44 (emphasis in original).

11      *Dukes* then instructed that "a district court must make 'determinations' that the

12  prerequisites of Rule 23(a) have been satisfied before it certifies a class, 'which may require

13  review of the same facts and same law presented by review of the merits [citations omitted] and

14  the obligation to make such determinations is not lessened by overlap between a Rule 23

15  requirement and a merits issue.  [citations omitted.]"  *Id.* at *20-21.

16      [T]he charge to the district court follows the analysis the *IPO* court explained, and
        we agree, that *Falcon* and *Eisen* require.  *IPO*, 471 F.3d at 41.  The district court
17      must analyze underlying facts and legal issues, going to the certification questions
        regardless of any overlap with the merits.

18

19  *Id.* at *28.

20      Setting aside whether *Dukes* articulates a new, or clarifies this circuit's established, Rule

21  23 standard, *Dukes* now requires a district court to delve into the facts—even if they relate to the

22  merits of the plaintiff's claim—and engage in rigorous analysis of each element of Rule 23(a):

23  numerosity; commonality; typicality; and adequacy of representation.

24      After such a Rule 23(a) analysis, the Court must then turn to Rule 23(b)(3).

25  **<u>A Court Must Engage in an Even More Precise Factual Analysis of Rule 23(b)(3)</u>**
**<u>Predominance Requirements.</u>**

26

27      Rule 23(b)(3) requires predominance of common questions of fact or law and superiority

28  of a class action to resolve them.  The predominance standard is "far more demanding" than the

1  commonality requirement of Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24

2  (1997); *Dukes* at *52.  Applying that predominance test, *Dukes* found:

> 3  Thus, we would expect that cases in which the parties are contesting facts
> underlying the Rule 23(b)(3) determination may often require far more
> 4  determinations by the district court than those in which a Rule 23(a)(2) is the
> primarily contested issue.  Rule 23(b)(3) requires a district court to formulate
> 5  "**some prediction as how specific issues will play out in** order to determine
> whether common or individual issues predominate in a given case" [citation
> 6  omitted].  We thus, should not be surprised that the district court will have to make
> **more precise factual determinations** under Rule 23(b)(3) than under Rule
> 7  23(a)(2)."  *Dukes* at *53.  [Emphasis added.]

8  In summary, the standards that the Ninth Circuit establishes for proper adjudication of a

9  Rule 23 class certification motion include:

> 10  [W]hen considering class certification under Rule 23, district courts are not only at
> liberty to, but **must, perform a rigorous analysis** to ensure that the prerequisites
> 11  of Rule 23 have been satisfied, and this analysis will often, though not always,
> require looking behind the pleadings to issues overlapping with the merits of the
> 12  underlying claims....  Courts must keep in mind that different parts of Rule 23
> require different inquiries.

13

14  *Id.* at *55-56 (emphasis added).

15  Using the jurisprudential prism that *Dukes* articulates, Blue Sky now addresses the

16  purported Chavez class.

17  ### III
### CHAVEZ IS BOUND BY LAW OF THE CASE

18

19  Chavez successfully appealed this Court's original dismissal of his complaint.[3]  Positions

20  Chavez had to take, however, to achieve that reversal now ensnare his attempt at class

21  certification—especially when this Court applies the "rigorous analysis" *Dukes* now demands.

22  The Ninth Circuit's memorandum decision says:

> 23  The complaint contains the following allegations, which are sufficient to allege that
> Chavez has been injured-in-fact—however slightly—by appellees' conduct.  First,
> 24  Chavez purchased Blue Sky soda instead of other brands based on the
> representations that Blue Sky was a New Mexico company.  *See* Complaint ¶¶ 28,
> 25  36, 52, 61, 95.  Second, Blue Sky is not, in fact, bottled or produced in New
> Mexico, and, therefore, appellees misrepresented the origin and nature of their

26

---

27  [3]  That Ninth Circuit memorandum decision (Doc. No. 50), is now law of the case and binds
Chavez.  *Sathianathan v. Smith Barney, Inc.*, 2005 U.S. Dist. LEXIS 34409, at *7-8 (N.D. Cal.
28  June 6, 2005) ("Under the doctrine, a court is generally precluded from reconsidering an issue
previously decided by the same court or a higher court of the identical case.").

1   products.  *See* Complaint ¶¶ 30, 31, 33.  Third, and most importantly, Chavez
2   incurred personal monetary loss as a result of appellees' purported
    misrepresentations.  For example, Chavez "lost money as a result [of appellees'
3   deception] in that he did not receive what he had paid for."  Complaint ¶ 36.
    Chavez "lost money or property when he purchased a Blue Sky Beverage ....  In
4   particular, he lost the full value of the price he paid  ... which he would not have
    paid had he known the truth about the geographic origin of the products."
5   Complaint ¶ 52.  Chavez "lost money as a result in that [he] did not receive what
    [he] had paid for."  Complaint ¶ 61.  As a final example, we note that Chavez
6   "altered [his] position to [his] detriment" and "suffered damages in an amount
    equal to the amount that [he] paid for the Blue Sky Beverages that [he] purchased."
    Complaint ¶¶ 97, 99.

7
    We note additionally that Chavez alleges in the complaint that he had been born
8   and raised in New Mexico; relocated to California some years ago; and purchased
    Blue Sky to (1) support a New Mexico company and (2) to associate himself with a
9   product from Santa Fe, New Mexico.  These allegations, **although perhaps
    limiting the extent of the putative class**, nevertheless support his claim that he
10  would not have paid the full price for the Blue Sky product or may not have
    purchased the product at all if he had known that its true place of manufacture was
11  outside New Mexico.

12  *Id.* at 6.

13      Thus, to survive dismissal, Chavez had to isolate facts unique to himself.  His cluster of

14  idiosyncratically personal facts, however, has so narrowed the "case or controversy" between him

15  and Blue Sky that it kills his representing any "similarly situated" class.  There is none.

16                                    **IV**
17  **EACH MEMBER OF CHAVEZ PURPORTED CLASS MUST HAVE ARTICLE III
                              STANDING**

18      Article III standing is integral to subject matter jurisdiction.  *Cetacean Cmty. v. Bush*, 386

19  F.3d 1169, 1174 (9th Cir. 2004);  *Sanders v. Apple, Inc*, 673 F.Supp.2d 978, 983-984 (N.D. Cal.

20  2009) (Fogel, J.).  Article III limits federal courts' jurisdiction to "cases and controversies;" a

21  plaintiff must show, *inter alia*, that the defendant's alleged conduct actually injured him.  *Lee v.*

22  *American National Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001), citing *Friends of the Earth,*

23  *Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 180 (2000).  Thus, Article III requires that a

24  plaintiff "show that (1) it has suffered a 'injury-in-fact' that is (a) concrete and particularized and

25  (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

26  challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

27  injury will be redressed by a favorable decision."  *Cetacean, supra*, at 1174.

28      The Ninth Circuit's memorandum decision has established the factual allegations that

1  constitute Chavez' injury-in-fact.  Because they are so personally unique, they doom his attempt to

2  represent a "similarly situated" class.

3  **Each Class Member Must Have Article III Standing.**

4         As the Supreme Court instructed, courts have to be "mindful that Rule 23's requirements

5  must be interpreted in keeping with Article III constraints."  *Amchem Prods., supra* at 612-13.

6  Thus, "no class may be certified that contains members lacking Article III standing."  *Burdick v.*

7  *Union Security Ins. Co.*, 2009 U.S. Dist. LEXIS 121768, at *11 (C.D. Cal. Dec. 9, 2009), quoting

8  *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir. 2006), and citing *Lee, supra.*

9         In *Burdick*, the court held that it lacked subject matter jurisdiction over UCL and FAL

10  claims for absent class members who had not applied for benefits because they lacked "justiciable

11  claims under Article III."

12         Defendant is correct that, regardless of whether Plaintiffs state a claim under the
     UCL or the FAL, they must still establish the Article III standing requirement set
13     forth above.  *Id*. at *14, n.6, citing *Lee*, *supra.*

14  As a consequence, the *Burdick* court eliminated from certification "those absent class members

15  lacking judiciable claims under Article III."  *Id.* at *13.

16         In *Lee*, also a case alleging UCL and FAL violations, the Ninth Circuit held that Article III

17  limits federal jurisdiction to "cases and controversies" requiring a plaintiff to show actual injury.

18  "So a plaintiff whose cause of action is perfectly viable **in state court under state law** may

19  nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot

20  demonstrate the requisite injury."  *Lee, supra*, at 1001-02, citing, *inter alia*, *Cantrell v. City of*

21  *Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) (emphasis added).

22         Blue Sky respectfully submits that *Lee*—broadly cited and followed[4]—is dispositive.  No

23  matter what rights Chavez or members of his class would have had in state court—before

24  Proposition 64 or after—those rights do not trump Article III standing.  Chavez and each member

25

---

26  [4]  See, e.g., *Stanford v. Home Depot USA, Inc.*, 2009 U.S. App. LEXIS 25758, at *6 (9th Cir.
     Nov. 5, 2009); *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1180 (9th Cir. 2006); *USA v.*

27     *Chapman University*, 2006 U.S. Dist. LEXIS 53686, at *29 (C.D. Cal. May 23, 2006);
     *Argoquest Holdings, LLC v. Israel Discount Bank Ltd.*, 2005 U.S. Dist. LEXIS 46314, at *9

28     (C.D. Cal. Apr. 8, 2005); *Mirto v. American Int'l Group*, 2005 U.S. Dist. LEXIS 42455, at *4
     and 8 (N.D. Cal. Apr. 8, 2005).

1  of the class "must also satisfy the federal standing requirements under Article III."[5]

2      In *Birdsong v. Apple, Inc*., 590 F.3d 955, 960, n.4 (9th Cir. 2009), also a putative UCL

3  class action, the court said:  "In addition to meeting the UCL's standing requirements, the

4  plaintiffs must also satisfy the federal standing requirements under Article III."  Citing *Cantrell*

5  and *Lee*, the court affirmed the district court's dismissal of plaintiff's claims for lack of standing to

6  assert a UCL claim.  *Id.* at 960.

7      Likewise, in *Sanders, supra*, another putative UCL class action, the district court struck

8  class allegations and dismissed the complaint.

9      "No class may be certified that contains members lacking Article III standing…
10  The class must therefore be defined in such a way that anyone within it would have
   standing. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d. Cir 2006).
11  Currently, the class definition includes all persons within the United States who
   own a 20-inch Aluminum iMac.  This definition necessarily includes individuals
   who do not purchase their 20-inch Aluminum iMac, individuals who either did not
12  see or were not deceived by advertisements and individuals who suffered damages.
   Such individuals would lack standing to bring these claims."

13

14  *Id.* at 991; *see also Zelman v. JDS Uniphase Corp.*, 376 F.Supp.2d 956, 966 (N.D. Cal. 2005)

15  (class must be limited "to those ascertainable individuals who have standing to bring the action.").

16      The Second Circuit in *Denney* confirmed that the proposed class there had Article III

17  standing in the appeal of a class-wide settlement in a case involving allegations against

18  professional advisors for fraudulent tax counseling.  In affirming, *Denney* held:  "The class must

19  therefore be defined in such a way that anyone within it would have standing."  442 F.3d at 264.

20      The Seventh Circuit in *Kohen v. Pac. Inv. Mgmt. Co*., 571 F.3d 672, 677 (7th Cir. 2009),

21  said that, even if the named plaintiff has standing, a class that is defined "so broad[ly] that it

22  sweeps within it persons who could not have been injured by the defendant's conduct" cannot be

23

[5]   In *Lee*, the court also held that a case properly removed may not be remanded to state court.
24    Here, Blue Sky properly removed Chavez' claim under 28 U.S.C. § 1453(b).  After § 1453
   removal, continuing federal jurisdiction does not depend on certification of the plaintiff's
25    class.  *United Steel, etc. v. Shell Oil Co.*, 2010 U.S. App. LEXIS 8208, at *10 (9th Cir. Apr.
   21, 2010) ("If a defendant properly removed a putative class action at the get-go, district
26    court's subsequent denial of Rule 23 class certification does not divest the court of jurisdiction,
   and it should not remand the case to state court.").  Accordingly, if this Court denies class
27    certification the Court cannot remand Chavez' action to state court because this Court properly
   acquired jurisdiction at the time of removal, and Chavez—not the class he purports to
28    represent—but has standing to pursue his individual claim here.

1    certified.  Earlier, in *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980), the court affirmed

2    the denial of a plaintiff class because the class definition was "so amorphous and diverse" that it

3    was not "reasonably clear that the proposed class members have all suffered a constitutional or

4    statutory violation warranting some relief."

5        *See In re TJX Co.'s Retail Security Breach, Litig.*, 246 F.R.D. 389, 292 (D. Mass. 2007)

6    ("It is well established that members of a plaintiff class must all have the legal right to bring suit

7    against the defendant on their own; inclusion of those without such standing renders the class over

8    broad."), *aff'd **in part and vacated in part on other grounds***, 564 F.3d 489, 501 (1st Cir. 2009)

9    (noting that the "district court showed enviable mastery of class action law and analysis.").[6]

10       This is the precise Article III test Chavez fails.  Chavez' class definition—"all

11   purchasers"—necessarily includes individuals who fail the Article III test because they did not

12   suffer a cognizable "injury."  These include: (1) individuals who purchased a beverage without

13   noticing the label's reference to Santa Fe; or (2) who did not care, one way or the other, where the

14   product was manufactured; or (3) whose decision to purchase Blue Sky products was based on the

15   quality or taste; (4) or, most relevant to Chavez' personal claims, individuals who purchased Blue

16   Sky beverages without any desire to associate themselves with New Mexico or support its

17   economy; and includes (5) those who received precisely what they paid for—a beverage they

18   enjoyed drinking.

19       Because Chavez' class members cannot pursue a claim in federal court in their own right,

20

21   _____

   [6]  *See also Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 334
        (S.D. N.Y. 2003) (each member of the class must have standing with respect to injuries
22       suffered as a result of defendants' actions); *O'Neill v. Gourmet Systems of Minnesota, Inc.*,
         219 F.R.D 445, 452 (W.D. Wis. 2002) (class certification denied because the plaintiffs failed
23       to state a reasonable defined class "all of whom have suffered a constitutional or representative
         violation inflicted by the defendants"); *In Re Copper Antitrust Litigation*, 196 F.R.D. 348, 353
24       (W.D. Wis. 2000), ("Implicit in Rule 23 is the requirement that the plaintiffs and the class they
         seek to represent have standing.  This is a threshold requirement of a federal class action and
25       must be considered in addition to the requirements of Rule 23"); *Clay v. American Tobacco*,
         188 F.R.D. 483, 490 (S.D. Ill. 1999) (The definition of a class should not be so broad so as to
26       include individuals who are without standing to maintain the action on their own behalf.);
         *McElhaney v. Ely Lilly & Co.*, 93 F.R.D. 875, 878 (D. S.D. 1982) (same).  *See* also C. Wright,
27       A. Miller, M. Kane, Fed. Prac. & Proc. Civ. 3d § 1785.1 (2005) ("To avoid a dismissal based
         on lack of standing, the court must be able to find that **both** the class **and** the representatives
28       have suffered some injury requiring court intervention" (emphasis added).  See Fed.R.Civ.P.
         82 (federal rules "do not extend … the jurisdiction of the district courts").

1  allowing them to pursue claims through the class action device would impermissibly enlarge their

2  substantive rights through procedural rules, contrary to the Rules Enabling Act, 28 U.S.C.

3  § 2072(b).  *See Amchem, supra* at 613.

4      Even if Chavez has validly pled that he personally suffered "an injury," he presents no

5  **facts** that anyone shares his unique circumstances and his reasons for purchasing Blue Sky

6  beverages.  As a consequence, Chavez putative class necessarily has members without Article III

7  standing.  This Court cannot certify such a class.

8  ***In re Tobacco II Cases* Cannot Compel a Different Result.**

9      In *In re Tobacco II Cases*, the California Supreme Court concluded that the standing

10  requirements for claims under California's UCL and FAL are "applicable only to the class

11  representatives, and not all absent class members."  *In re Tobacco II Cases*, 46 Cal.4th 298, 306

12  (2009).  *Tobacco II*, however, does not control whether Chavez' putative class members must

13  have Article III standing for several reasons.

14      First, federal, not state, courts have the last word on issues of federal law.  *Local Union*

15  *598 v. J.A. Jones Constr. Co.*, 846 F.2d 1213, 1218 (9th Cir. 1988); *Fraker v. KFC Corp.*, 2007

16  U.S. Dist. LEXIS 32041, *12-13 (S.D. Cal. Apr. 27, 2007) ("This court is not bound to follow the

17  California Supreme Court on any issue of federal law."); *Fiedler v. Clark,* 714 F.2d 77, 78 (9th

18  Cir. 1983) ("[T]he states have no power directly to enlarge or contract federal jurisdiction."  *See*

19  *also, Rush v. Obledo*, 517 F.Supp. 905, 911 (N.D. Cal. 1981) ("This court is not bound by ... a

20  California state court's interpretation of federal law.").  Accordingly, *Tobacco II* has no effect on

21  Article III standing requirements in this Court.

22      Second, *Lee* trumps *Tobacco II*'s holding.  Lee filed a class action against two life

23  insurance companies, ANI and ANTEX, alleging that, because they sold policies promising

24  dividends they failed to deliver, their marketing practices violated the UCL and FAL.  Lee had not

25  purchased an ANTEX policy, but based his right to sue ANTEX as a private attorney general—

26  which the UCL then allowed (Bus. & Prof. Code § 17204).  Although the UCL did not then

27  require injury-in-fact for a state court action, the Ninth Circuit in *Lee* held that injury-in-fact was

28  essential for Article III standing to establish the "case or controversy" limit on federal subject

1   matter jurisdiction.  Thus, although according to *Tobacco II* a class plaintiff in **state court** need

2   only show that the class representative has suffered injury-in-fact, Article III's mandate precludes

3   certification in federal court of a class, the members of which lack standing.

4           Third, to the extent that *Tobacco II* gratuitously attempts to address Article III standing, its

5   reasoning is suspect, at best.  It cites *Vuyanich v. Rep. Nat. Bank*, 82 F.R.D. 420, 428 (N.D. Tex.

6   1979) for the dubious proposition that, if a court certifies a class under Rule 23, "then the certified

7   class must necessarily have standing as an entity."  *Tobacco II,* 46 Cal.4th at 319.  *Tobacco II*,

8   however, failed to disclose that the Fifth Circuit had reversed *Vuyanich* and vacated the class

9   certification (see *Vuyanich v. Rep. Nat. Bank*, 723 F.2d 1195) ("The district court's class

10  certification must be vacated and remanded for reconsideration of the proper class in light of

11  *Falcon*." *Id.* at 1200).[7]

12          Further, the *Tobacco II* majority ignored the more recent, controlling and valid federal

13  authority that directly addressed the question whether a class may be certified that contains

14  members who lack standing—e.g., *Denney*, *Adashunas*, *In re Copper Antitrust Litig., McElhaney*,

15  and *Clay*—even though the dissent expressly discussed them.  Thus, not only does the *Tobacco II*

16  majority ignore this federal authority, but instead relies on an out-of-date, and overturned, district

17  court case that itself does not address the precise issue.[8]

18          As a result, to the extent that Chavez pins his class action hopes on *Tobacco II*, he fails.

19  *Tobacco II* speaks **only** to standing under state law; it has **no** effect on Article III standing

20  requirements in **this** Court.  Instead, this Court must look to federal authority to decide the

21  question.[9]  Accordingly, it is irrelevant here that absent class members in **state** court need no

22

---

23  [7]    The rehearing petition specifically brought the 5th Circuit's reversal of *Vuyanich* to the court's
        attention but the court ignored it.

24  [8]    The district court in *Vuyanich*, without citation to any authority whatsoever, spoke about "the

25      class itself" and "whether the certified class has standing."  Whatever the "class as an entity"
        might be, that district court never addressed whether a class had to be defined so that each
        class member also had Article II standing.

26  [9]    To the extent Chavez reads *Tobacco II* to displace class action requirements in federal court, it

27      does not and cannot, because that conflicts with Rule 23.  The Supreme Court recently held
        that Rule 23, not a contrary New York rule, governs parties in federal court.  *Shady Grove
        Ortho. Assoc. v. Allstate Ins. Co*., 2010 U.S. LEXIS 2929 (Mar. 31, 2010) ("[W]e have

28      rejected every statutory challenge to a Federal Rule that has come before us.").  *Id.* at 27.

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   standing to assert **state law** claims.  Article III standing is a constitutional mandate for **every**

2   party, including each class member, in federal court.

3   **Chavez Claims Preclude Article III Standing For Class Members.**

4         Chavez claims that he has suffered injury because he (1) purchased Blue Sky soda instead

5   of some other brand; (2) because he relied on the Santa Fe, New Mexico statement and/or other

6   graphic representations of the Southwest on the label; (3) and he made those purchases solely

7   because of representations that Blue Sky was a New Mexico company; (4) and he personally lost

8   money **as a result** of these purported misrepresentations of origin on the label; (5) such that he

9   was injured when he lost money because he purchased Blue Sky beverages solely as a result of

10  those misrepresentations; (6) and he would not have paid the price he paid had he known the truth

11  about the geographic origin of the beverages; (7) nor would he have bought a Blue Sky beverage

12  had he known it did not come from New Mexico; (8) because he made that purchase to support a

13  New Mexico company; and (9) to associate himself with a product from Santa Fe, New Mexico."

14        By marked contrast, however, Chavez would have the Court certify a class of:

15        All persons who, any time between May 16, 2002 and June 30, 2006, purchased in
      the United States any beverage bearing the Blue Sky mark or brand.

16

17        Chavez offers **no** facts to establish—let alone survive rigorous analysis—that **any** member

18  of such a class has suffered the requisite Article III "injury" for a justiciable "case or controversy."

19  By way of obvious example, Chavez has failed to put **any** facts before this Court so that this Court

20  could determine at a minimum:  (1) whether each, or any, potential class member purchased any

21  Blue Sky beverage because of its "affiliation" with Santa Fe, and not for other material reasons

22  (e.g., taste, ingredients, price, availability, quality, etc.); (2) whether each, or any, such class

23  member ever took notice of the allegedly misleading statements on the product's label; (3)

24  whether those statements motivated any potential class member to make the decision to purchase;

25  (4) whether the reason any potential class member purchased the product was a belief that he/she

26  would be supporting the New Mexico economy; (5) whether each, or any, potential class member

27  would **not** have purchased the product had he/she known that it was manufactured outside of

28  Santa Fe, New Mexico; (6) whether each, or any, potential class member has any affiliation

1   whatsoever with New Mexico, and if so, what; (7) whether any potential class member visited

2   Blue Sky's website and was confused about the company's place of business; and (8) whether any

3   potential class member ever called Blue Sky's telephone number posted on its website.[10]

4     Chavez puts **no** facts before this Court such a that this Court can satisfy itself that the

5   constitutional minimum for a federal class action exists and that the putative class members have

6   suffered the constitutionally required injury or that any "case or controversy" exists between any

7   class member and Blue Sky.  Chavez bears that burden—and fails to meet it.

8     Instead, Chavez' uniquely particularized claims underscore that the class he seeks does not

9   have Article III standing; it unequivocally has members who have no "case or controversy" with

10  Blue Sky as a result of a Blue Sky beverage purchase; it unequivocally has members who have

11  suffered no injury as a consequence of Blue Sky's alleged representations.  Because this purported

12  class necessarily has members who have no Article III standing, this Court cannot certify the class

13  Chavez wants to represent.

14    Even if, however, Chavez could miraculously overcome his Article III standing challenge,

15  he fails to meet Rule 23 requirements.

16  **V**

17  **THE PROPOSED CLASS FAILS TO MEET FUNDAMENTAL RULE 23 REQUIREMENTS**

18    Chavez has the burden to establish class certification.[11]  He fails.

19  **<u>No Ascertainable Class Exists.</u>**

20    As a fundamental first step, "'the class must be adequately defined and clearly

21  ascertainable before a class action may proceed.  An identifiable class exists if its members can be

22  ascertained by reference to objective criteria, but not if membership is contingent on the

23  prospective member's state of mind'."  *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80

24  (S.D. Cal. 1999), *quoting Elliott v. ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992).  A class

25  exists **only** if the class is definite enough that it is administratively feasible for the court to

26

27  [10] In fact, we know none did.  See Kammer Decl., ¶ 2, Ex. A, pp. 2-4 (Response to Interrogatories 1-4).

28  [11] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

1    ascertain whether an individual is a member.  *Deitz v. Comcast Corp*., 2007 U.S. Dist. LEXIS

2    53188 (N.D. Cal. 2007).  If the class definition has "criteria that are not readily ascertainable, it

3    would be nearly impossible to determine who was actually included as an appropriate class

4    member."  *Id*. at *25; *see also Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999).

5    Chavez' class is hopelessly broad and necessarily fails because it ignores the gravamen of

6    his complaint that he relied on Blue Sky's alleged geographic misrepresentations.[12]  His  proposed

7    class includes individuals motivated to purchase Blue Sky beverages for any typical consumer

8    reason and **not** because of the label's geographic reference.[13]  *Schwartz, supra*, (denying

9    certification where court would be required to hold a series of "mini-trials" to determine individual

10   class members' motivation for buying sports trading cards).

11   Because Chavez' CLRA and fraud claims require an in-depth analysis of each potential

12   class member's motivation, the class is unascertainable and, thus, fails as a matter of law.

13   *Akkerman v. Mecta Corp.*, 152 Cal.App.4th 1094, 1102 (2007) (denying certification because

14   individual issues would "splinter into individual trials" regarding issues of damages, proximate

15   cause and comparative fault).

16   In addition, there is no way to identify the members of the class.[14]  Blue Sky does not sell

17   its beverages directly to consumers.  Rather, it markets and sells its beverage line in all 50 states

18   and the District of Columbia through a complex system of distributors and retailers.  Declaration

19   of Rodney Sacks ("Sacks Decl."), ¶4.  Consumers buy Blue Sky at thousands of retail outlets

20   across the country, the vast majority of which neither track nor retain any information about the

21   individual retail purchasers.  Sacks Decl. ¶6.  For these reasons, no amount of class discovery

22

---

23   [12]  Chavez' purported class even defies the claims he pled.  The CLRA and common law fraud
          statutes of limitation are 3 years.  Civ. Code § 1783; Civ. Proc. Code § 338(d).

24   [13]  The CLRA only protects individuals who purchase goods or services for personal, family, or
          household purposes.  Civ. Code § 1761(d).  Chavez' class includes those purchasers who

25        bought Blue Sky beverages for commercial purposes.  Additionally, those who bought the
          beverages only for personal, family or household purposes would be difficult, if not

26        impossible, to identify.  *See also, Mazur v. eBay, Inc*., 257 F.R.D. 563, 567 (N.D. Cal. 2009).

27   [14]  Chavez alleges that the class is comprised of 100,000 or more individuals.  (Complaint, ¶ 12.)
          Yet, he offers no basis to identify them.  Even if Chavez were permitted to conduct class
          discovery, it would be impossible to determine who purchased the beverages—let alone which

28        consumer suffered a constitutional "injury."

1   would identify consumers who fit Chavez' class definition.

2       Judge Brewster's analysis in *Schwartz* is on point.  The plaintiffs' claims there, as here,

3   depended on motive.  The plaintiffs said they purchased trading cards to find a "chase" card that

4   gave them the chance of winning a prize.  "Without such intent, consideration paid equaled that

5   received."  *Id.* at 676.  As Judge Brewster stated, class membership could not be determined based

6   merely on the purchase of cards within a specified period of time.  Rather, the plaintiff's claim

7   turned on individual, subjective intent.  *Id.* at 677.

8       Because Chavez cannot define a viable class, let alone demonstrate how its members could

9   be identified, the Court cannot certify this, or any other, class.  To survive dismissal, Chavez has

10  turned himself into a class of one.

11                                      **VI**
            **CHAVEZ CANNOT SATISFY THE OTHER REQUIREMENTS OF RULE 23**

12

13      Rule 23(a) mandates:  (1) a class be so numerous that joinder is impracticable; (2) sharing

14  common questions of fact; (3) where plaintiff's claims are typical of those of the class; and

15  (4) where the plaintiff will fairly and adequately represent class interests.  Chavez fails the

16  "rigorous analysis" test of **each** Rule 23 element.  *Falcon*, *supra* at 161; *Dukes, supra* at *15.

17  **Chavez Does Not Meet the Numerosity Requirement.**

18      Chavez must demonstrate that he has "sufficiently identified and demonstrated the

19  existence of the numbers of persons for whom [he] speaks."  *Schwartz*, *supra,* 183 F.R.D. at 680-

20  81 ("Based on the information presented to the Court, the number of possible class members could

21  range from as few as the class representatives, and possibly some family and friends, to

22  millions."); *see also Siles v. ILGWU Nat'l Ret. Fund*, 783 F.2d 923, 930 (9th Cir. 1986)

23  (certification denied; insufficient evidence of numerosity).

24      Given Chavez' uniquely personal claims, he has not identified **any** other individual who

25  suffered the same injury—much less enough to justify class treatment.  At this point, his is a class

26  of one.

27      Chavez would have this Court accept his best guess—if that—that some 100,000 people

28  bought Blue Sky beverages—**not** because they were thirsty, or liked the taste or price, or for some

OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    other reason—but because the label misled them to think they were supporting the New Mexico

2    economy or the beverages had a connection to Santa Fe.  That does not even pass the blush test.

3          Chavez' mere speculation is insufficient to satisfy Rule 23(a)'s numerosity requirement.

4    *Nguyen Da Yen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976) (denying class certification for

5    a class of unadopted Vietnamese children in the United States with parents in Vietnam seeking

6    their return); *Siles, supra,* 783 F.2d at 930 (numerosity not met in an ERISA pension fund

7    eligibility case because, although the plan covered 31,000 employees who lost their jobs, plaintiff

8    failed to show how many employees were eligible for and failed to receive benefits).  A purported

9    class action plaintiff must be able to show some evidence of, or **reasonably** estimate, the number

10   of class members.  *Schwartz,* 183 F.R.D. at 681.  That requires a higher level of proof than some

11   vague impression or extrapolation from cursory allegations.  *Id.*

12         Moreover, Chavez cannot satisfy the numerosity requirement merely by alleging that Blue

13   Sky sold in excess of $20 million product (or more than 500,000 cases per year).  Chavez has no

14   evidence how sales volume translates into an identifiable number of purchasers.  Additionally,

15   because this lawsuit involves a determination of individual motivation, "[s]ales volume standing

16   alone cannot serve as the basis of a numerosity finding" for the simple reason that "mere purchase

17   is not the question.  Instead, it is the **reason** behind the purchase."  *Schwartz*, 183 F.R.D. at 681

18   (emphasis added).  Thus, even if Chavez had an identifiable number of Blue Sky purchasers, he

19   cannot state who bought Blue Sky beverages because of the alleged misrepresentations.[15]

20   Therefore, even if one speculates that there may be a handful of individuals who can claim a

21   similar "injury," without a way to identify them and efficiently determine their motive for

22   purchase, "a mere hunch by the Court is insufficient grounds" to satisfy Rule 23.  *Schwartz*, 183

23   F.R.D. at 682.

24

25   _____

     [15]  Chavez' argument fails to take into account that Blue Sky sells its beverages through a

26   complex network of distributors—none of whom likely took into account the reference to
     Santa Fe when they agreed to distribute the product, and none of whom were likely concerned

27   with supporting the New Mexican economy.  More importantly, because the sales volume
     Chavez cites reflects sales to distributors, Chavez cannot identify how many **customers**

28   actually purchased the product.  Even Chavez himself has no proof of his purchases.  (See
     Kammer Decl., ¶ 3, Ex. B, p. 2 (Response to Interrogatory No. 6).

1   Chavez has not satisfied his burden; he speaks for no one but himself.

2   **Chavez' Claims Fail to Satisfy Rule 23(a)'s Commonality and Typicality Requirements.**

3   Chavez must also demonstrate that there are common questions of law or fact for class

4   members and that his claims are typical of theirs.  Commonality examines the relationship of facts

5   and legal issues common to class members, while typicality focuses on the relationship of facts

6   and issues between the class and its representatives.  *Cotes v. Nyko Techs., Inc.*, 247 F.R.D. 589

7   (C.D. Cal. 2007).  Chavez can show neither.

8   <u>**Chavez' Claims Are Too Individualized to Satisfy Rule 23(a)'s Commonality**</u>
    <u>**Requirement.**</u>

9

10   Chavez bears the burden of proving commonality.  *Falcon, supra*, at 161.  While

11   commonality is sometimes a "low hurdle" for a class representative (*Duhaime v. John Hancock*

12   *Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997)), that is not so where individual issues of

13   motivation and damages predominate.  *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir.

14   2004), although not a UCL case, demonstrates why Chavez cannot meet his burden.  The issue in

15   *Poulos* was whether the court could certify a class where the salient factual question was class

16   members' reliance on alleged misrepresentations that video poker and electronic slot machines

17   actually provide an opportunity to win on any given play (*i.e.*, the false belief that electronic

18   gambling has the same degree of "chance" as conventional card games).  The defendants argued

19   that, because each class member's reliance on the alleged misrepresentations was central to any

20   finding of liability, class treatment was inappropriate.  *Id.* at 664.  The Ninth Circuit agreed and

21   refused to allow a presumption of reliance:  "[A] presumption of reliance typically has been

22   applied in cases involving securities fraud and, even then, the presumption applies **only** in cases

23   primarily involving 'a failure to disclose'—that is, cases based on omissions as opposed to

24   affirmative misrepresentations."  *Id.* at 666 (emphasis added).  The court rejected the argument

25   that class-wide circumstantial evidence could prove reliance, determining that such an attempt was

26   a subterfuge to avoid proving causation.  *Id.* at 667.

27   Like the plaintiffs in *Poulos*, Chavez' claim is based on Blue Sky's alleged affirmative

28   misrepresentations of geographic origin; like *Poulos*, the only way for Chavez to prove causation

1    for a consumer's decision to purchase Blue Sky is individual determination of each plaintiff's

2    awareness of the geographic reference and whether it motivated the purchase. The need to

3    determine motive makes a putative class unascertainable and unmanageable. *Schwartz, supra* at

4    679-80. Given the similarities with *Poulos*, this Court must find that Chavez cannot establish

5    sufficient commonality between himself and his putative class.

6              **Chavez' Claims are Not Typical of the Purported Class.**

7              A class representative must be a part of the class and possess the same interest and suffer

8    the same injury as the class members. *Falcon, supra*, at 156. Therefore, courts look not only to

9    whether class members have similar injuries, but also, "whether the action is based on conduct

10   which is not unique to the named plaintiffs," and "whether other class members were injured by

11   the same conduct." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 618 (C.D. Cal. 2008); *see*

12   *also, Hanon v. Dataprods., Inc.*, 976 F.2d 497, 508 (9th Cir. 1992) (same). Because of the unique

13   nature of Chavez' alleged injuries, and the necessity that each class member individually prove

14   his/her motivation to show cognizable injury, there cannot be a "typical" class representative.

15             Chavez' claims are further atypical because he did not buy each product in the Blue Sky

16   beverage line. (Kammer Decl. ¶ 3, Ex. B, p. 2 (Response to Interrogatory 5).) This was precisely

17   the reason the court denied class certification in *Wiener v. Dannon*, 255 F.R.D. 658 (C.D. Cal.

18   2009). There, plaintiff sought to certify a class based on the alleged misrepresentations of the

19   health benefits of Activia*, Activia Light,* and DanActive yogurt products. *Id.* The court denied

20   plaintiff's certification motion because her claims were not typical of the entire class since she had

21   only purchased one product at issue in the litigation. *Id.* at 665.

22             The same holds true here. Not every Blue Sky can had the same label. Chavez has only

23   specifically identified a handful of Blue Sky products that he purchased.[16] Like *Wiener*, Chavez'

24   claims are not typical of his class members—who may have purchased any number of the other

25   Blue Sky Natural beverage products.[17] Chavez' claims are therefore anything but typical.

26

27   [16]  Kammer Decl., ¶ 3, Ex. B, p. 2 (Response to Interrogatory No. 5).
     [17]  Blue Sky has several product lines, including Blue Sky Energy Drinks, Blue Sky Lite, Blue
28   Sky Real Sugar sodas, Blue Sky Sport drinks, Blue Sky Premium Ginseng Drinks, Blue Sky
     Organic Sodas, Blue Sky Seltzers, Blue Sky Tea Sodas, and Blue Sky Free. Each product line

1
2

## VII
## CHAVEZ CANNOT SATISFY THE REQUIREMENTS OF RULE 23(b)(3)

3        In addition to demonstrating that he meets all Rule 23(a)'s requirements, Chavez must also

4  establish that he meets the requirements of Rule 23(b)(3).  Chavez fails.[18]

5  **Certification is Inappropriate Because Individual Issues Predominate.**

6        Due to the subjective and idiosyncratic nature of Chavez' claims that, as a former New

7  Mexico resident, he purchased Blue Sky beverages because he believed they originated from New

8  Mexico and because of his affinity with and desire to support the New Mexican economy, it is

9  most unlikely that anyone will bring a separate action involving the same subject matter absent a

10  class action.  *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968), *rev'd on other*

11  *grounds*, 417 U.S. 156 (1974) (certification denied because multiple individual actions unlikely);

12  *see also, Eliasen v. Green Bay & W.R.R.*, 93 F.R.D. 408, 412 (E.D. Wis. 1982), *aff'd*, 705 F.2d

13  461 (7th Cir. 1983), *cert. denied*, 464 U.S. 874 (1983) (record suggested no similar suits would be

14  brought).  Indeed, except for Chavez' defective CLRA notice, no consumer has ever complained

15  about the origin of Blue Sky Beverages since Hansen acquired the Blue Sky line in 2000.  (Maria

16  Garcia Declaration, ¶ 4.)

17        Even if the Court were to find that Chavez' alleged reliance and purported "injury"

18  believable, he has put himself in a Catch-22 vis-à-vis his class claims.  Chavez is seeking a large

19  money award based on his theory that Blue Sky somehow defrauded him.  (Complaint ¶¶ 90-100.)

20  At the same time, Chavez has no choice but acknowledge that, if this lawsuit were certified as a

21  class, the "injuries" each class member potentially sustained would be markedly different.  In

22  other words, putting aside the difficulty in calculating damages for each class member,[19] the only

23
24
25

comes in various flavors, most of which Chavez has never purchased or consumed.  Sacks
Dec., at ¶ 12.

26  [18]  Since Chavez only seeks Rule 23(b)(3) certification, Blue Sky will spare the Court
unnecessary briefing on portions of the Rule presently inapplicable.  Should Chavez shift
ground and suddenly seek Rule 23(b)(1) or (b)(2) certification, Blue Sky will then seek leave

27  to address Chavez' inability to meet the requirements of Rule 23(b)(1) or (2) as well.
[19]  Even Chavez will have difficulty calculating damages.

28

1    way for the jury to make an adequate determination of each class member's "injury" is through

2    individual "mini-trials."

3          *Cohen* directly demonstrates this point.  *Cohen, supra*, at 979-81.  In *Cohen*, the court

4    affirmed an order denying a motion to certify a class under the UCL and CLRA of all DirecTV

5    customers because the class would include customers "who never saw DIRECTV advertisements

6    or representations of any kind or who only saw and/or relied upon advertisements not containing

7    the allegedly misleading language."  *Id.* at 979.  The court concluded, that common issues of fact

8    did not predominate because "the members of the class stand in a myriad of different positions

9    insofar as the essential allegation in the complaint is concerned, namely, that DIRECTV violated

10   the CLRA and UCL by inducing subscribers to purchase HD services with false advertising."  *Id.*

11   at 979-80.

12         The situation is identical here.  Members of the proposed class (**all** purchasers of **all** Blue

13   Sky beverages) have countless reasons to buy Blue Sky beverages; not all would have noticed, or

14   cared about, the "Santa Fe" language.

15         Despite what Chavez argues, even putting aside Article III considerations, *Tobacco II* does

16   not mandate or even permit the certification of a class in these circumstances.  As *Cohen* stated:

17         *Tobacco II* held that for purposes of standing in the context of the class certification
          issue in a 'false advertising case involving the UCL, the class members need not be
18        assessed for the element of reliance.  Or, in other words, class certification may not
          be defeated [in state court] on the ground of lack of standing upon a showing that
19        class members did not rely on false advertising….

20   *Cohen,* A178 Cal.App.4th at 981.

21         To the contrary, in *Tobacco II* reiterated that the class certification state rules remained in

22   place in UCL cases.[20]  In sum, *Tobacco II* does not permit or require the certification of a class

23   comprised of all Blue Sky purchasers, without a showing that they relied on the "Santa Fe"

24   language.

25   **Individual Factual Issues Predominate.**

26         Although Chavez recites a list of "common claims," he ignores the most significant

27

28   [20]   To the extent Chavez contends that *Tobacco II* displaces federal class action procedures, Rule
          23 governs parties in federal court.  *Shady Grove, supra.*

1  individualized issues including reliance and damages.  *In re Ford Motor Co. Vehicle Paint Litig.*,

2  182 F.R.D. 214, 220-21 (E.D. La. 1998) (commonality not met where individualized

3  determinations of causation, reliance, damages and affirmative defenses were necessary to

4  determine liability in a fraudulent concealment case).  These individualized issues outweigh any

5  common questions of law and fact.

6  **Individualized Showing of Damages Still Required Under *Tobacco II*.**

7           Even if, for state law standing purposes, Chavez need only prove his own standing for

8  UCL or FAL injunctive relief, where he seeks money damages—as he does with his Rule 23(b)(3)

9  class—this Court is required, as a matter of California law, to assess each individual plaintiff's

10  reliance on the representations on Blue Sky's labels and each plaintiff's claim for damages.

11  *Sanders, supra,* at *29 (denying class action where the court "would be forced to engage in

12  individual inquiries of each potential class member").[21]

13           Chavez attempts to skirt these reliance requirements by arguing, among other things, that

14  such reliance may be presumed where he claims the alleged misrepresentations were material.

15  (Doc. 94, p. 16).  *In re Steroid Hormone Prod. Cases*, 181 Cal.App.4th 145, 155 (2010).  A

16  representation is material only when "a reasonable man would attach importance to its existence or

17  nonexistence in determining his choice of action in the transaction in question."  *Id.* at 157.  As

18  evidence of materiality, Chavez says he "will present evidence" that the statements about the name

19  and location of the manufacturer and origin of the product were material to consumers in the

20  natural, health foods marketplace.  (Doc. No. 94, p. 16).  This "evidence" fails.

21           For the statements to be material, Chavez must show that the words "Santa Fe, New

22  Mexico" and "Canned Under the Authority of Blue Sky Natural Beverage Co., Santa Fe, New

23  Mexico" were the determining factor in motivating class members to purchase a Blue Sky

24  beverage.  That necessarily eliminates every purchaser who ignored these statements and bought

25  the soda for some other reason—ingredients, value, or taste.  For them, the Santa Fe references are

26

27  [21]  Given the substantive and procedural difficulties underlying such an investigation, "courts
      routinely hold that both fraud and warranty claims are difficult to maintain on a nationwide
28    basis and rarely are certified."  *Id.* at *29-30.

1   immaterial and reliance cannot be presumed or imputed.  *See id.* at 156-57.  Yet Chavez defines

2   his class as "**every purchaser**."  Chavez offers no evidence that these statements were material to

3   anyone other than himself, or that "Santa Fe" on the label motivated anyone else to buy a Blue

4   Sky beverage.  This court cannot reasonably presume that anyone, other than Chavez, relied on

5   these statements, thus requiring a showing of individualized reliance.

6        For the same reasons, Chavez cannot advance a "fraud-on-the-market" theory to save his

7   common law fraud claim.  *Mirkin v. Wasserman*, 5 Cal.4th 1082 (Cal. 1993).  In *Mirkin*, plaintiffs

8   brought common law fraud claims for securities purchases at prices allegedly affected by

9   defendants' misrepresentations, without alleging actual reliance.  Plaintiffs argued that reliance

10   may be pled "by the equivalent of the fraud-on-the-market doctrine, i.e., material

11   misrepresentations to the class, plus action consistent with reliance thereon."  *Id.* at 1095.  In this

12   context, materiality hinged on whether one would have acted differently had the omitted

13   information been disclosed.  *Id.* at 1093.

14        The California Supreme Court said no.  It held that reliance cannot be presumed merely by

15   demonstrating the defendant's misrepresentation or even the plaintiff's exposure to the defendant's

16   misrepresentation.  The *Mirkin* court explained that a presumption of reliance will arise **only**

17   where the misrepresentation actually came to the attention of the plaintiff.  Plainly, a plaintiff

18   cannot have relied upon a misrepresentation, the existence of which he was unaware.  Under

19   *Mirkin*, Chavez is required to do more than merely show that the labels contained a

20   "misrepresentation."  He must prove that the misrepresentation on the label came to the class

21   member's attention before purchasing the product.  Chavez has not and cannot establish this

22   predicate fact and consequently reliance cannot be presumed , much less proved, on a classwide

23   basis.

24        Precisely the same analysis is applicable to Chavez' CLRA claim, because "the CLRA

25   requires a showing of actual injury as to each class member."  *Steroid Hormone Product Cases,*

26   *supra* at p. 155.  Thus, in order to obtain relief under the CLRA "both the named Plaintiff and the

27   unnamed class members must have suffered some damage caused by a practice deemed unlawful

28   under Civil Code section 1770."  *Id.* at p. 156.  Thus, the same barrier that precludes a

1   presumption of reliance by class members on the alleged misrepresentation for the fraud claim—

2   actual knowledge of the misrepresentation—also precludes a presumption of reliance for the

3   CLRA claim."

4       Chavez also claims that *Vasquez v. Sup. Ct.*, 4 Cal.3d 800 (1971) saves his fraud claim.

5   For the reasons stated immediately above, it does not.  See *Mirkin, supra*.

6       Because Chavez' reliance cannot be imputed to the class on either his CLRA or common

7   law claims, individual issues of reliance and damages predominate.

8   <u>**The Law Applicable to the Proposed Class is Not Uniform.**</u>

9       Chavez cannot rely on California's consumer protection laws to support his proposed

10  nationwide class because the law applicable to the proposed class is not uniform.  *Miller v.*

11  *General Motors Corp.*, 2003 U.S. Dist. LEXIS 1467, *3-5 (N.D. Ill. Jan. 27, 2003) (citation

12  omitted).  No court has held that the fifty states' consumer fraud statutes, or common laws of

13  fraudulent omission, are so similar that a single forum state's law may be applied to an omni-state

14  class.  *Id.* at *5, n.3.  In fact, virtually every court to face the issue has steadfastly refused to certify

15  nationwide class actions due to variance in states' laws.  *Id.* at *5, n.4 (citations omitted).

16      In *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 222-25 (1999), the court

17  held that the UCL was not intended to have extraterritorial effect; it issued a writ directing the trial

18  court to decertify a nationwide class.  The conduct at issue here (allegedly misleading consumers

19  buying beverages) occurred wherever the consumer bought the beverage—i.e., in all 50 states.

20  Thus, personal jurisdiction over Blue Sky does not justify application of California law to non-

21  resident plaintiffs' claims.  There are constitutional limitations on the forum state's application of

22  its law to the claims of non-resident plaintiffs in a nationwide class action.

> To apply its law constitutionally to the claims of nonresident class members, the
> forum state must have a 'significant contact or [significant] aggregation of
> contacts' to the claims asserted by each member of the plaintiff class, contacts
> 'creating state interests[,'] in order to ensure that the choice of [forum] law is not
> arbitrary or unfair. [Citation.] (*Clothesrigger, supra*, 191 Cal.App.3d at pp. 612-
> 613, quoting *Shutts, supra*, 472 U.S. at pp. 821-822, italics added.)

27  *Id.* at 225-26.

28      Likewise, in *Cohen v. DirecTV, Inc.*, 178 Cal.App.4th 966 (2009), the court affirmed the

1   trial court's order that, under *Norwest*, the court could not certify a nationwide class of UCL and

2   CLRA claims against DirecTV (a company based in El Segundo, California).  *Id.* at 972-73, 979.

3   Common issues of law, therefore, did not predominate.  *Id.* at 979.  It is the same here.

4   **Individual Issues Necessarily Trump Class Issues.**

5        Further, Chavez' class is not "sufficiently cohesive to warrant adjudication by

6   representation."  *Amchem Prods., supra*, at 623.  Unlike a securities fraud class action where the

7   court can often efficiently and formulaically determine (a) the members of the class, (b) whether

8   the omissions were material, and (c) the nature and amount of damages, this case poses unique

9   individual questions where each class member's claims will—for all the reasons discussed

10  extensively above—"depend on facts particular to each individual plaintiff."  *In re Ford Motor*

11  *Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, 194 F.R.D. 484, 488 (D.N.J. 2000).

12  Because each member's state of mind and motivation is particularly relevant, this lawsuit is not

13  appropriate for class treatment.  *Schwartz, supra* at 679; *Poulos*, *supra* at 664.

14  **On These Facts, A Class Action is Neither Superior Nor Manageable.**

15       Where as here, individual issues predominate, the class action process becomes

16  unmanageable.  *Endres v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. 2008).

17  Due process requires that Blue Sky have the opportunity to cross-exam each class member to

18  determine, *inter alia*, (a) if he or she was aware of the alleged representation before purchasing the

19  product; (b) if the representation of Blue Sky's "affiliation" with Santa Fe, New Mexico was a

20  reasonable and material motivator for the purchase of the product; (c) if he or she was injured

21  because of the alleged misrepresentation; and (d) the extent of each plaintiff's damages.

22       In *Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009), the

23  court denied class certification in a frozen waffle packaging case for two reasons:  manageability;

24  and predominance of individual issues—identification of each class member and proof of which

25  brand of waffles each purchased, in what quantity, and for what purpose.  ("The likelihood that

26  tens of thousands of class members saved their receipts as proof of their purchase of Van's

27  Waffles is very low."  *Id.* at *11.)  "The Court will not engage in its own investigation as to which

28  of Van's 19 frozen waffle varieties class members purchased, how much each class member spent,

1   and whether those particular varieties contain nutritional inaccuracies." *Id.* at *12).

2       The size of the class Chavez claims would turn an otherwise simple five-day jury trial

3   involving one plaintiff into "a gigantic burden on the Court's resources beyond its capacity to

4   manage or effectively control." *See In re Hotel Tel. Charges*, 500 F.2d 86, 91 (9th Cir. Cal.

5   1974); *see also Schwartz, supra* at 676.

6   **The Process of Determining Damages Makes Class Treatment Untenable.**

7       "Where the plaintiffs' damages claims 'focus almost entirely on facts and issues specific to

8   individuals rather than the class as a whole,' the potential exists that the class action may

9   'degenerate in practice into multiple lawsuits separately tried.'" *O'Sullivan v. Countrywide Home*

10  *Loans, Inc.*, 319 F.3d 732, 744 (5th Cir. 2003).  Here, determining each member's reasonable

11  reliance and damages, if any, would force the Court to oversee thousands of "mini-trials."  Thus,

12  the jury will have to determine:  (a) which class member purchased Blue Sky beverages; (b)

13  motivated by Blue Sky's "misrepresentations;" (c) to what extent each sustained an "injury;" and

14  (d) how much money, if any, each may be entitled to recover.

15      Additionally, this putative class action would inevitably invite consumers to engage in

16  fraud on the Court, as in *Ludke v. Philip Morris, Inc.*, where the court denied class certification

17  finding that "certification of the proposed class would be an invitation for fraud" because people

18  purchase cigarettes "so frequently and as a matter of course ... they do not generally keep receipts

19  or any other proof of purchase." *Ludke v. Philip Morris, Inc.*, 2001 WL 1673791, *3 (D. Minn.

20  Nov. 21, 2001).  Common sense, and Chavez' admission that even he has no purchase receipts,

21  underscores that Blue Sky purchasers do not retain evidence they purchased a can of soda.[22]  Thus,

22  class treatment would invite people to fabricate purchases.

23  / / /

24  / / /

25  / / /

26

27

28  _____
    [22]   Kammer Decl., ¶ 3, Ex. B, p. 2 (Response to Interrogatory No. 6).

1

**VIII**
**CONCLUSION**

2

3      Article III and Rule 23's requirements demonstrate that the uniqueness of Chavez' claims

4  mandates denial of his class certification motion.

5                                         Respectfully submitted,

6  DATED: May 6, 2010                     SOLOMON WARD SEIDENWURM & SMITH, LLP

7

8                                    By:   */s William N. Kammer*
                                          NORMAN L. SMITH
9                                         WILLIAM N. KAMMER
                                          E-mail wkammer@swsslaw.com
10                                        Attorneys for Defendants
                                          Blue Sky Natural Beverage Co., Hansen Beverage
11                                        Company and Hansen Natural Corporation

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>**CERTIFICATE OF SERVICE**</u>

2

I caused **OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS**

3

**CERTIFICATION** to be served in the following manner:

4

<u>**Electronic Mail Notice List**</u>

5

The following are those who are currently on the list to receive e-mail notices for this case.

| | |
|---|---|
| Adam J. Gutride (Cal. State Bar No.181466)<br>Seth A. Safier (Cal. State Bar No. 197427)<br>Gutride Safier LLP<br>835 Douglass Street<br>San Francisco, CA 94114<br>Telephone: (415) 271-6469<br>Facsimile: (415) 449-6469<br>Attorneys for Plaintiff | |

6

7

8

9

10

11

<u>**Manual Notice List**</u>

12

The following is the list of attorneys who are not on the list to receive e–mail notices for

13

this case (who therefore require manual noticing).

14

No one.

*s/ William N. Kammer*

15

William N. Kammer

16

17

18

19

20

21

22

23

24

25

26

27

28