1  ADAM J. GUTRIDE (State Bar No. 181466)
   SETH A. SAFIER (State Bar No. 197427)
2  GUTRIDE SAFIER LLP
   835 Douglass Street
3  San Francisco, California 94144
   Telephone:  (415) 336-6545
4  Facsimile:   (415) 449-6469

5  Attorneys for Plaintiff

6              UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8              SAN FRANCISCO DIVISION

9
   CHRIS CHAVEZ, an individual, on behalf of          Case No. CV-06-06609 (VRW)
10 himself, the general public and those similarly
   situated
11                                                     REPLY MEMORANDUM IN SUPPORT
                                                       OF PLAINTIFF'S MOTION FOR CLASS
12     Plaintiff,                                      CERTIFICATION

13         v.
                                                       DATE:        May 27, 2010
14 BLUE SKY NATURAL BEVERAGE CO., a                    TIME:        10:00 am
   foreign corporation; HANSEN NATURAL CORP.,          CTRM:        Courtroom 6, 17th Floor
15 a foreign corporation; HANSEN BEVERAGE
   COMPANY, a foreign corporation; AND DOES 1          Hon. Vaughn R. Walker
16 THROUGH 10

17     Defendants

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................. 1

   A.   Nothing in *Dukes* Counsels Against Certification ............................................ 1

   B.   Class Members' Purchasing Motivations Are Not Relevant. ............................. 1

   C.   There Is No "Law of the Case" On Class Certification. ..................................... 2

   D.   Certification Does Not Violate Article III. ........................................................ 3

   E.   The Proposed Class Meets All The Requirements of Rule 23(a). ...................... 7

      1.   The Proposed Class is Sufficiently Numerous ......................................... 7

      2.   The Proposed Class is Ascertainable. ....................................................... 8

      3.   There are Common Questions of Fact and Law ........................................ 9

      4.   Plaintiff's Claims Are Typical. ................................................................. 9

   F.   Plaintiff's Claims Also Meet The Requirements of Rule 23(b)(3). .................. 10

      1.   Common Issues Predominate ................................................................... 11

      2.   California Law Is Applicable to All Class Members ............................... 12

      3.   This Class Action Is Both Superior and Manageable ............................. 13

II.   CONCLUSION ......................................................................................................... 15

1

## TABLE OF AUTHORITIES

2

3

## CASES

4   *Adashunas v. Negley*, 626 F.2d 600 (7th Cir. 1980) ...................................................5, 6

5   *Baghdasarian v. Amazon.com, Inc.,* 258 F.R.D. 383 (C.D. Cal. 2009)...........................4

6   *Bank of the West v. Superior Court,* 2 Cal. 4th 1254 (1992) .........................................1

7   *Birdsong v. Apple, Inc.,* 590 F.3d 955 (9th Cir. 2009)...................................................4

8   *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).................11

9   *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768 (C.D. Cal. 2009) ........................5

10   *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001), ...................................4, 6

11   *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586 (E.D. Cal. 2008) ...........................8

12   *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...................................14

13   *Chavez v. Blue Sky Natural Beverage Co.,* 340 Fed. Appx. 359 (9th Cir. 2009) ...........................2

14   *Church v. Consolidated Freightways*, 1992 U.S. Dist. LEXIS 18234 (N.D. Cal. 1992) .............12

15   *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal.App.3d 605 (1987).........................................13

16   *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009).............................................11

17   *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197 (1983)...........1

18   *Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006) ...........................................6

19   *Dilts v. Penske Logistics*, LLC, 2010 U.S. Dist. LEXIS 40568 (S.D. Cal. Apr. 26, 2010)...........10

20   *Dukes, et al v. Wal-Mart Stores, Inc.*, 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26 2010) .........1

21   *Feldman v. Allstate Ins*. Co., 322 F.3d 660 (9th Cir. 2003).........................................2

22   *Friedman v. 24 Hour Fitness USA, Inc.*, 2009 U.S. Dist. LEXIS 81975 (C.D. Cal. Aug. 25, 2009)8

23   *Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009).................14

24   *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).............................7

25   *In re Antibiotic Antitrust Actions*, 333 F. Supp. 278 (S.D.N.Y. 1971) ...........................15

26   *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *9-14 (S.D.N.Y. 2000)..........................................................10

27   *In re Revco Sec. Litig.*, 142 F.R.D. 659, 665 (D. Ohio 1992).........................................11

28   *In re Sugar Indus. Antitrust Litig.*, 1976 U.S. Dist. LEXIS 14955 (N.D. Cal. May 21, 1976) .....15

1     *Kasky v. Nike, Inc.,* 27 Cal. 4th 939 (2002) ........................................................1

2     *Keilholtz v. Lennox Hearth Prods.,* 2010 U.S. Dist. LEXIS 14553 (N.D. Cal. Feb. 16, 2010).....13

3     *Kohen v. Pacific Investment Management Company LLC*, 571 F.3d 672 (7th Cir. 2009) ..............6

4     *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ........................8

5     *Lee v. American National Insurance Company,* 260 F.3d 997 (9th Cir. 2001) ............................4

6     *Ludke v. Philip Morris, Inc.*, 2001 WL 1673791 (Minn. Dist. Nov. 21, 2001)............................14

7     *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ........................................................7

8     *Lymburner v. U.S. Fin. Funds, Inc.*, 2010 U.S. Dist. LEXIS 5081 (N.D. Cal. Jan. 22, 2010)..4, 13

9     *Martin v. Dahlberg*, 156 F.R.D. 207 (N.D. Cal. 1994)...................................................12

10    *Mazur v. eBay Inc.*, 257 F.R.D. 563 (N.D. Cal. 2009) ........................................................8

11    *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008)....................................13

12    *Meijer, Inc. v. Abbott Labs.*, 71 Fed. R. Serv. 3d 644 (N.D. Cal. 2008)....................................12

13    *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993)........................................................12

14    *Moreno v. Autozone, Inc.*, 251 F.R.D. 417 (N.D. Cal. 2008) ........................................8

15    *Mortimer v. Baca,* 594 F.3d 714 (9th Cir. 2010) ........................................................3

16    *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ...........................8

17    *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580 (C.D. Cal. 2008) ........................13

18    *Plascencia v. Lending First Mortgage,* 259 F.R.D. 437 (N.D. Cal. 2009)......................4

19    *Poulos v. Caesar's World, Inc.*, 379 F.3d 654 (9th Cir. 2004)........................................9

20    *Sanders v. Apple,* 672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................5

21    *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999)........................................9

22    *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32 (1st Cir. 2003)........................................14

23    *Stanford v. Home Depot,* 2009 U.S. App. LEXIS 25758 (9th Cir. 2009) .....................5

24    *State Farm Mutual Automobile Ins. Co. v. Superior Court*, 114 Cal.App.4th 434 (2003)............13

25    *Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009).......................8

26    *Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................................10

27    *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010) ..............................1, 2

28

*Tchoboian v. Parking Concepts*, 2009 U.S. Dist. LEXIS 62122 at *12-13 (C.D. Cal. July 16, 2009) 7, 8

*The William H. Morris Co. v. Group W, Inc.,* 66 F. 3d 255 (9th Cir. 1995). ................................2

*Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931 (9th Cir. 2001) ...........................................12

*Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906 (2006) ...........................................12

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001) ....................................................13

*Wiener v. Dannon*, 255 F.R.D. 658 (C.D. Cal. 2009) ............................................................9, 10

## RULES

Fed. R. Civ. P. 23(c)(4) ..........................................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................................8

## TREATISES

7A Wright & Miller, Federal Practice and Procedure (2d ed. 1986) ........................................3, 13

Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS (4th ed. 2002) ...........4

# I.  ARGUMENT

## A.  Nothing in *Dukes* Counsels Against Certification

Defendants devote the first several pages of their opposition to quoting portions of the Ninth Circuit's decision in *Dukes, et al v. Wal-Mart Stores, Inc*., 2010 U.S. App. LEXIS 8576 (9th Cir. Apr. 26 2010).  *Dukes* held that a district court may not certify a class unless the elements of Rule 23 have been satisfied, and that it may be required to examine facts or legal theories that overlap with the merits.  *Id.* at *55-56.  *Dukes* affirmed certification, ruling that there were common questions as to whether Wal-Mart's female employees had been affected by allegedly discriminatory pay and promotion policies.  *Id.* at *161-162.   It also held that whether Plaintiffs' statistics demonstrated discrimination was a merits question for trial.  *Id.* at *68, 105-106.

Defendants fail to identify a single inconsistency between *Dukes* and Plaintiff's motion. Defendants also do not dispute *any* of the facts that Plaintiff offered to prove the Rule 23 elements. Most importantly, they do not dispute that during the class period, even though Defendants continually redesigned the Blue Sky packaging and website and introduced new products, *every* Blue Sky beverage can or bottle, as well as the Blue Sky website homepage, falsely referred to the Blue Sky company as being located in Santa Fe, New Mexico and omitted any reference to Hansen.

## B.  Class Members' Purchasing Motivations Are Not Relevant.

Throughout their brief, Defendants repeat the same argument to oppose certification:  that many purchasers may not have cared about the misrepresentations and would have purchased the beverages anyway.   But individual class member's motivations or state of mind are not germane to plaintiff's claims for relief.

A defendant who engages in false or deceptive advertising violates the UCL and must give restitution to all purchasers, regardless of whether the advertising caused the purchases.  Indeed, as the California Supreme Court recently reaffirmed, this has been the law for thirty years.  *See In re Tobacco II Cases,* 46 Cal. 4th 298, 306, 312 (2009) *citing Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 951 (2002); *Bank of the West v. Superior Court,* 2 Cal. 4th 1254, 1267 (1992); *Committee on Children's Television, Inc. v. General Foods Corp.,* 35 Cal. 3d 197, 211 (1983); *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 155 (2010) (ordering certification of UCL claim against

manufacturer of products that contained a controlled substance; holding that there were common questions of "(1) whether GNC's sale of androstenediol products was unlawful; and if so, (2) the amount of money GNC 'may have ... acquired by means of' those sales that must be restored to the class") *quoting* Cal. Bus. & Prof. Code § 17203.  While Proposition 64 added a requirement that the named plaintiff prove reliance and causation, it did not create such a requirement for absent class members, nor did it change the underling substantive law of a UCL violation.  *See Tobacco II,* 46 Cal. 4th at 314; *Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 232 (2006).

Moreover, under Plaintiff's CLRA and fraud claims, causation and reliance may be proven as to all members of the class merely by showing that Defendants' misrepresentations and omissions were material.  *See Steroid Hormone Product Cases,* 181 Cal. App. 4th at 157. "The fact a defendant may be able to defeat the showing of causation as to a few individual class members does not transform the common question into a multitude of individual ones; plaintiffs satisfy their burden of showing causation as to each by showing materiality as to all.'"  *Id.*

These matters of substantive state law are controlling on this Court, which is exercising diversity jurisdiction.  *See Feldman v. Allstate Ins*. Co., 322 F.3d 660, 666 (9th Cir. 2003).[1] Accordingly, the Court should reject each of Defendants' arguments that are based on the purported need to determine class members' purchasing motivations or states of mind.

### C.    There Is No "Law of the Case" On Class Certification.

Defendants contend that under the doctrine of the "law of the case," the Ninth Circuit's prior opinion requires that the class be limited to persons who were born in New Mexico or desired to support a New Mexico company.  The contention is wrong.

After the district court (Conti, J.) dismissed this litigation on the grounds that Plaintiff had not sustained injury in fact, the Ninth Circuit reversed, holding that Plaintiff properly alleged that he "lost money as a result of [Defendants' deception] in that he did not receive what he had paid for." *Chavez v. Blue Sky Natural Beverage Co.,* 340 Fed. Appx. 359, 361 (9th Cir. 2009).  The Ninth

---

[1] Under federal law, when a defendant has intentionally misled consumers, courts also will presume that "consumers were in fact deceived and the defendant would have the burden of demonstrating otherwise." *William H. Morris Co. v. Group W, Inc.,* 66 F. 3d 255, 258 (9th Cir. 1995).

1  Circuit then "additionally noted" that Plaintiff had alleged that he was born in New Mexico and

2  wanted to support a New Mexico company, which "although perhaps limiting the extent of the

3  putative class, nevertheless support his claim that he would not have purchased the product at all if

4  he had known that its true place of manufacture was outside New Mexico." *Id.*

5       The Court's phrase "although perhaps limiting the extent of the putative class" is not "law of

6  the case."  The Ninth Circuit did not make any holding as to the "extent of the putative class,"

7  which is shown by (1) its use of the word "perhaps;" (2) its lack of any reasoning or citation; (3) its

8  failure to discuss (or even mention) the class definition contained in the complaint, which is

9  coextensive with the definition being proposed now; and (4) the lack of any briefing to the Ninth

10 Circuit about class certification.  *See Mortimer v. Baca,* 594 F.3d 714, 720 (9th Cir. 2010) ("'law of

11 the case' does not apply to issues or claims that were not actually decided").  Moreover, the Ninth

12 Circuit issued its order prior to the California Supreme Court's decision in *Tobacco II.  See*

13 *Mortimer,* 594 F.3d at 721 (exception to law of case doctrine where "intervening controlling

14 authority makes reconsideration appropriate").

15         **D.    Certification Does Not Violate Article III.**

16       Defendants next argue that Article III of the U.S. Constitution precludes certification,

17 because Plaintiff has failed to present "facts" showing that each class member has standing to sue in

18 his or her own behalf.   (Def. Br. at 9).  Defendants acknowledge that under *Tobacco II,* reliance

19 need only be shown by the named plaintiff and not absent class members, but argue that the

20 California Supreme Court's holding misinterprets federal law and should not apply in federal court.

21 It is Defendants who misunderstand Article III.

22       In *Tobacco II,* the California Supreme Court correctly explained, citing federal law treatises,

23 that once a named plaintiff satisfies the standing requirements of Article III, the question of whether

24 a class may be certified turns on Rule 23, not the Constitution.  *See Tobacco II,* 46 Cal. 4th at 319

25 *citing, e.g.,* 7AA Wright et al., Federal Practice and Procedure (3d ed. 2005) § 1785.1, pp. 388-389

26 ("Representative parties who have a direct and substantial interest have standing; the question

27 whether they may be allowed to present claims on behalf of others who have similar, but not

28 identical, interests depends not on standing, but on an assessment of typicality and adequacy of

representation.").  The Court also explained that although many cases have held that "'the definition of a class should not be so broad as to include individuals who are without standing to maintain the action on their own behalf,' such references do not support the proposition that all class members must individually show they have the same standing as the class representative in order to be part of the class." *Tobacco II* at 318-19; *see also* Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS § 2.7 (4th ed. 2002) ("Passive members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court.")  The correctness of this analysis is shown by the fact that since *Tobacco II,* federal district courts in this Circuit have repeatedly certified UCL classes without requiring proof of reliance or other indicia of standing by class members.  *See, e.g., Lymburner v. U.S. Fin. Funds, Inc.*, 2010 U.S. Dist. LEXIS 5081 (N.D. Cal. Jan. 22, 2010); *Greenwood v. Compucredit Corp.,* 2010 U.S. Dist. LEXIS 3839 (N.D. Cal. Jan. 19, 2010); *Plascencia v. Lending First Mortgage,* 259 F.R.D. 437 (N.D. Cal. 2009); *Baghdasarian v. Amazon.com, Inc.,* 258 F.R.D. 383, 387 (C.D. Cal. 2009).

        Defendants have not cited, and Plaintiff is unaware of, any case decided by the Ninth Circuit that requires a showing that absent class members would have standing to bring the suit in their own behalf.   To the contrary, all the Ninth Circuit cases cited by Defendants concern the standing of the *named plaintiff.*   In *Lee v. American National Insurance Company,* 260 F.3d 997, 999 (9th Cir. 2001), plaintiff sued as a "private attorney general" under the then-existing version of the UCL; defendant removed the case; and both parties agreed that the named plaintiff, who had suffered no injury, had no Article III standing to pursue the action in federal court.  There was no discussion of what showing had to be made with respect to absent class members.  In *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001), the Court held that named plaintiffs could not assert "taxpayer standing" in federal court, as they had suffered no injury and were not entitled to any individual relief.  In *Birdsong v. Apple, Inc.,* 590 F.3d 955, 961 (9th Cir. 2009), the court held that the named plaintiffs had not alleged any injury resulting from their product purchases, and that it was not enough to allege that misuse of the products had the "potential" to cause physical harm or to reduce the products' value.  In *Stanford v. Home Depot,* 2009 U.S. App. LEXIS 25758, at *2 (9th

1  Cir. 2009), the court held that the named plaintiffs had suffered no injury from the defendant's

2  alleged delay in obtaining permits, even if other class members had been injured.[2]

3        The cases from Seventh and Second circuits on which Defendants rely are equally

4  unavailing.  None of them require proof that all absent class members could bring the claim in their

5  own behalf, and two of them say the opposite.  In *Adashunas v. Negley*, 626 F.2d 600 (7th Cir.

6  1980), plaintiffs sought to certify a class of "of all children within the State of Indiana entitled to a

7  public education who have learning disabilities who are not properly identified and/or who are not

8  receiving such special instruction as to guarantee them of minimally adequate education."  *Id.* at

9  601.  The Seventh Circuit upheld denial of certification because there was no way to determine if

10  there existed children with learning disabilities who had not already been "properly identified" or

11  who were not already receiving "adequate" education."  *Id.* at *603*.  In that context, it explained that

12  "the definition of the class was 'so amorphous and diverse' that it was not 'reasonably clear that the

13  proposed class members have all suffered a constitutional or statutory violation warranting some

14

15  [2] Two cases from district courts in this circuit purport to apply Article III analysis to absent class
members.  But even if followed, those cases do not counsel against certification here.

16
17  In *Burdick v. Union Sec. Ins. Co.*, 2009 U.S. Dist. LEXIS 121768 (C.D. Cal. 2009), the plaintiff
sued a disability insurer, alleging that the benefits of the policy were less than advertised because of
18  an inconspicuous offset provision.  *Id.* at * 2-3.  The court certified the class of policyholders to
pursue claims under the UCL, FAL and for declaratory relief, *id.*, but later decertified the class on
19  the UCL and FAL claims, on the grounds that persons who had not become disabled and thus had
not made a claim under the policy had no ripe claims for restitution.  *Id.* at *13-16.  Citing similar
20  insurance cases, it rejected the contention that those who had not made a claim for benefits could
show that their insurance policies had "diminished value," but it expressly distinguished insurance
21  policies from tangible products as to which such a diminution in value might be shown.  *Id.* at *16-
18.  It also permitted policyholders to remain in the class to seek a declaration that the offset
22  provision was invalid and thus could not be applied to them.  *Id.* at *23.  *Burdick* is inapposite, not
only because its holding is based on the intangible nature of insurance, but also because there is no
23  question of ripeness here; every class member has already made his purchase and is entitled to
restitution under *Tobacco II.*  If not inapposite, *Burdick* was wrongly decided.
24  In *Sanders v. Apple,* 672 F. Supp. 2d 978 (N.D. Cal. 2009), plaintiffs alleged that the 20-inch
Aluminum iMac did not replicate "millions of colors" as advertised and sought to certify a class of
25  "all persons who own a 20-inch Aluminum iMac."  After quoting the *Denney* case, *infra,* the court
stated, "This definition necessarily includes individuals who did not purchase their 20-inch
26  Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and
individuals who suffered no damages. Such individuals would lack standing to bring these claims."
27  *Id.* at 991.  The case is not good law because it predates *Tobacco II* and misinterprets *Denney*.  *See
infra.*  Moreover, it is distinguishable, because here, the class is limited to actual purchasers, and it
28  can be assumed that all such purchasers would have "seen" the misrepresentations.

1    relief.'" *Id.* at 605. [3]   In this case, by contrast, all class members *have* suffered a statutory violation

2    warranting some relief:  they were all subjected to false and deceptive advertising, and they are

3    entitled to restitution under the statute "without individualized proof of deception, reliance and

4    injury." *Tobacco II,* 46 Cal.4th at 326.  In *Cantrell,* the Ninth Circuit acknowledged that where

5    state law creates a legal right and provides for monetary relief upon violation of that right, the

6    violation of the state law can, in itself, create Article III standing.  *See Cantrell*, 241 F.3d at 684.

7            In *Denney v. Deutsche Bank AG,* 443 F.3d 253, 265 (2d Cir. 2006), several groups of

8    plaintiffs sued a law firm that had provided an opinion letter regarding a tax shelter; one group

9    reached a class action settlement, and others appealed.  The appellants argued that the class

10   improperly included persons who had not been audited by the IRS or had not completed the tax

11   shelter investment, and thus "have not suffered and are not likely to suffer an injury-in-fact."  The

12   Second Circuit stated the following two principles in quick succession: "We do not require that each

13   member of a class submit evidence of personal standing.  At the same time, no class may be

14   certified that contains members lacking Article III standing." *Id.* at 263, *citing Adashunas*, 626 F.2d

15   at 604.  The Court then went on to affirm certification, holding that all class members "have

16   suffered injuries-in-fact, irrespective of whether their injuries are sufficient to sustain any cause of

17   action." *Denney*, 443 F.3d at 265.  Such "injuries" included the possibility of suffering future

18   damages.   Here, likewise, even if some absent class members may not be able individually to

19   "sustain any cause of action" because they cannot show reliance, they still had "injuries" in that

20   they were subjected to statutory violations.

21           Finally, in *Kohen v. Pacific Investment Management Company LLC*, 571 F.3d 672, 677 (7th

22   Cir. 2009), the Seventh Circuit relied upon both *Denney* and *Adashunas* before approving

23   certification of a class of investors, even though some members of the class "probably were net

24   gainers from the alleged [stock price] manipulation." *Id.*  It explained that "a class will often

25   include persons who have not been injured by the defendant's conduct…. Such a possibility or

26

27   [3] The class definition also raised the problem of the "fail-safe" class that would only be bound by a
     favorable judgment; if no violation were proven, then by definition there would also be no class
28   members. *Id.* at 604.

indeed inevitability does not preclude class certification, despite statements in some cases that it must be reasonably clear at the outset that all class members were injured by the defendant's conduct.  Those cases focus on the class definition; if the definition is so broad that it sweeps within it persons who *could not have been injured* by the defendant's conduct, it is too broad." *Id.* (emphasis added).  A class could be certified as long as it was not "apparent" that the class included "a great many persons who have suffered no injury." *Id.*  Here, there is no evidence in the record that the class includes a "great many persons" who suffered no injury.  To the contrary, every class member had the same statutory injury—being subjected to false advertising.[4]

**E.    The Proposed Class Meets All The Requirements of Rule 23(a).**

**1.    The Proposed Class is Sufficiently Numerous**

Defendants next argue that to prove numerosity, Plaintiff is obligated to identify the number of purchasers "who bought Blue Sky beverages *because of* the alleged misrepresentations." (Def. Br. at 15) (emphasis added).  There is no support for such a requirement.  Numerosity tests whether the number of persons meeting the class definition is so large that joinder would be impracticable.  Here, the class is composed of people who purchased hundreds of thousands of cases of soda.  (Safier Decl. Ex. A (Sacks Depo. 140:8-23); ¶ 15 & Ex. P-Q (Sacks Depo. Ex. 16-17).)  Although the exact number of such persons is not known, this "is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class… The sheer number of potential class members justifies the Court's finding that the class in this case meets the numerosity requirement." *Tchoboian v. Parking Concepts*, 2009 U.S. Dist. LEXIS 62122 at *12-13 (C.D. Cal. July 16, 2009) *citing In re Alcoholic Beverages Litigation*, 95 F.R.D. 321, 324 (E.D.N.Y. 1982).

---

[4]When applied to named plaintiffs, constitutional standing means having an injury in fact that is "distinct and palpable," "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and "likely redressable by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal ellipses and brackets omitted).  Even if absent class members must also meet this test, they do so here, because each class member purchased a deceptively labeled product at a price that was higher than other products, such as those sold under the Hansen's name, and the price differential is attributable to the false marketing of Blue Sky as an independent, New Mexico-based company. (Complt. ¶ 60.)  Furthermore, each class member's injury is redressable, because the UCL prohibits Defendants from "retain[ing] the benefits of their misconduct" and permits restitution of all monies that "may have been acquired." *Tobacco II*, 46 Cal. 4th at 320; Cal. Bus. & Prof. Code § 17203.

### 2.     The Proposed Class is Ascertainable.

It is sometimes held that "apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  "An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'"  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D. Cal. 2008) *quoting Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).   A class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member," although "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  Class membership need not be demonstrated by documentation; rather, all that is needed is to describe "a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008); *Tchoboian*, 2009 U.S. Dist. LEXIS 62122 at 814 (class is ascertainable if members may be identified "by themselves on notice of the pendency of a certified class.")[5]

Here, the class definition is objective and precise; persons who read it will know if they are in the class, in that they (1) purchased any beverage bearing the Blue Sky mark or brand, (2) in the United States, (3) between May 16, 2002 and June 30, 2006. *See Static Random Access Memory Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009) (certifying class of all persons who during multi-year period purchased any product containing SRAM made by any of over twenty defendants).

Once again, there is no support for Defendants' statement that the court must determine the "motive" behind the purchases, as motive is not an element of the class definition.  In *Friedman v. 24 Hour Fitness USA, Inc.*, 2009 U.S. Dist. LEXIS 81975 (C.D. Cal. Aug. 25, 2009), defendant similarly argued that "the class definition is too broad because it includes members and cardholders

---

[5] It is also not necessary that class notice be sent individually to each class member; notice can also be by publication. *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.")

who do not have meritorious claims and that inclusion in the class depends on their state of mind."
*Id*. at \*11.  The Court disagreed, stating, "There is no requirement that a class be defined to include only those with meritorious claims… Moreover, the proposed class definition does not reference any subjective criteria, such as a person's state of mind."  *Id.*[6]

### 3.    There are Common Questions of Fact and Law.

Defendants admit that the burden of proving "commonality" is a "low hurdle," but they argue that the hurdle cannot be cleared where "individual issues of motive and damages predominate." (Def. Br. at 16.)  The argument not only confuses commonality under Rule 23(a) with predominance under Rule 23(b)(3), but fails because motives are not at issue.[7]

### 4.    Plaintiff's Claims Are Typical.

In addition to rehashing their irrelevant argument about purchasers' motivations, Defendants attack Plaintiff's typicality by arguing that he did not purchase every flavor or type of Blue Sky beverage.  Defendants cite *Wiener v. Dannon*, 255 F.R.D. 658 (C.D. Cal. 2009) as support.  In *Wiener*, plaintiff alleged that Dannon made deceptive claims regarding the health benefits of three lines of yogurt—Activia, Activia Light, and DanActive—and the Court found the plaintiff atypical because she purchased only the first line. *Id.*, 255 F.R.D. at 663.  *Wiener* is easily distinguished. Dannon had made different health benefit claims for the different yogurts, and had used different types of probiotic bacteria, so substantially different evidence would be needed to determine

---

[6] Defendants cite *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-680 (S.D. Cal. 1999) to support their argument, but the case is easily distinguished.  *Schwartz* involved a RICO claim alleging that defendants had engaged in racketeering activity by inserting a "chase" card into packages of baseball cards, thereby inducing violation of state gaming laws.  There was no allegation of any material misrepresentation or omission, nor of any violation of the UCL, CLRA, or fraud.  In the context of establishing a RICO violation, the Court held that it would have to determine what motivated class members to purchase the baseball cards.  That issue does not exist here.

[7] Defendants analogize to *Poulos v. Caesar's World, Inc.*, 379 F.3d 654 (9th Cir. 2004), another inapposite RICO case.  *Poulos* alleged "a course of fraudulent and misleading acts and omissions intended to induce people to play [defendants'] video poker and electronic slot machines based on a false belief concerning how those machines actually operate, as well as the extent to which there is actually an opportunity to win on any given play." *Id.* at 659.  The district court denied certification because plaintiffs failed to prove predominance and superiority under Rule 23(b)(3), because of individual issues regarding reliance, and the Ninth Circuit affirmed. *Id.* at 664, 666.  But as discussed above, on the UCL claims here, reliance is not an element, and on the CLRA and fraud claims, reliance may be demonstrated by showing that the misrepresentation was material.

whether the claims were true. *Id*. at 666. The Court concluded that "while Wiener has an incentive to prove the alleged deception surrounding Dannon's claims that Activia aids digestion, she has no incentive to go further and prove the alleged deception surrounding Dannon's claims that DanActive strengthens the immune system." *Id*. at 666-67. (internal brackets and quotation marks omitted). As such, Wiener's claims and those of the unnamed class members that purchased DanActive were not "so interrelated" to relieve doubts that the interests of DanActive purchasers will be "fairly and adequately protected in their absence." *Id*. at 667.

Here, by contrast, plaintiff's claims arise out of the false statement on *every* can that the beverages are connected to Santa Fe, New Mexico. Defendants do not dispute that every can stated "SANTA FE NEW MEXICO," "SANTA FE NM," "CANNED FOR THE BLUE SKY BEVERAGE COMPANY SANTA FE, NM 87501 USA" and/or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL BEVERAGE CO. SANTA FE, NM USA www.blueskysoda.com." (Id., 64:2-15.) Each class member's claim accordingly arises from the identical facts and legal theory, *see Jordan v. County of Los Angles*, 669 F.2d 1311, 1321 (9th Cir. 1982), and the interests of Plaintiff and the class "align." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[M]inor differences in wording" of an advertisement do not defeat typicality. *Greenwood*, 2010 U.S. Dist. LEXIS 3839 at *12.

Just as in an employment case, Rule 23 does not "require a class representative for each job category that may be included in the class," *Dilts v. Penske Logistics*, LLC, 2010 U.S. Dist. LEXIS 40568 at *13 (S.D. Cal. Apr. 26, 2010) *citing Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003), and in a securities fraud case it does not require a class representative who invested in all the subject securities, *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *9-14 (S.D.N.Y. 2000), it also does not require a purchaser of every soda.[8]

**F.    Plaintiff's Claims Also Meet The Requirements of Rule 23(b)(3).**

In discussing Rule 23(b)(3), Defendants rehash the same mistaken argument about class members' "motivations" and raise the inaccurate spectre of "mini-trials" on damages.

---

[8] Defendants do not challenge the adequacy of the proposed class representative or class counsel.

1

### 1.    Common Issues Predominate

2      Defendants first speculate that class members had "countless reasons to buy Blue Sky

3  beverages" and that "not all would have noticed or cared about the 'Santa Fe' language."

4  Understanding that this argument was rejected by the California Supreme Court in *Tobacco II*, they

5  cite *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009).  But *Cohen* has gained renown for

6  blatantly ignoring the *Tobacco II* holding.  *See Steroid Hormone Product Cases*, 181 Cal. App. 4th

7  at 159.[9]  *Cohen* is also distinguishable.  There, the Court held that common issues did not

8  predominate because the class "would include subscribers who never saw DIRECTV

9  advertisements or representations of any kind…."  *Cohen,* 178 Cal. App. 4th at 979.  Here, identical

10  misrepresentations were on every can.

11      Defendants next argue that Plaintiff will not be able to prove that Defendants'

12  misrepresentations or omissions were material.  But this is a question for trial.  Plaintiff does not

13  need to prove materiality to get the class certified; rather, he needs only to show that materiality is a

14  common question, and that common questions predominate.  *See Dukes,* 2010 U.S. App. LEXIS

15  8576 at *98 (common merits issues were raised for trial by plaintiffs' statistical analysis, even if

16  defendants' statistical analysis would be more persuasive).  Materiality is a common question,

17  because it depends on whether "a reasonable man would attach importance to its existence or

18  nonexistence in determining his choice of action in the transaction in question."  *Steroid Hormone*

19  *Product Cases*, 181 Cal. App. 4th at 157; *see also Blackie v. Barrack*, 524 F.2d 891, 905-908 (9th

20  Cir. 1975) (common questions predominate over individual questions because plaintiff alleges "a

21  common course of conduct of misrepresentations, omissions, and other wrongdoing that affected all

22  the class members in the same or similar manner"), *cert. denied*, 429 U.S. 816 (1976).[10]

23

---

24  [9] *See also* Prof. Shaun Martin, "Cohen v. DIRECTV," California Appellate Report, at
   http://calapp.blogspot.com/2009/10/cohen-v-directv-cal-ct-app-oct-28-2009.html, last visited Jan.
25  11, 2010; Kimberly A. Kralowec, "Another new opinion interpreting Tobacco II: Cohen v.
   DIRECTV, Inc.," The UCL Petitioner, at http://www.uclpractitioner.com/2009/10/another-new-
26  opinion-interpreting-tobacco-ii-cohen-v-directv-inc.html, last visited Jan. 11, 2010

27  [10] *See also In re Revco Sec. Litig.*, 142 F.R.D. 659, 665 (D. Ohio 1992) ("Whether defendants *can*
   refute a presumption of reliance is speculative, goes to the merits of the litigation, and does not
28  defeat class certification.").

1    Defendants also argue that individual damages issues predominate.  The Ninth Circuit,

2    however, has made it clear that "[t]he amount of damages is invariably an individual question and

3    does not defeat class action treatment."  *Blackie*, 524 F.2d at 905; *see also Meijer, Inc. v. Abbott*

4    *Labs.*, 71 Fed. R. Serv. 3d 644 (N.D. Cal. 2008) (holding that "even if some individual issues may

5    arise in calculating damages, this fact alone does not defeat class certification.")[11]

6            **2.        California Law Is Applicable to All Class Members**

7    Defendants next assert that California's consumer protection laws should not apply.  They

8    contend that "no court has held that the fifty states' [consumer law] may be applied to an omni-state

9    class."  Defendants' arguments are incorrect.

10    Because this Court is exercising diversity jurisdiction, it must apply California choice of law

11    principles.  *See Ticknor v. Choice Hotels Intern., Inc.*, 265 F.3d 931, 937 (9th Cir. 2001).  California

12    employs the "comparative interest test," which dictates that California law will apply unless the

13    proponent of foreign law: (1) identifies the law of other state(s) to be applied, (2) demonstrates that

14    the other states' laws are "materially different" from California law, and (3) demonstrates that the

15    interests of the other state(s) would be "more impaired" than the interests of California if the other

16    state(s)' laws were not applied.  *See Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906,

17    918-919 (2006); *see also Martin v. Dahlberg*, 156 F.R.D. 207, 218 (N.D. Cal. 1994); *Church v.*

18    *Consolidated Freightways*, 1992 U.S. Dist. LEXIS 18234 at *4 (N.D. Cal. 1992) ("This Court

19    generally presumes that California law will apply unless defendants demonstrate conclusively that

20    the laws of the other states will apply.")

21    Defendants have not met any part of the test.  They do not identify the law of any other state

22    that should apply.  They do not show any material differences between those laws and California

23    law.  And they do not explain why any other state would have a greater interest in the controversy

24    than California.  On this final point, they do not dispute that their headquarters and principal places

25

26    [11] Defendants cite *Mirkin v. Wasserman*, 5 Cal. 4th 1082 (1993) to argue that Plaintiff cannot
advance a "fraud on the market" presumption of reliance theory.  Plaintiff does not advance such a

27    theory, which is used in securities cases.  In any event, the *Mirkin* Court held that a "presumption of
reliance" will arise only where the misrepresentation actually came of the attention of the plaintiff

28    and the class.  Here, the identical misrepresentations were placed on every can.

of business is in California; that all of the employees responsible for the misconduct live, work, and made the relevant business decisions in California; that the relevant outside suppliers (of graphics design, website design, and packaging) are located in California; and that the choice of law provision in their website terms and conditions agreement dictates that the "laws of the state of California…will govern…any dispute of any nature that might arise between you and Hansen." (Safier Decl. Ex. A (Sacks Depo. 11:24-12:11, 29:5-10, 50:16-22, 83:23-84:5, 194:14-195:3, 164:8-166:10, 168:7-169:9); Ex. S (Sacks Depo. Ex. 19, p. 1437); Ex. T.)

Based upon the facts here, California is indisputably the jurisdiction with the greatest interest in the application of its law.  Where the defendant's wrongful conduct emanated from this state, California courts have routinely concluded that California's consumer protection laws apply to non-California residents.  *See, e.g., State Farm Mutual Automobile Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434 (2003); *Wershba v. Apple Computer, Inc*., 91 Cal. App. 4th 224, 241-242 (2001); *Clothesrigger, Inc. v. GTE Corp*., 191 Cal. App. 3d 605, 614 (1987).  Indeed, California law is almost invariably applied to a multi-state class when the defendant is headquartered in California. *See, e.g., Keilholtz v. Lennox Hearth Prods.,* 2010 U.S. Dist. LEXIS 14553 at *22-30 (N.D. Cal. Feb. 16, 2010); *Parkinson v. Hyundai Motor America*, 258 F.R.D. 580, 597-98 (C.D. Cal. 2008); *Mazza v. American Honda Motor Co*., 254 F.R.D. 610, 620-21 (C.D. Cal. 2008).

### 3.    This Class Action Is Both Superior and Manageable

Defendants finally argue that a class action is not superior because this Court is incapable of managing it.  They specifically argue that "due process" requires that they have the opportunity to "cross-exam" (sic) each class member to determine his or her state of mind and damages, and that this Court could not handle so many mini-trials.  These arguments are without merit.

In the Ninth Circuit, the test for superiority of the class action mechanism merely requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution."  *Hanlon*, 150 F.3d at 1023 *citing* 7A Wright & Miller, Federal Practice and Procedure, § 1779 (2d ed. 1986); *see also Lymburner v. U.S. Fin. Funds, Inc.*, 2010 U.S. Dist. LEXIS 5081 (N.D. Cal. Jan. 22, 2010); *Greenwood, supra,* 2010 U.S. Dist. LEXIS 3839.

It is well accepted that "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *In re VisaCheck/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (mere possibility of complexity or un-manageability does not defeat class action); *see also Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768 *64 (C.D. Cal. Nov. 9, 2009) *citing Negrete*, 238 F.R.D. at 494 ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)."); *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) ("Where as here, common issues predominate regarding liability, and then courts generally find the predominance requirement to be satisfied even if individual damages issues remain.")

The class action device is the only viable vehicle by which the vast majority of persons injured by Defendants' wrongful conduct may obtain a remedy. *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995) ("[I]t is difficult to imagine a case where class certification would be more appropriate. Without it, thousands of identical complaints by former shareholders would have to be filed – the very result the class action mechanism was designed to avoid.")

Defendants cite one case, *Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009), to suggest this case is too unwieldy.[12] In *Hodes,* the defendants sold 19 different varieties of frozen waffles, each with different representations. *Id*. at *12. The plaintiff moved to certify a class of "All persons or entities who purchased Van's **deceptively-labeled** waffles," again raising the problem of the "fail-safe" class by defining the class to predetermine the very issue that must be tried—whether the labeling was "deceptive." *See supra* note 3. Here, the

---

[12] Defendants cite an unreported case from a Minnesota state trial court, *Ludke v. Philip Morris, Inc.*, 2001 WL 1673791 (Minn. Dist. Nov. 21, 2001), which found the case to be unmanageable under Rule 23.01 of the Minnesota Rules of Civil Procedure because class members (cigarette purchasers) would not be expected to have receipts showing their purchases. *Ludke* is poorly reasoned. Its effect would be to exempt from false advertising liability the sellers of millions of consumer goods—toiletries, food, beverages, clothing, school supplies, and anything else for which purchasers are not likely to maintain itemized proof of purchases. The reasoning should not be accepted. This is why, in *Tobacco II*, which presents the same facts—millions of cigarette purchaser class members with small purchases that may be difficult to verify—the California Supreme Court reached the opposite conclusion and ordered that a class be certified.

1  class is simply defined as purchasers of any Blue Sky beverage, and all the beverages had the

2  identical misrepresentations and omissions.

3      Even if this Court has doubts regarding manageability, it would still be appropriate to certify

4  a class.  If necessary, this Court has the discretion to sever certain issues to allow the proposed class

5  representatives to establish Defendants' liability to the class as a whole, while reserving the proof of

6  individual issues (such as damages or reliance, if not presumed) for a later proceeding.  *See* Fed. R.

7  Civ. P. 23(c)(4) ("when appropriate…an action may be brought or maintained as a class action with

8  respect to particular issues.")  Moreover, should any unforeseen manageability problems prove

9  intractable, this Court also may decertify the class at a later point.  *See Dukes*, 2010 U.S. App.

10  LEXIS 8576 at *10, *11, *160.  At this juncture, however, any doubts as to the propriety of

11  certification should be resolved in favor of certifying the class, because denying class certification

12  will almost certainly terminate the action and be detrimental to the members of the class and be

13  counter to the policy behind Rule 23.  *See Harris*, 329 F.3d at 913; *Sugar Indus. Antitrust Litig*.,

14  1976 U.S. Dist. LEXIS 14955, at *75 (N.D. Cal. May 21, 1976).

15      Defendants close by asking this Court to protect them from potential class member claims

16  based on "fabricated purchases," because class members are not likely to have proof of purchase.

17  Having collected over $20 million in ill-gotten gains, Defendants want to be protected from

18  (hypothetically) being defrauded by the very people to whom they lied.   This argument should be

19  summarily rejected.  *See In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 282-83 (S.D.N.Y.

20  1971) (denying defendants the "freedom to keep their ill-gotten gains which, once lodged in the

21  corporate coffers, are said to become a 'pot of gold' inaccessible to the mulcted consumers because

22  they are many and their individual claims small."); *see also supra* note 12.

23  **II.    CONCLUSION**

24      For the foregoing reasons, Plaintiff respectfully requests that the motion be granted.

25  Dated:    May 13, 2010        **GUTRIDE SAFIER LLP**
                                   /s/ Seth A. Safier
26                                 Adam J. Gutride (State Bar No. 181446)
                                   Seth A. Safier (State Bar No. 197427)
27                                 Counsel for Plaintiff and Proposed Class Counsel

28

**CERTIFICATE OF SERVICE**

I, Seth A. Safier, hereby declare the following:

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On May 13, 2010, I served the following documents:

REPLY MEMORANDUM ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REPLY DECLARATIION OF SETH A. SAFIER ISO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

ON THE FOLLOWING PERSON(S) IN THIS ACTION BY PLACING A TRUE COPY THEREOF AS FOLLOWS:

William Kammer, Esq.
Norman Smith, Esq.
Alison Pivonka, Esq.
Solomon Ward et al
401 B St #1200
San Diego, CA 92101
apivonka@swsslaw.com; nsmith@swsslaw.com;
wkammer@swsslaw.com

[x]      BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on May 13, 2010, at San Francisco, California.

/s/Seth A. Safier

_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff