**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| CHRIS CHAVEZ, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE SKY NATURAL BEVERAGE CO., a foreign corporation; HANSEN NATURAL CORP., a foreign corporation; HANSEN BEVERAGE COMPANY, a foreign corporation; AND DOES 1 THROUGH 10<br><br>    Defendants | Case No. CV-06-06609 (VRW)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *DAUBERT* OBJECTIONS AND MOTION TO STRIKE THE DECLARATION OF DEAN K. FUEROGHNE**<br><br>Date:    May 27, 2010<br>Time:    10:00 am<br>Dept:    Courtroom 6, 17th Floor<br>Judge:   Hon. Vaughn R. Walker |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

I. INTRODUCTION AND STATEMENT OF FACTS ................................................................1

II. ARGUMENT ............................................................................................................................2

    A. Legal Standard ............................................................................................................2

    B. Mr. Fueroghne's Testimony Comports With Basic Principles. ..................................4

    C. Mr. Fueroghne Offers Qualified Testimony...............................................................6

III. CONCLUSION .........................................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*Brockey v. Moore*, 107 Cal.App.4th 86 (2003) ................................................................................5

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) ......................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)..........................................2

*Dukes v. Wal-Mart Stores, Inc.,* 2010 U.S. App. LEXIS 8576 (9th Cir. Cal. Apr. 26, 2010) ................................................................................................................................passim

*Hangarter v. Provident Life and Acc. Inc. Co.*, 373 F.3d 998 (9th Cir. 2004) ..............................8

*Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003) ...........................5

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ..........................................................7

*Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 (N.D. Cal. Aug. 30, 2007) .................3

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal.App.4th 1336 (2003) ........................................................................................................6

*Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003) .....................................................5

*Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983)...............................................3

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 642 F. Supp. 2d 957 (N.D. Cal. 2008) .................................................................................................................................. 1, 4

*Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 73 Fed. R. Evid. Serv. (Callaghan) 14 (S.D. Cal. Mar. 7, 2007)....................................................................................8

*Thomas v. Newton Int'l Enters.*, 42 F.3d 1266 (9th Cir. 1994).................................................7, 8

*United States v. Little*, 753 F.2d 1420 (9th Cir. 1984) .................................................................7

## RULES

Fed. R. Evid. 702 ..........................................................................................................................2

Plaintiff respectfully submits this opposition to Defendants' *Daubert* objections and motion to strike the declaration of Dean K. Fueroghne (Dkt.# 106-7).

I. **INTRODUCTION AND STATEMENT OF FACTS**

In support of his motion for class certification, Plaintiff submitted the expert declaration of Dean K. Fueroghne, an advertising and marketing professional with over 40 years of relevant experience, including executive experience at some of the country's foremost advertising firms, and teaching positions at, among other places, UCLA. (Fueroghne Decl. (Dkt.# 96), ¶ 12 & Ex. A.) Mr. Fueroghne testified that he reviewed the Blue Sky packaging, website, associated marketing and advertising materials, advertising plan, list of sales outlets, and deposition testimony and interrogatory answers from Blue Sky. (Id., (Dkt.# 96) ¶ 12.) Based on an equally long list of literature from the marketing field (including two books he wrote, one of which, on Law and Advertising, is in the third edition) and his own experience, *id.* ¶ 13 & Ex. A, Fueroghne opined that the Blue Sky marketing materials were likely to deceive reasonable consumers into believing that the Blue Sky beverages originated from or were closely connected with a small independent company in Santa Fe, New Mexico, and that this belief was likely material to reasonable consumers' purchasing decisions. (Id., ¶¶ 20, 27, 29.) In reaching his opinions, Mr. Fueroghne explained and relied upon, among other things, marketing concepts such as the "net impression" of an advertisement, the importance of "branding" in product differentiation and "continuity" of packaging to create a "unique persona" to a product line, and the specific "market niche" (natural foods stores) in which these products are sold. (Id., ¶¶ 22, 28-29, 32, 36.)

Defendants contend that the Fueroghne Declaration should be stricken because he (1) did not conduct a consumer survey and (2) "lacks relevant experience." (Dkt.# 106-7, p. 5.) Both contentions are unsupportable.

As to the first argument, under California law, there is no requirement that a Plaintiff produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation. Nor is there any requirement that an expert opinion about consumer behavior be based on such a survey. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 642 F. Supp. 2d 957 (N.D. Cal. 2008).

1    As to the second argument, Mr. Fueroghne has more than sufficient experience to reach his
2    opinions. Although he did not conduct a consumer survey in this case, he testified that he has
3    "conducted, sat in, reviewed, studied many consumer surveys, consumer studies, consumer
4    behavior studies …. in the 42 years I've been in the business." (Reply Declaration of Seth Safier
5    In Support of Motion for Class Certification, filed herewith ("Safier Reply Decl."), Ex. A
6    (Fueroghne Depo. 22:16-19).) Among his past clients were several beverage companies, he had
7    done "research resorts concerning the beverage industry," and he relied upon "case studies that I've
8    done in the past for my [marketing] clients." (Id., 78:5-15, 103:3-19.) He cited two specific
9    consumer research projects that he had conducted—one involving hair care products and another
10   involving automotive products—that supported his opinions about how consumers react to
11   statements on product packaging. (Id., 101:16-102:2.) He testified that he was "confident that a
12   survey [here] done the right way…and presented the right way would bear out the same result
13   based on my experience of knowing how consumers view marketing and advertisement materials,
14   and the fact that surveys, again, depending upon how they're done, can be accurate or grossly
15   inaccurate at determining what people think they will do in the market." (Id., 45:8-15.) Finally, he
16   explained that he had used a standard methodology among marketing experts to reach his opinions.
17   (Id., 25:16-26:5, 29:1-12.) Defendants have not offered any evidence to establish that his
18   methodology is flawed or unaccepted in the marketing field.
19      Mr. Fueroghne's expertise is highly relevant, reliable and helpful. His declaration should
20   not be stricken.
21   **II.    ARGUMENT**
22      **A.    Legal Standard**
23      Federal Rule of Evidence 702 establishes that expert testimony is admissible if "scientific,
24   technical, or other specialized knowledge will assist the trier of fact to under stand the evidence or
25   to determine a fact in issue." Fed. R. Evid. 702. Under the standard established by the Supreme
26   Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), expert testimony, to
27
28

be admissible, must be both relevant[1] and reliable. Defendants correctly recite the *Daubert* standard, but misapply that law to the facts of this case and overstate its importance at this stage of the litigation.[2]

The Ninth Circuit recently reaffirmed, in *Dukes v. Wal-Mart Stores, Inc.,* that it is a district court's "role at the Rule 23(a)(2) certification stage—to make factual determinations regarding evidence as it relates to common questions of fact or law but not to decide which parties' evidence is ultimately more persuasive as to liability." *See Dukes v. Wal-Mart Stores, Inc.,* 2010 U.S. App. LEXIS 8576 at *79 (9th Cir. Cal. Apr. 26, 2010). *Dukes* also dictates that "it is not necessary for the Court to engage in a full-fledged *Daubert* analysis at the class certification stage." *Id.* at *81-*82 (holding that majority was "not convinced by the dissent's argument that *Daubert* has exactly the same application at the class certification stage as it does to expert testimony relevant at trial" and "[a]t the class certification stage, it is enough that [an expert present scientifically reliable evidence tending to show that a common question of fact."); *see also Kurihara v. Best Buy Co.*, 2007 U.S. Dist. LEXIS 64224 at *5 (N.D. Cal. Aug. 30, 2007) (establishing that "[R]obust gatekeeping of expert evidence is not required; rather, the court must query only whether expert evidence is 'useful in evaluating whether class certification requirements have been met.'")

Here, the opinions of Mr. Fueroghne that Defendants attack are essentially his opinions on the ultimate issues for trial: whether the advertising is materially misleading. At class certification, however, it only matters whether Mr. Fueroghne's opinions "raise a common question." *Dukes,* 2010 U.S. App. LEXIS 8576 at *80-81. Thus, in *Dukes*, "[f]or the class certification…Dr. Bielby's opinions, for which Wal-Mart did not challenge the methodology, raised a question "of corporate

---

[1] Evidence is relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence' and the relevance standard "is a liberal one." *Dukes*, 509 F.3d at 1179 *citing* Fed.R.Evid. 401.

[2] Defendants also incorrectly style this a "motion to strike" because it is not aimed at Plaintiff's pleading but rather a specific declaration offered in support of a motion. *See, e.g., Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880 (9th Cir. 1983). It should accordingly be rejected. In the alternative, it should be construed as an objection to evidence offered in support of class certification.

uniformity and gender stereotyping that is common to all class members" even if Wal-Mart's expert was more persuasive or Dr. Bielby's opinions would later be proven incorrect. *Id.* at *80.

Regardless of whether this Court conducts a full or limited *Daubert* review at this stage of the litigation, Mr. Fueroghne's testimony is admissible.

### B. Mr. Fueroghne's Testimony Comports With Basic Principles.

Defendants primarily challenge Mr. Fueroghne's testimony on the grounds that he did not "conduct a consumer survey in this case." (Defendants then falsely go on to assert that "he has never conducted a consumer survey himself." (Dkt.# 106-7, p. 6.).) His actual testimony was that he had never himself done a consumer survey "in connection with his work as an expert witness," Safier Reply Decl., Ex. A (Fueroghne Depo. 125:3-6), but he had constructed, sat in on and reviewed numerous consumer studies. (Safier Reply Decl., Ex. A (Fueroghne Depo. 22:16-19, 78:5-15, 83:20-22, 101:16-102:2, 103:3-19).) Defendants also claim that the lack of a survey in this case disqualifies Mr. Fueroghne's testimony because, to prevail at trial, "plaintiff must demonstrate by extrinsic evidence, such as consumer survey evidence, that the challenged statements tend to mislead consumers." (Dkt.# 106-7, p. 4.) Defendants are completely mistaken.

Defendants' argument was recently addressed and rejected by Magistrate Judge Spero in *Silicon Image,* 642 F. Supp. 2d 957. In *Silicon Image*, defendant argued that summary judgment was appropriate on plaintiff's UCL claim because they did not present "any extrinsic evidence that: 1) any customer was confused or misled; 2) any of [defendants'] advertisements were misleading or untrue; or 3) that any misrepresentations were material to any customer making purchase decisions." *Id*. at 961. The Court concluded after a rigorous review of California law that there is no such requirement. *Id*. at 968-70. It explained:

> Under California law, in order to prevail on an unfair competition claim based on false advertising, a plaintiff must establish that the advertisement or conduct is "likely to deceive" a "reasonable consumer." The reasonable consumer is the "ordinary consumer within the target population." He or she is neither "exceptionally acute and sophisticated" nor "the least sophisticated consumer." Further, even "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."
>
> California courts have held that "[t]he falsity of…advertising claims may be established by testing, scientific literature, or anecdotal evidence." "[W]ith regard to the showing of

4

deception, 'the primary evidence in a false advertising case is the advertising itself.'" In *Colgan*, the court of appeal affirmed the trial court's summary judgment on a false advertising claim in favor of the plaintiff where the defendant, Leatherman Tool Group, had marketed its tools as. "Made in U.S.A." and where undisputed evidence showed that significant work on the tools had been performed outside of the United States. The court of appeal rejected the defendant's assertion, based on a line of federal authority applying California law, that the plaintiff was required to present extrinsic evidence, such as consumer surveys, to show consumers had been misled. Id. The court found that these cases do not accurately reflect California law, citing to *Echostar*.

In *Echostar*, the defendant was a provider of satellite television service and advertised in its brochure that its service included an on-screen program guide that would allow a consumer view the schedule "up to 7 days in advance" and that 50 channels would be provided. 113 Cal. App. 4th at 1353. The trial court granted summary judgment in favor of the defendant on plaintiff's false advertising claim, finding that the plaintiff had not shown that a reasonable consumer would be misled by the statements. The court of appeal reversed, finding that whether a reasonable consumer would be misled raised fact questions that could not be resolved on summary judgment. In reaching this conclusion, the court rejected the federal cases that have held that California unfair advertising claims require extrinsic evidence to show the public is likely to be misled.

The Court rejects Analogix's reliance on the federal cases that have held that false advertising claims under California law require extrinsic evidence that customers are likely to be deceived.[3] As discussed above, California courts of appeal have rejected this interpretation of California law. Most recently, the Court in *Colgan* explained that this line of federal eases improperly imported into California unfair competition law standards of proof derived from the federal Lanham Act which, in contrast to California law, requires plaintiffs to demonstrate that misleading statements deceived "a significant portion of the recipients."

This court is not bound by the district court cases on which Analogix relies. Further, to the extent that the Ninth Circuit also adopted the extrinsic evidence requirement in *Rice*, albeit without any significant discussion of the question, that case was "only binding in the absence of any subsequent indication from the California courts that [the Ninth Circuit's] interpretation was incorrect." As several California appellate courts have rejected the Ninth Circuit's interpretation of California law and the Court finds no California case in which the federal courts' interpretation of California law has been approved, the Court concludes that it must follow the more recent California cases on the question of extrinsic evidence.[4]

---

[3] The Court specifically rejected the same case that Defendants rely on in this instance, *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170 (9th Cir. 2003) and *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241 (C.D. Cal. 2003).

[4] Magistrate Judge Spero was referring to *Brockey v. Moore*, 107 Cal.App.4th 86 (2003). In *Brockey*, the Court considered and rejected the identical argument. *Brockey* involved a successful action by mobile home tenants against one who, although not a lawyer, operated businesses named "Legal Aid" and "Legal Aid Services," and accepted monies from the plaintiffs to assist them in defending unlawful detainer actions. *Id*. at 89-90. On appeal, defendant argued the evidence failed to support the judgment. *Id*. at 99. Citing many of the same cases cited by Defendants in their

*Id*. (citations omitted.) The fact that Mr. Fueroghne does not base his testimony on a consumer survey accordingly does not lessen its relevance or reliability. As Defendants do not otherwise attack his methodology, and indeed point to nothing in any of the books cited in his Declaration, or in any other source, that would undermine his methodology, or require him to survey consumers before forming an expert opinion, Mr. Fueroghne's Declaration should not be excluded.[5]

### C. Mr. Fueroghne Offers Qualified Testimony

Defendants also attack Mr. Fueroghne's qualifications. For example, Defendants state that he lacks "key experience" because he is not "an expert is consumer behavior, consumer decision-making, consumer perception, market research or survey methods." (Dkt.# 106-7, p. 5.) Defendants also contend that "his c.v. lists no educational background or advanced degrees in marketing, consumer psychology, or survey research" and that he did not "establish that he has ever been qualified as a testifying expert witness on topics of deceptive advertising, materiality, or consumer decision–making." (*Id.*) The falsity of these statements is breathtaking. Mr. Fueroghne has more than 40 years of experience in the areas of consumer behavior, consumer decision-

---

motion to strike, defendant claimed the tenants "had to prove 'via extrinsic evidence' that his misstatements would likely deceive a reasonable person (not merely a vulnerable person) and that what he terms 'anecdotal' evidence, that is, testimony by people that they were in fact misled, is insufficient." The Court rejected this argument. It stated that "the primary evidence in a false advertising case is the advertising itself." *Id*.; *see also National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc*., 107 Cal.App.4th 1336, 1348 (2003) (stating "The falsity of … advertising claims may be established by testing, scientific literature, or anecdotal evidence.") It further concluded that "Federal cases holding otherwise do not accurately reflect California law."[4] *Id*., 107 Cal.App.4th at 99; *see also Consumer Advocates v. Echostar Satellite Corp*., 113 Cal. App. 4th 1351 (2003) (stating that "we reject defendants' view that a plaintiff must produce a consumer survey or similar extrinsic evidence to prevail on a claim that the public is likely to be misled by a representation.")

[5] Defendants also have not offered any competing expert testimony, nor have they offered their own consumer survey. Their only "evidence" challenging Mr. Fueroghne's conclusions is that the sales figures for Blue Sky beverages were roughly the same after 2006 when the reference to Santa Fe was removed from the cans. But Mr. Fueroghne explained that this "evidence" did not prove anything because "The consumer who may have bought it in the past for a period of time knew it was from New Mexico. Now all of a sudden it doesn't say New Mexico on it, but they're still buying it. They haven't been perceptive enough to notice that name is not on there anymore. The logo's essentially the same. The graphic package's essentially the same. They just assume it's still from there. A new consumer who has never had any exposure to the product may be less so." (Safier Reply Decl., Ex. A (Fueroghne Depo. 59:4-13).)

making, consumer perception, and market research, which is the basis of his work as an advertising executive.  (Dkt.# 96, Ex. A.)  He has authored five books on the subjects.  (Id.)  Moreover, Defendants know that he gave expert opinions on marketing issues in three other cases; defense counsel even marked his prior declarations as exhibits in his deposition.  (Safier Reply Decl., Ex. A (Fueroghne Depo. 129:13-22, 130:20-131:12).)  He has a college degree in business and management from the University of California, Berkeley, where he studied marketing, and he was an adjunct professor at UCLA where he taught Legal and Ethical Aspects of Advertising.  (Id., 23:2-4; Dkt.# 96, Ex. A.)

The Ninth Circuit has held that "the issue of qualifications is governed by Federal Rule of Evidence 702 which contemplates a broad conception of expert qualifications. As the terms of the rule state, an expert may be qualified either by 'knowledge, skill, experience, training, or education.' Moreover, the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269-70 (9th Cir. 1994) (qualifying a longshoreman as an expert on the basis of 29 years longshore experience.)  Furthermore, "the determination whether an expert witness has sufficient qualifications to testify is [also] within the district court's discretion." *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984).  The Court "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  Mr. Fueroghne's knowledge, skill, experience and training are more than sufficient to meet these tests.

Defendants nevertheless argue that Mr. Fueroghne is merely "offering his paid lay opinion of what other consumers' opinions may be." (Dkt.# 106-7, p. 5.)  There is nothing "lay" about Mr. Fueroghne's opinion.  It is based on several specialized marketing concepts (including "branding," "product personas," "market niches" and the "net impression" of an advertisement), standard methodologies (which Defendants do not challenge) and extensive experience in consumer marketing and advertising.  When expert testimony is offered for "specialized knowledge," courts have long recognized that reliability may come from experience in the field.  *See, e.g., Hangarter v.*

7

*Provident Life and Acc. Inc. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004); *Thomas*, 42 F.3d at 1269-70.

More fundamentally, contrary to Defendants' suggestion, Mr. Fueroghne is not offering testimony regarding what "other consumers" may think, but rather what "a reasonable consumer" would likely believe on the basis of his extensive experience.  Marketing testimony such as Mr. Fueroghne's is admissible.  *See, e.g., Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 73 Fed. R. Evid. Serv. (Callaghan) 14 (S.D. Cal. Mar. 7, 2007) (finding as a qualified relevant marketing expert a declarant who "operates a high technology consulting and chemical engineering firm specializing in imaging materials development, manufacturing, and marketing" and has "authored marketing reports…")

### III.    CONCLUSION

For the reasons set forth above, this Court should deny Defendants' motion to strike and overrule their *Daubert* objection.

DATE:  May 13, 2010

                                           GUTRIDE SAFIER LLP
                                           ADAM J. GUTRIDE
                                           SETH A. SAFIER

/s/ Seth A. Safier

Seth A. Safier
Attorneys for *Plaintiff*

8

# PROOF OF SERVICE

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California. I am employed in the County of San Francisco, where this mailing occurs. I am over the age of 18 years and not a party to the within cause.

On May 13, 2010, I served the following documents:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' DAUBERT OBJECTIONS AND MOTION TO STRIKE THE DECLARATION OF DEAN K. FUEROGHNE**

ON THE FOLLOWING PERSON(S) IN THIS ACTION BY PLACING A TRUE COPY THEREOF AS FOLLOWS:

William Kammer, Esq.
Norman Smith, Esq.
Alison Pivonka, Esq.
Solomon Ward et al
401 B St #1200
San Diego, CA 92101
apivonka@swsslaw.com; nsmith@swsslaw.com; wkammer@swsslaw.com

[x] BY ELECTRONIC MAIL. I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on May 13, 2010, at San Francisco, California.

/s/Seth A. Safier

_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff