**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNA

| | |
|---|---|
| CHRIS CHAVEZ, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>       v.<br><br>BLUE SKY NATURAL BEVERAGE CO., a foreign corporation; HANSEN NATURAL CORP., a foreign corporation; HANSEN BEVERAGE COMPANY, a foreign corporation; AND DOES 1 THROUGH 10<br><br>    Defendants | Case No. CV-06-06609 (VRW)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56(c) OR, IN THE ALTERNATIVE, JUDGMENT ON THE PLEADINGS**<br><br>Date:    May 27, 2010<br>Time:    10:00 am<br>Dept:    Courtroom 6, 17th Floor<br>Judge:   Hon. Vaughn R. Walker |

1

## **TABLE OF CONTENTS**

2

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT ..............................................................................................1

    A.    The Strong Presumption Against Preemption Applies. .........................1

    B.    Plaintiff's Claims Are Not Preempted By The FDCA.............................2

        1.    Plaintiff's Claims Are Not Expressly Preempted. .......................2

            a.    The Laws Under Which Plaintiff Sues Do Not Impose
                  Requirements "Of The Type Required" By Sections of the
                  FDCA As To Which Preemption Applies.........................................3

            b.    Even If The State Laws Under Which Plaintiff Sues Impose
                  Requirements "Of The Type Required" By The Enumerated
                  Sections of the FDCA, The State Laws Are "Identical" To
                  The FDCA.........................................................................................6

            c.    Allowing Private Enforcement Of State Laws That Are
                  "Identical" To The FDCA Does Not Run Afoul Of 21
                  U.S.C. § 337.....................................................................................10

        2.    Plaintiff's Claims Are Not Impliedly Preempted.......................13

III.  CONCLUSION ..........................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3  *Allen-Bradley Local v. Board*, 315 U.S. 740 (1942)....................................................................3

4  *Black v. Financial Freedom Senior Funding Corp.*, 92 Cal.App.4th 917 (2001) .......................2

5  *California v. ARC America Corp.*, 490 U.S. 93 (1989) ................................................................2

6  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992) ...............................................................1

7  *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008).....................................................8

8  *Consumer Justice Ctr. v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056 (2002). ......................14

9  *Crosby v. National Foreign Trade Council,* 530 U.S. 363 (2000) .....................................13, 14

10  *Farm Raised Salmon Cases,* 42 Cal. 4th 1077 (2008) .......................................................passim

11  *Fiedler v. Clark*, 714 F.2d 77 (9th Cir. 1983) ...........................................................................12

12  *Fraker v. KFC Corp.,* 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 27, 2007), .....................11

13  *Freightliner Corp. v. Myrick,* 514 U.S. 280 (1995) .....................................................................5

14  *Grove Fresh Distrib., Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714 (N.D. Ill.
15       1989) ...................................................................................................................................12

16  *Hansen Beverage Co. v. Innovation Ventures LLC, et al*, Case No. 08-CV-1166-
       IEG (POR), Dkt. # 166 (S.D. Cal. Dec. 23, 2009)...................................................1, 4, 11, 13

17  *Hitt v. Arizona Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4,
18       2009) ...............................................................................................................................4, 5

19  *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d
       1282 (C.D. Cal. 2008)..........................................................................................................11

20  *In re Pepsico, Inc.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008) .................................................6, 7, 8

21  *Infa-Lab, Inc. v. KDS Nail Int'l*, 2009 U.S. Dist. LEXIS 4509 (E.D. Cal. Jan. 21
22       2009) ...................................................................................................................................12

23  *Jackson v. Balanced Health Products, Inc.*, 2009 U.S. Dist. LEXIS 48848 (N.D.
       Cal. June 10, 2009) ........................................................................................................11, 12

24  *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009).....................passim

25  *McKinniss v. General Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept.
26       18, 2007) ..............................................................................................................................11

27  *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996).........................................................................2, 3

28  *Merchant, et al v. Hueser, et. al.*, 2006 U.S. Dist. LEXIS 54252 (D. Miss. Aug. 4,

2006) ............................................................................................................. 12

*Nagel v. Twin Laboratories, Inc.*, 109 Cal.App.4th 39 (2003) .................................. 13

*Perez v. Nidek Co. Ltd.*, 2009 U.S. District LEXIS 78214 (S.D. Cal. Aug. 31,
   2009), .......................................................................................................... 10

*POM Wonderful LLC v. Coca Cola Co.*, Case No. CV 08-06237 SJO (FMOx)
   (C.D. Cal. May 5, 2010),.............................................................................. 7, 8

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,* 642 F. Supp. 2d 1112
   (C.D. Cal. 2009) ....................................................................................... 4, 5, 8

*Ray v. Atlantic Richfield Co,* 435 U.S. 151 (1978) .................................................. 3

*Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. Cal. 2008) ..................... 2

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002)................................................. 3

*Summit Technology, Inc. v. High-Line Medical Instruments Co.*, 922 F. Supp. 299
   (C.D. Cal. 1996) ........................................................................................... 11

*United States v. Locke,* 529 U.S. 89 (2000) ........................................................... 3

*Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, 2006 U.S.
   Dist. LEXIS 13683 (D. Mass. 2006)...................................................... 6, 8, 12

*Washington Mutual Bank v. Superior Court*, 95 Cal.App.4th 606 (2002) ............... 2

*Wright v. General Mills, Inc.,* 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30,
   2009) ..................................................................................................... 4, 5, 8, 14

**STATUTES**

21 U.S.C. § 337 ..................................................................................................... 10

21 U.S.C. § 343 ....................................................................................................... 3

21 U.S.C. § 343-1................................................................................................. 3, 5

**REGULATIONS**

21 C.F.R. § 101.1(c)(4) ........................................................................................... 6

21 C.F.R. § 101.18(c)............................................................................................... 9

21 C.F.R. § 101.5 .......................................................................................... 9, 10, 13

## I.      INTRODUCTION

Almost four years ago, Defendants moved to dismiss this case on the grounds that Plaintiff's claims were preempted by the Food, Drug, and Cosmetic Act ("FDCA").  The district court dismissed on other grounds and did not address the preemption issue.  On appeal, defendant raised preemption as an alternate ground for affirmance, and the issue was fully briefed.  After oral argument but before the decision was issued, the California Supreme Court issued its exhaustive opinion in *Farm Raised Salmon Cases,* 42 Cal. 4th 1077 (2008), which rejected each of Defendants' arguments.  The Ninth Circuit then reversed the dismissal but declined to address preemption.  Following remand, Defendants maintained preemption as an affirmative defense.

In response to Plaintiff's motion for summary judgment, Defendants now contend that this Court should not only deny the motion but *sua sponte* grant summary judgment in Defendants' favor.  (Defendants have not filed any cross-motion.)  Defendants contend that federal law expressly preempts Plaintiff's claims, which are inconsistent with the FDCA and (alternatively), Plaintiff are improperly seeking to privately enforce the FDCA.  They also contend that *Farm Raised Salmon* and the myriad cases that follow it were wrongly decided.  Defendants are mistaken on all counts.  Although they strive mightily to twist both Plaintiff's allegations and the case law, there is not a single case that has accepted the preemption argument that Defendants make here.  Indeed, these very Defendants recently had identical arguments rejected by Judge Irma Gonzalez in the Southern District of California.  *See Hansen Beverage Co. v. Innovation Ventures LLC*, *et al*, Case No. 08-CV-1166-IEG (POR), Dkt. # 166 (S.D. Cal. Dec. 23, 2009) (copy attached as Exhibit B to the Reply Declaration of Seth Safier, filed herewith.)  Defendants conveniently omit this decision from their brief.

Defendants' preemption defense should be rejected by way of summary adjudication, or, in the alternative, judgment on the pleadings.

## II.      ARGUMENT

### A.      The Strong Presumption Against Preemption Applies.

The Supreme Court has held that federal preemption should be narrowly construed.  *See Cipollone v. Liggett Group, Inc*., 505 U.S. 504, 523 (1992) ("we must … narrowly construe the

precise language of [the statute] and we must look to each of petitioner's common law claims to determine whether it is preempted"). In fields traditionally occupied by the states such as the exercise of a state's police powers, it is well-established that Congress' intent to preempt state law must be "clear and manifest." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Defendants argue that the presumption against preemption does not apply where there "is a history of significant federal regulation." They further suggest that there is such a history here, because "beverage labeling has long been within the scope of the FDCA and FDA." Defendants cite *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. Cal. 2008) to support this assertion. But *Silvas* only establishes that there has been a "history of significant federal presence in *national banking*." *Id*. at 1005. (emphasis supplied.) Defendants do not explain the connection between the fields of banking and beverages. Moreover, it has been held that even if "food labeling is not a field traditionally occupied by the states…the assumption against preemption still applies…." *Lockwood v. Conagra Foods, Inc*., 597 F. Supp. 2d 1028, 1031 (N.D. Cal. 2009).

Consumer protection laws such as the unfair competition law ("UCL"), false advertising law ("FAL"), and CLRA, and laws regulating the marketing of food, including the prevention of deceptive sales practices, are all within the states' historic police powers, and thus are subject to the strong presumption against preemption. *See Farm Raised Salmon Cases*, 42 Cal. 4th at 1088; *accord California v. ARC America Corp*., 490 U.S. 93 (1989); *see also Washington Mutual Bank v. Superior Court*, 95 Cal.App.4th 606, 613 (2002); *Black v. Financial Freedom Senior Funding Corp*., 92 Cal.App.4th 917, 926 (2001). The strong presumption against preemption applies not only to the question of whether Congress intended to preempt state law, but also to the scope of preemption. *See Medtronic*, 518 U.S. at 485. Defendants' arguments are insufficient to overcome the strong presumption against preemption.

**B.      Plaintiff's Claims Are Not Preempted By The FDCA.**

**1.      Plaintiff's Claims Are Not Expressly Preempted.**

Because the FDCA contains an express preemption provision, this Court must first focus on the "plain wording of the clause" to identify the "domain expressly preempted" by the

1   language of the statute. *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002). It is

2   Defendants' burden to show that Plaintiff's claims are expressly preempted. *See United States v.*

3   *Locke,* 529 U.S. 89, 107-08 (2000) (party asserting federal preemption bears burden to

4   demonstrate it); *see also Medtronic*, 518 U.S. at 485 (presumption applies both to the existence of

5   preemption and the scope of preemption); *Ray v. Atlantic Richfield Co*, 435 U.S. 151, 157 (1978);

6   *Allen-Bradley Local v. Board*, 315 U.S. 740, 749 (1942).

7        The express statutory preemption provision is set forth in 21 U.S.C. § 343-1. It preempts

8   state laws that (1) "impose any requirement for the labeling of food of the type required by"

9   certain other listed sections of the FDCA, where (2) the state law requirement is "not identical to

10  the requirement[s] of such [FDCA] section[s]." 21 U.S.C.§ 343-1(a)(2)-(3). Here, neither test is

11  met. The state laws under which Plaintiff sues do not "impose any requirement for the labeling of

12  food of the type required by" the listed subsections of the FDCA. And even if the state laws do

13  impose such requirements, they are "identical" to the FDCA as that term has been construed, in

14  that there is nothing inconsistent between them and the FDCA.

15            **a.    The Laws Under Which Plaintiff Sues Do Not Impose**
16            **Requirements "Of The Type Required" By Sections of the**
                 **FDCA As To Which Preemption Applies.**

17        The first reason that there is no express preemption in this case is that express preemption

18  only extends to laws that "impose any requirement for the labeling of food of the type required

19  by" certain listed FDCA sections. But the list of those sections does *not* include the general

20  prohibition on "false or misleading" labeling set forth in 21 U.S.C. § 343(a).[1] *See* 21 U.S.C. §

21  343-1 (omitting subsections (a) from the list of subsections of 21 U.S.C. § 343 covered by

22  preemption). The meaning is clear: Congress did *not* intend to preempt state laws that generally

23  relate to "false or misleading" advertising of food or beverages, but only to preempt state laws

24  that concerned, and were not identical to, more particular aspects of federal food labeling

25  ─────────────────
    [1] That section provides that "A food shall be deemed to be misbranded--

26  (a) False or misleading label. If (1) its labeling is false or misleading in any particular, or (2) in
27  the case of a food to which section 411 [21 USCS § 350] applies, its advertising is false or
    misleading in a material respect or its labeling is in violation of section 411(b)(2) [21 USCS §
28  350(b)(2)]."

regulation.  *See Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.,* 642 F. Supp. 2d 1112, 1122 (C.D. Cal. 2009) ("there is no preemption language under § 343-1 which addresses a false or misleading label or, for that matter, the breadth of issues indicated by an unfair competition law"); *Hitt v. Arizona Bev. Co., LLC*, 2009 U.S. Dist. LEXIS 16871 (S.D. Cal. Feb. 4, 2009), at *12 (claim that beverages were mislabeled as "natural" and as containing fruit did not "fall within the NLEA's express preemption provisions.")  Indeed, in a case involving these Defendants, *Hansen Beverage Co. v. Innovation Ventures LLC, supra* (Safier Reply Decl., Ex. B), the Court rejected their preemption argument, concluding that certain state law claims that imposed requirements "of the type" in the listed sections were not preempted because they were "identical" to the federal law, and other state law claims were not preempted because they imposed no requirements "of the type" in the listed sections.  *See id.* at 20 ("As to the remaining Sherman Law provisions … which Living Essentials concedes are not "identical to" federal requirements, Hansen does not provide any support for its contention that these provisions fall within the preemptive scope of Section 343-1.")

     *Pom Wonderful v. Ocean Spray* was cited in Plaintiff's opening brief, but Defendants do not address it.  Although on point and decided against them personally, Defendants do not even mention *Hansen v. Innovation Ventures,* which rejected all their attacks on *Farm Raised Salmon.  See Hansen v. Innovation Ventures* (Safier Reply Decl. Ex. B) at 21:15-16.  They do attempt to distinguish *Hitt* and *Lockwood, supra,* as well as another case cited by Plaintiff—*Wright v. General Mills, Inc*., 2009 U.S. Dist. LEXIS 90576 (S.D. Cal. Sept. 30, 2009)—on the grounds that those cases challenged use of the terms "natural" or "all natural," terms that, according to Defendants, the FDA elected not to regulate.  But this distinction fails for at least two reasons.

     First, the distinction goes not to "express" preemption, but to "implied" preemption. Defendants' interpretation of the three cases is that because the FDA chose not to regulate the word "natural," it left this field open for state regulation.  They further contend that because the FDA chose to regulate other areas, such as representations about geographic origin, federal law "occupies the field" in those areas.  Implied preemption based on "occupying the field" is not the same as express preemption.  As stated in *Hitt,* "defendants' reliance on the breadth of the FDCA

and FDA's regulatory labeling scheme does not support a finding of express preemption, which requires explicit statutory language preempting Plaintiff's claims." *Hitt,* 2009 U.S. Dist. LEXIS 16871, at *12.

Second, even with respect to implied preemption, which will be further discussed below, when all three courts rejected the contention that Congress and the FDA had "occupied the field," they did so not primarily because the FDA had chosen not to regulate the word "natural," but because of indicia of Congressional intent against preemption in general.   For example, *Lockwood* held that there could be no implied preemption because the language and legislative history behind 21 U.S.C. § 343-1 showed an intent not to have implied preemption.  *Lockwood*, 597 F. Supp. at 1032 (reciting language of FDCA amendment that statute "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted….")  *Wright* similarly held that "Although the FDA has promulgated several food-labeling requirements, Congress has specifically indicated that it does not intend to occupy the field of food and beverage nutritional labeling…." *Wright,* 2009 U.S. Dist. LEXIS 90576, at *6.  And *Hitt* explained that "The existence of the NLEA's express preemption provisions supports a reasonable inference that Congress did not intend to pre-empt other state law claims that are not included in the express preemption provisions." *Hitt*, 2009 U.S. Dist. LEXIS 16871, at *9 (internal quotation marks, brackets and ellipses omitted).  It is well-established that "if Congress includes an express preemption provision in a statute, the inclusion of this provision 'implies—*i.e.,* supports a reasonable inference—that Congress did not intend to pre-empt other matters' beyond the provision's reach." *Pom Wonderful v. Ocean Spray,* 642 F. Supp. 2d at 1121 *quoting Freightliner Corp. v. Myrick,* 514 U.S. 280, 288 (1995); *accord Wright,* 2009 U.S. Dist. LEXIS 90576, at *6; *Lockwood,* 597 F. Supp. 2d at 1032; *Hitt,* 2009 U.S. Dist. LEXIS 16871, at *12.[2]

---

[2] Moreover, in *Hitt and Lockwood*, the courts recognized that the FDA *did* have a policy, though not a regulation, regarding the term "natural"--"[t]he FDA follows a policy of not taking enforcement action charging that a product labeled as 'natural' is misbranded, as long as the product has no 'added color, synthetic substances, and flavors.'" *Hitt*, 2009 U.S. Lexis 16871, at *10, *citing* 58 Fed. Reg. 2407; *accord Lockwod,* 597 F Supp. at 1033, *citing* 56 Fed. Reg. 604121-01 (1991).

**b.**   **Even If The State Laws Under Which Plaintiff Sues Impose Requirements "Of The Type Required" By The Enumerated Sections of the FDCA, The State Laws Are "Identical" To The FDCA.**

The second reason there is no express preemption in this case is that even if the state laws invoked by Plaintiff do overlap with enumerated requirements of the FDCA, those laws are "identical" to the FDCA as that term has been construed.  Defendants argue that the state laws are not "identical" to the FDCA because they have different wording, but this is not what the term means.  "The term 'identical' does not refer to the specific words used in the state requirement, but to the direct and indirect effects of the requirement." *Vermont Pure Holdings, Ltd. v. Nestle Waters North America, Inc.*, 2006 U.S. Dist. LEXIS 13683 (D. Mass. 2006), at *22, *citing* 21 C.F.R. § 101.1(c)(4); *accord In re Pepsico, Inc.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008).  Indeed, the FDA has expressly determined that:

> "Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that:
>
> (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or
>
> (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R. § 100.1(c)(4).  In other words, state laws are only "not identical" to the FDCA if they impose *additional* or *different* requirements from the FDCA or its implementing regulations.  *Id.*

Defendants' response to this argument seems to be that the Court is precluded from determining whether the state laws are in fact "identical" to the FDCA and FDA regulations, because doing so would require it to interpret the regulations, and by interpreting the regulations it would be interfering with the FDA's authority.  This argument is circular, and unsupportable. A court *must* determine whether the state laws are "identical to" (*i.e.* not different from or more onerous than) the enumerated provisions of the FDCA and implementing regulations in order to determine the scope of preemption.  Further, it is a routine role of courts to interpret statutes and

regulations; and nothing in the FDCA divests a court of jurisdiction to fulfill this role.  Indeed, two of the principal cases on which Defendants rely make clear that this Court is required to interpret, and perfectly capable of interpreting, the FDCA and FDA regulations to determine whether the state law claims are "identical."  In *In re Pepsico, Inc.*, 588 F. Supp. 2d 527, for example, plaintiffs alleged that the graphics on defendants' Aquafina water bottles and the language "bottled at the source P.W.S." created a false impression that Aquafina was mountain spring water.  The Court determined that FDA regulations expressly allowed bottled water like Aquafina to state "purified drinking water" without disclosing that the source was a municipal water system and that the regulations imposed no requirements on graphic design elements. Thus, the Court concluded that plaintiffs' claims sought to impose requirements that were in addition to those imposed by federal law, so the claims were expressly preempted by 21 U.S.C. § 343-1.  *Id*. at 537.  Likewise, in *POM Wonderful LLC v. Coca Cola Co*., Case No. CV 08-06237 SJO (FMOx) (C.D. Cal. May 5, 2010), a case that Defendants submitted to the court after filing their opposition (Dkt.# 108-1), the Court concluded that because the defendants were complying with FDA regulations regarding description of mixed juice beverages, the plaintiffs could not pursue a Lanham Act claim to allege that the beverage labels were misleading with respect to their representation of pictures of fruits or the typefaces used, because these claims would impose requirements that were different from and in addition to the FDA regulations.  *Id*. at 33.

The cases that Defendants cite for the proposition that the Court should refrain from interpreting FDA regulations all involve technical matters within the FDA's special expertise, such as drug and medical device approval, typically in the context of ongoing FDA proceedings; the cases expressly distinguish run-of-the-mill disputes involving misrepresentations of fact.  *See infra* note 4.  The reasoning behind the cases is an extension of the doctrine of "primary jurisdiction," which "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency.  The doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the

1   judicial branch." *Pom Wonderful v. Ocean Spray,* 642 F. Supp. 2d at 1112 (*quoting Clark v. Time*

2   *Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).   The doctrine is applied when, among other

3   things, there is a comprehensive regulatory scheme that requires expertise in administration.  *Id.*

4          Here, none of Plaintiff's claims "require the technical expertise within the special

5   competence of the FDA" to interpret the FDCA or regulations at issue.  *Wright*, 2009 U.S. Dist.

6   LEXIS 90576 *9; *accord Pom Wonderful v. Ocean Spray,* 642 F. Supp. at 1123.  As in *Pepsico*

7   and *Pom Wonderful v. Coca Cola,* the requirements of the FDCA and implementing regulations

8   regarding origin statements are simple and clear.  *See* discussion, *infra,* of 21 C.F.R. §§ 101.5 and

9   101.18.  "[T]his is not a technical area in which the FDA has greater technical expertise than the

10  courts," as "every day courts decide whether conduct is misleading."  *Lockwood,* 597 F. Supp. 2d

11  at 1035.  Nor need this Court worry about "the prospect that judges and juries in 50 different

12  states interpreting a precise FDA definition and then imposing injunctions and damages…. will

13  generate inconsistencies in interpretation of the identical provision." *Vermont Pure,* 2006 U.S.

14  Dist LEXIS 13683, at *21).  As the *Vermont Pure* Court explained, "Congress and the FDA

15  appear to have made a conscious choice to allow the several states to regulate bottled water so

16  long as the state standards employed are identical to those adopted by the FDA. The requirement

17  of identity promotes uniformity in that courts in every state look to the same standard. Permitting

18  states to interpret FDA definitions also allows for additional resources to be brought to bear in the

19  enforcement of national standards upon regional and local markets." *Id.* at *21-22.  That Court

20  therefore allowed deceptive advertising claims to proceed *both* as to matters on which the FDA

21  had issued regulations and plaintiffs' claims were not inconsistent with those regulations (the

22  definition of "spring water") *and* as to matters on which the FDA had expressly decided not to

23  adopt regulations (the definition of "pure"), as to which plaintiffs could rely on general principles

24  of false and deceptive advertising.  *See id.* at *19-20, 29-30

25          Turning to the question in this case of whether Plaintiff's state law claims are "identical"

26  to—i.e., not inconsistent with—the FDCA and FDA regulations, it is clear that unlike in *Pepsico*

27  and *Pom Wonderful v. Coca Cola,* they *are* identical, in that none would impose any additional or

28  different requirements than those already imposed by federal law.  As Defendants acknowledge,

21 C.F.R. § 101.18(c) provides that food is misbranded if its label:

> expresses or implies a geographical origin of the food or any
> ingredient of the food except when such representation is either:
>
> (1) A truthful representation of geographical origin
>
> (2) A trademark or trade name provided that as applied to the article
> in question its use is not deceptively misdescriptive….
>
> (3) A part of the name required by applicable Federal law or
> regulation [or]
>
> (4) A name whose market significance is generally understood by
> the consumer to connote a particular class, kind, type, or style of
> food rather than to indicate geographical origin.

21 C.F.R. § 101.18(c). Plaintiff's state law claims are to exactly the same end: they allege that the labels are false and deceptive because they lead consumers to believe that the beverages originate from Santa Fe, which is not true. Defendants respond that they have complied with 21 C.F.R. § 101.18(c)(2) because their use of "Santa Fe" is part of their "trade dress," but nothing in the regulation mentions "trade dress;" the statute only permits use of a geographic term in a "trade name" and even then only if "its use is not deceptively misdescriptive." *Id.* Defendants' "trademark or trade name" is "Blue Sky," not "Santa Fe." Nor can Defendants contend that their reference to "Santa Fe" is a truthful implication of origin, that it is required by federal regulation, or that it would be understood by consumers to relate to a class, kind, type or style of food. *See id.* § 101.18(c)(1), (3)-(4).

Defendants do not mention another important FDA regulation at issue—21 C.F.R. § 101.5, but once again, Plaintiff's state law claims do not seek to impose any "additional" or "different" requirements from that simple, clear regulation. Section 101.5 provides as follows:

> (a) The label of a food in packaged form specify conspicuously the
> name and place of business of the manufacturer, packer, or
> distributor."
>
> * * *
>
> (c) Where the food is not manufactured by the person whose name
> appears on the label, the name shall be qualified by a phrase that
> reveals the connection such person has with such food; such as
> 'Manufactured for --------------', 'Distributed by --------------', or
> any other wording that expresses the facts.

(d) The statement of the place of business shall include the street address, city, State, and ZIP code; however, the street address may be omitted if it is shown in a current city directory or telephone directory.

(e) If a person manufactures, packs, or distributes a food at a place other than his principal place of business, the label may state the principal place of business in lieu of the actual place where such food was manufactured or packed or is to be distributed, unless such statement would be misleading.

21 C.F.R. § 101.5.  There is no dispute that Defendants have failed to include on their packaging their actual principal place of business, which was in Corona, California.

Because Plaintiff's state law claims are not inconsistent with any of these regulations, nor do they seek to impose any additional requirements, there is no express preemption.[3]

**c.      Allowing Private Enforcement Of State Laws That Are "Identical" To The FDCA Does Not Run Afoul Of 21 U.S.C. § 337.**

Defendants launch their next attack from the opposite direction.  They argue that if the state law invoked by Plaintiff is "identical to" the FDCA and FDA regulations, then by attempting to enforce the state law, the Plaintiff is effectively attempting to bring a private action to enforce the federal law and regulations.  The further argue that Plaintiff is precluded from bringing a private action to enforce the federal law or regulations, because Congress did not provide for a private right of action, instead permitting only the United States and the states to bring enforcement actions.  *See* 21 U.S.C. § 337.  Defendant's argument has been repeatedly rejected.

All the cases that Defendant cites for its proposition are ones in which the plaintiff *expressly invoked* the FDCA or an FDA regulation as the basis for the suit.  In those circumstances, courts have rejected the suits, because there is no private right of action under the FDCA or FDA regulations.[4]  But where the plaintiff instead relied on a separate state law that had

---

[3] Plaintiff also make claims based on Defendants' inclusion of "**Santa Fe, New Mexico, U.S.A. (505) 995-9761**" on their website and their reference to New Mexico on various other marketing materials.  These claims cannot be preempted because the FDCA and FDA regulations govern only labeling, not other marketing materials.

[4] For example, in *Perez v. Nidek Co. Ltd.*, 2009 U.S. District LEXIS 78214 (S.D. Cal. Aug. 31, 2009), the Court held that a UCL claim was preempted because the plaintiff had pled violations of

10

the FDCA and FDA regulations as the predicate acts of the UCL violation. *Id.* at *20-21. The court noted, however, that "not all claims that touch upon subject matter regulated by the FDCA are preempted" and that "literally false or misleading statements made to promote drugs or devices are actionable if they do not depend on a determination by the court whether the FDCA has been violated." *Id.* at * 20.

In *Photomedex, Inc. v. RA Medical Systems Inc,* 2007 U.S. Dist. LEXIS 79846 (S.D. Cal. Oct. 29, 2007)*,* the Court held that while section 337 did not preclude a claim "that defendant was marketing [a device] as FDA approved when it was not," it could not pursue a claim that the defendant had committed "fraud on the FDA" by failing to "file additional documents with the FDA to obtain further premarket clearance," as that claim "requires the FDA's scientific expertise and application of FDA regulations." *Id.* at *7-9.

In *Summit Technology, Inc. v. High-Line Medical Instruments Co.*, 922 F. Supp. 299 (C.D. Cal. 1996), the Court rejected plaintiff's claim under the Lanham Act, which alleged that defendants had failed to disclose the "fact" that their modified laser systems lacked FDA approval. *Id.* at 306. The Court noted that the FDA was still in the process of determining whether the modified systems needed further FDA approval, so it could not yet be said that the absence of approval was a "fact." *Id.* The Court accordingly held that plaintiff's claim would require it to "determine preemptively how a federal agency will interpret and enforce its own regulations." *Id.* But it agreed with *Grove Fresh* that "a plaintiff may bring a Lanham Act cause of action for affirmatively misrepresenting facts, even if the truth of those facts may be governed by FDA regulations." *Id.* at 307.

In *Fraker v. KFC Corp.,* 2007 U.S. Dist. LEXIS 32041 (S.D. Cal. Apr. 27, 2007), the plaintiff alleged that KFC's statements about its cooking oil violated various state and federal statutes and regulations pertaining to food and drugs, including the FDCA, California Sherman Act, and FDA regulations. The Court stated that "to the extent Plaintiff contends that alleged violations of the FDCA and Sherman Law give rise to viable state law claims, such claims are impliedly preempted by the FDCA." *Id.* at *11. Subsequent cases have explained that this holding was correct insofar as the plaintiff expressly sought to bring claims under the FDCA and FDA regulations, and that the result would have been different had he merely invoked state law. *See McKinniss v. General Mills, Inc.*, 2007 U.S. Dist. LEXIS 96107 (C.D. Cal. Sept. 18, 2007), at *8-9 n.3 (explaining that Fraker's claims were preempted because he "directly brought FDCA claims against the defendant," while McKinniss' UCL, FAL and other state law claims would not be preempted because they merely alleged that the "packaging and advertising are misleading and create confusion…notwithstanding the product's truthful labeling."); *Farm Raised Salmon Cases,* 42 Cal. 4th at 1097 (same); *Jackson v. Balanced Health Products, Inc.*, 2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009), at *10 (same); *Lockwood,* 597 F. Supp. 2d at 1034 (*Fraker* not persuasive because it failed to discuss effect of FDCA preemption provisions); *Hansen Beverage Co. v. Innovation Ventures LLC* (Safier Reply Decl. Ex. B) at 22:3-4 (combining all of these reasons, plus the fact that *Farm Raised Salmon* was an intervening authority of which the *Fraker* court did not have the benefit.)

In *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282 (C.D. Cal. 2008), the Court dismissed a complaint where the allegations of state law violations were "intertwined" with allegations that the defendant had violated the FDCA by

its own private right of action, the suits were permitted to proceed.  For example, in *Grove Fresh Distrib., Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714 (N.D. Ill. 1989), the court rejected the defendants' argument that the plaintiff's Lanham Act allegations "amount to nothing more than an attempt to recover damages for a violation of the [FDCA]." *Id.* at 715.  The court explained:

> The fact that Grove Fresh refers to or relies on an FDA regulation defining orange juice to support its Lanham Act claim is not grounds for dismissal. Although courts have held that there is no private cause of action under the FDCA, Grove Fresh has not brought suit directly under the FDCA or its accompanying regulations. Grove Fresh relies on the FDA regulation merely to establish the standard or duty which defendants allegedly failed to meet. Nothing prohibits Grove Fresh from using the FDCA or its accompanying regulations in that fashion.
>
> * * *
>
> Even without the FDA regulation defining "orange juice from concentrate," Grove Fresh could attempt to establish a violation of [the Lanham Act]. Grove Fresh would simply need to provide other evidence establishing the proper market definition of "orange juice from concentrate."

*Id.* at 716; *accord Jackson v. Balanced Health Products, Inc.*, 2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009) (rejecting defendants' argument that Sherman Act claim for misrepresentations in labeling of dietary supplements was "an attempt to bring a private cause of action for violations of the FDCA"); *Vermont Pure,* 2006 U.S. Dist. LEXIS 13683 at *22 (holding Vermont Pure's claims about misbranded spring water are not preempted to the extent that they are based on state laws that are not inconsistent with the FDCA, where the state laws provide independent rights of action); *Merchant, et al v. Hueser, et. al.*, 2006 U.S. Dist. LEXIS 54252 (D. Miss. Aug. 4, 2006) (no preemption by 21 U.S.C. § 337 where plaintiffs' state law

engaging in "off-label promotion" of drugs.  *Id.* at 1292.  But it granted leave to amend to state claims that defendants "misrepresented the safety of off-label uses of" the drugs, because, "insofar as Plaintiffs can identify specific representations by Defendants that are literally false, misleading, or contain material omissions, the claims are actionable under…California consumer fraud law."  *Id.*

Finally, in *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983), plaintiff directly sought to sue under the FDCA, and in *Infa-Lab, Inc. v. KDS Nail Int'l*, 2009 U.S. Dist. LEXIS 4509 (E.D. Cal. Jan. 21 2009), plaintiff admitted that its allegations were "solely premised on FDA regulations and other provisions under the FDCA."  *Id.* at *10.

claim was not premised on violation of FDCA and could be proven without proving violation of FDCA).

Plaintiff has not here pled violations of the FDCA or any FDA regulation; his complaint does not once mention federal law.  Nor is he required to prove such violations to establish his claims under the UCL, FAL, CLRA or common law fraud, which are based on the contention that Defendants may not deceive the general public regarding where their product is made or where their company is located.  To state a claim for false advertising under the UCL, FAL or CLRA, a plaintiff must prove only that a marketing statement is "likely to deceive."  *See Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 54 (2003).[5]

The bottom line is that (1) Plaintiff's claims do not seek to impose different requirements than the FDCA or FDA regulations, and (2) Plaintiffs can prove their state law claims without separately proving a violation of federal law.  *See Hansen Beverage Co v. Innovation Ventures* (Safier Reply Decl. Ex. B) at 11:11-12.  Plaintiff's claims are thereby not expressly preempted.

### 2.        Plaintiff's Claims Are Not Impliedly Preempted.

A Congressional intent to preempt state law may also be implied when a federal law demonstrates an intent to "occupy the field" (also known as "field preemption") or if a "state law conflicts with a federal law," (also known as "conflict preemption").  *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000).  Here, there is neither "field" nor "conflict" preemption.

As discussed above, Congress has not intended to "occupy the field" of food and beverage labeling, but rather has expressly set forth a limited, enumerated set of matters that are preempted, and further provided that preemption exists only if the state laws impose different requirements from the federal ones.  As one court has explained, "it would be more accurate to

---

[5] In his class certification motion, Plaintiff also invokes the Sherman Act, Cal. Health & Safety Code § 110675(a), as a predicate for the "unlawful" prong of the UCL.  That section provides that a food is misbranded if its label fails to state "[t]he name and place of business of the manufacturer, packer, or distributor."  Because that section imposes no requirements different from or in addition to 21 C.F.R. § 101.5, it is "identical" to the FDA regulations for purposes of 21 U.S.C. § 343-1, and a violation of the section can be proven without needing to separately prove an FDCA violation.  *See Farm Raised Salmon Cases,* 42 Cal. 4th at 1181.

say the FDCA evidences, far from implied preemption, an instance of implied nonpreemption." *Consumer Justice Ctr. v. Olympian Labs, Inc.*, 99 Cal. App. 4th 1056, 1063 (2002). *See also Wright*, 2009 U.S. Dist. LEXIS 90576 at *6-7 (holding that "Congress has specifically indicated that it does not intend to occupy the field of food and beverage nutritional labeling….") *citing In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1091 ("Congress made clear that the preemptive scope of section 343-1 was to sweep no further than the plain language of the statute itself."); *Lockwood,* 597 F. Supp. 2d at 1032; *Hitt,* 2009 U.S. Dist. LEXIS 16871, at *12.

There is no "conflict" preemption because it cannot be said that "that compliance with both state and federal laws is impossible, or that state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby,* 530 U.S. at 373. Defendants claim that, as "Chavez would have it," they would find themselves caught between "permitted use under federal law" and "forbidden use under California law." (Def. Br. at 9). They offer no basis for this assertion. As discussed above, the obligations that Plaintiff invokes under state law are no broader than or different from those that exist under the FDCA and FDA regulations. Both state and federal law mandate truthful representations about a product's origin and the business location of its manufacturer or the entity under whose authority manufacturing occurs. Allowing Plaintiff to bring his claims here not only presents no "obstacle" to Congress' "purposes and objectives," it helps advance those purposes and objectives.

## III.    CONCLUSION

For the reasons set forth above, this Court should grant summary judgment, or, in the alternative, judgment on the pleadings, in favor of Plaintiff on Defendants' fourth affirmative defense of preemption**.**

DATE:  May 13, 2010                          GUTRIDE SAFIER LLP
                                             ADAM J. GUTRIDE
                                             SETH A. SAFIER
                                             /s/ Seth A. Safier
                                             Seth A. Safier
                                             Attorneys for *Plaintiff*

14

**PROOF OF SERVICE**

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California.  I am employed in the County of San Francisco, where this mailing occurs.  I am over the age of 18 years and not a party to the within cause.

On May 13, 2010, I served the following documents:

**REPLY MEMORANDUM ISO PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY ADJUDICATION PURSUANT TO FED. R. CIV. P. 56(c) OR, IN THE ALTERNATIVE, JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

ON THE FOLLOWING PERSON(S) IN THIS ACTION BY PLACING A TRUE COPY THEREOF AS FOLLOWS:

William Kammer, Esq.
Norman Smith, Esq.
Alison Pivonka, Esq.
Solomon Ward et al
401 B St #1200
San Diego, CA 92101
apivonka@swsslaw.com; nsmith@swsslaw.com;
wkammer@swsslaw.com

[x]      BY ELECTRONIC MAIL.  I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es) via ECF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on May 13, 2010, at San Francisco, California.

/s/Seth A. Safier

_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff