1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 CHRIS CHAVEZ, on behalf of himself and all
other similarly situated,

10 No. C 06-06609 JSW

　　　　　Plaintiff,

11

　　v.

12 **ORDER DENYING MOTIONS FOR**
**SUMMARY JUDGMENT AND**

BLUE SKY NATURAL BEVERAGE CO., et **MOTION TO DECERTIFY THE**

13 al., **ACTION AS A CLASS**

14 　　　　　Defendants.

15 _____/

16 　　　　Now before the Court is the motion for summary judgment filed by Defendants Blue

17 Sky Natural Beverage Co., Hansen Beverage Company and Hansen Natural Corp. (collectively

18 "Defendants"), the motion for partial summary judgment filed by Plaintiff Chris Chavez and the

19 motion to decertify the action as a class action filed by Defendants.  Having carefully reviewed

20 the parties' papers and the relevant authority, and good cause appearing, the Court hereby

21 DENIES the motions for summary judgment and DENIES the motion for decertification.

22 　　　　　　　　　　　　　　　**FACTUAL BACKGROUND**

23 　　　　Defendants develop, market, sell, and distribute beverages including natural or healthy

24 sodas, fruit juices, energy sports drinks, and other beverages under a variety of brand names.

25 (Compl., ¶¶ 20-21.)  In September of 2000, Defendants acquired the Blue Sky natural soda

26 business from the Blue Sky Natural Beverage Co., a company that had been based in and

27 operated from Santa Fe, New Mexico since approximately 1980.  (*Id.* at ¶ 22.)  From that time

28 until at least May of 2006, the Blue Sky containers indicated that they originated from Santa Fe,

1   New Mexico.  (*Id.* at ¶ 24.)  Specifically, the cans and bottles stated "SANTA FE, NEW

2   MEXICO" or "SANTA FE, NM."  (*Id.*)  In addition, every can stated "CANNED FOR THE

3   BLUE SKY NATURAL BEVERAGE COMPANY SANTA FE, NM 87501" or "CANNED

4   UNDER THE AUTHORITY OF BLUE SKY NATURAL BEVERAGE CO., SANTA FE, NM

5   USA."  (*Id.*)  According to Plaintiffs, the packaging of the Blue Sky beverages also has a

6   "particularly Southwestern look and feel" including "stylized Southwestern Indian tribal bands"

7   across the top and bottom and "pictures of what appear to be the Sangre de Cristo mountains

8   that border Santa Fe, New Mexico on the eastern side of the city."  (*Id.* at ¶ 25.)  In addition,

9   until May of 2006, Defendants' website stated "Santa Fe, New Mexico, U.S.A." and listed a

10  phone number with an area code assigned to Santa Fe.  (*Id.* at ¶ 26.)

11          Plaintiffs contend that despite Defendants' representations, Blue Sky beverages are not

12  actually manufactured or bottled in New Mexico.  (*Id.* at ¶ 30.)  Plaintiffs assert that Defendants

13  outsource all manufacturing to third parties, all located outside of New Mexico.  (*Id.*)  In

14  addition, Plaintiffs assert that the Blue Sky Natural Beverage Co. no longer exists in Santa Fe

15  because one month after Hansen's acquisition, the company was dissolved in New Mexico and

16  re-registered with the California Corporation Commission as a Delaware corporation with its

17  principal place of business in Corona, California.  (*Id.* at ¶ 31.)

18          According to the complaint, the named Plaintiff is a former native of New Mexico and

19  has purchased a variety of Blue Sky beverages since he was a child.  (*Id.* at ¶ 27.)  Plaintiff

20  relocated to California in August of 1999 and has continued to purchase Blue Sky beverages

21  "due to the fact that he believed Blue Sky Beverages [sic] where [sic] made in Santa Fe, New

22  Mexico and/or by a company that was located in Santa Fe, New Mexico" and Plaintiff "desired

23  to (i) support a New Mexico company and (ii) to associate himself with a product from Santa

24  Fe, New Mexico."  (*Id.* at ¶ 28.)

25          Plaintiff asserts that he "would not have purchased Blue Sky Beverages had he known

26  where they were really manufactured and/or where the company that owned or controlled the

27  canning of Blue Sky Beverages was located."  (*Id.* at ¶ 36.)  Plaintiff claims that he relied on

28  Defendants' misrepresentations and lost the full value of the price he paid for the Blue Sky

1   beverages which he would not have paid had he known the true geographic origin of the

2   product.  (*Id.* at ¶¶ 10, 13.)[1]

3                          **PROCEDURAL BACKGROUND**

4         Plaintiff, on behalf of himself and those similarly situated, filed a putative class action

5   complaint on September 21, 2006 in San Francisco Superior Court alleging causes of action for:

6   (1) false advertising under California Business and Professions Code § 17500 *et seq.*; (2) unfair

7   trade practices under California Business and Professions Code § 17200 *et seq.*; (3) violation of

8   the Consumers Legal Remedies Act ("CLRA") under California Civil Code § 1750 *et seq.*; and

9   (4) common law fraud, deceit and misrepresentation.

10        Defendants removed the case to this Court and promptly filed a motion to dismiss on

11  several grounds.  This Court granted the motion to dismiss on the basis that Plaintiff had failed

12  to state a cognizable injury.  On appeal, Ninth Circuit Court of Appeals reversed the dismissal

13  and remanded finding that, at the motion to dismiss stage, Plaintiff had alleged sufficient injury

14  as a result of Defendants' purported misrepresentations as he lost the full value of what he had

15  intended to purchase.

16        On remand, Plaintiff filed a motion to strike the affirmative defenses, which the Court

17  denied.  Plaintiff then sought judgment on the pleadings or, in the alternative, summary

18  judgment on the affirmative defense of preemption.  Defendants also sought judgment on the

19  pleadings or, in the alternative, summary judgment on the claim for relief under CLRA.

20  Plaintiff also filed a motion for class certification.  On June 18, 2010, this Court granted

21  Plaintiff's motion for judgment on the pleadings, denied Defendants' motion for judgment on

22  the pleadings, and certified the class.  Defendants filed a request for interlocutory appeal and

23  the Ninth Circuit declined to exercise review of the certification order on August 27, 2010.

24  Defendants also filed a motion for leave to file a motion for reconsideration of the Court's order

25  certifying the Plaintiff class on September 28, 2010.  On November 22, 2010, the Court denied

26  _____

27        [1]  The Court makes its factual findings based on the submitted record, DENIES
    Defendants' motion to strike the already-submitted evidence in the declaration submitted by
    attorney Seth A. Safier and finds that it needs not address Defendants' premature *Daubert*
28  objections to the proposed expert Dean K. Fueroghne.  In addition, the Court GRANTS the
    parties' administrative motions to seal.  (Docket nos. 163 and 168.)

United States District Court

For the Northern District of California

leave to file the motion for reconsideration. On November 11, 2010, Plaintiff filed a motion for summary adjudication of the first two causes of action. That same day, Defendants filed a motion for summary judgment and a motion to decertify the class. On January 31, 2011, this case was reassigned to the undersigned.

The Court shall address specific additional facts in the remainder of this Order.

## ANALYSIS

**A.    Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to, *inter alia*, depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party may also show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id*. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable

4

United States District Court

For the Northern District of California

1   particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,

2   1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995))

3   (stating that it is not a district court's task to "scour the record in search of a genuine issue of

4   triable fact").  If the non-moving party fails to make this showing, the moving party is entitled

5   to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

6   **B.     Defendants' Motion for Summary Judgment.**

7          **1.     Excluded Beverages and Class Members.**

8          Defendants contend that the Court should grant summary judgment with regard to lines

9   of beverages or products that bear no Blue Sky label with an affiliation with New Mexico.

10  Defendants also argue that distributors and retail sellers should be excluded from the class.[2]

11  Plaintiff offers no rebuttal and agrees that these new and unaffiliated beverage lines as well as

12  potential class members have been excluded already and are not subject to liability.

13  Accordingly, the listed new and unaffiliated beverages are not part of this case and, as already

14  found, distributors and retail sellers are not included in the class definition.

15         **2.     Consumers Legal Remedies Act and Fraud Claims.**

16         Defendants contend that the California Consumers Legal Remedies Act ("CLRA") and

17  the fraud claims, Plaintiff's third and fourth causes of action, should be summarily dismissed as

18  Plaintiff fails to offer proof of damages and materiality of the alleged misrepresentations.

19               **a.     Damages.**

20         Plaintiff alleges that he suffered damages as a result of his purchase of beverages that

21  were not actually affiliated with New Mexico.  He contends that Defendants marketed the

22  beverages with Southwestern appeal and were able to charge a premium price as a result.

23  (*See* Declaration of Seth A. Safier, Ex. G at 25:19-23, Exs. S-U.)  Defendants contend that the

24  premium charges were unrelated to the designation of the beverages' affiliation with New

25  Mexico and that Plaintiff is comparing prices in different product markets.  The record presents

26  a dispute of material fact regarding whether and for what reason the subject beverages were set

27

28         [2]  The issue raised in Defendants' motion for summary judgment regarding liability
for beverage product lines produced post-2003 is addressed in the Court's class certification
order with regard to typicality of the plaintiff class.

1    at a premium price.  Accordingly, the Court cannot grant summary judgment as to the damages

2    issue.

3                              **b.      Materiality.**

4              Defendants contend that the materiality standard under both CLRA and the fraud causes

5    of action is judged from the viewpoint of a reasonable consumer.  *See Chamberlan v. Ford*

6    *Motor* Co., 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) ("Materiality is judged by the effect

7    on the reasonable consumer, and this standard applies to CLRA claims.") (citing *Consumer*

8    *Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003)); *see also Sanders*

9    *v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (stating that the materiality standard

10   for claims of common law fraud are judged from the perspective of a "reasonable man").

11   Defendants argue that Plaintiff's idiosyncratic reasons for purchasing beverages from New

12   Mexico cannot be imputed to the reasonable consumer.  However, the significance of the

13   origins of the bottling of these beverages cannot be determined on this record as a matter of law.

14   Materiality, here, as it usually is, a question of fact "unless the fact misrepresented is so

15   obviously unimportant that a jury could not find that a reasonable man would have been

16   influenced by it."  *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010).

17   There is testimony from Defendants that the Southwestern look and feel, including the bottling

18   designation, was important to their marketing of the beverages.  There is testimony from

19   Plaintiff that his decision to purchase these particular beverages arose out of his loyalty to his

20   former state of residence.  The Court cannot find that the representations on the beverages were

21   immaterial as a matter of law.  Accordingly, the Court cannot grant summary judgment as to the

22   materiality issue.  Defendants' motion for summary judgment as to Plaintiff's third and fourth

23   causes of action for violations of the CLRA and for common law fraud is DENIED.

24            **3.      False Advertising and Unfair Competition Claims.**

25            The Court has already determined that is cannot grant Plaintiff's motion for summary

26   judgment on these claims as there are material issues of fact that remain in dispute.  Defendants'

27   contentions in their moving papers that the designation of bottling authority was just miniscule

28   writing and was actually a designation of origin, but merely a part of the trade dress the

**United States District Court**
For the Northern District of California

1   company purchased from Blue Sky is unavailing.  Defendants have not cited, and the Court has

2   not found, authority for the proposition that the city and state where a product is manufactured

3   (or in this case, bottled) can form part of the product's trade dress.

4          The Court is also unpersuaded by Defendants' contention that Plaintiff's responses to

5   interrogatories indicated that he actually purchased the Blue Sky beverages with the New

6   Mexico designation after 2003.  The record establishes that the interrogatory responses simply

7   and mistakenly integrated the dates in reply, were corrected by supplemental responses, and the

8   actual dates of purchase were explained in detail in Plaintiff's deposition.

9          Further, the Court is unpersuaded that Plaintiff has failed to put forth evidence that he

10   suffered damages as a result of his allegedly mistaken purchase of beverages without actual

11   Southwestern affiliation.  As discussed above, the Court cannot determine as a matter of law

12   that the damages claimed of premium prices is unrelated to the alleged misrepresentations or

13   not.  Because the Court finds the record is replete with disputed issues of material fact with

14   regard to damages, the Court cannot grant summary judgment on these claims.

15          **4.      Injunction.**

16          Defendants contend that there is nothing more to enjoin as it has eliminated the words

17   related to Santa Fe, New Mexico on their beverages.  Plaintiff, however, alleges that Defendants

18   still represent that they have canning authority under the name Blue Sky, although the

19   geographic designations have been removed.  The Court finds that, should the representations

20   be the basis for liability, there may be cause for enjoining such representations.  The Court is

21   unpersuaded by the defense of laches as there has been no showing of prejudice caused by the

22   delay.

23   **C.     Plaintiff's Motion for Summary Judgment.**

24          **1.      First Cause of Action for False Advertising Under Section 17500.**

25          Plaintiff claims that Defendants violated California's False Advertising Law ("FAL"),

26   California Business and Professions Code section 17500 *et seq.*

27          Section 17500 provides in relevant part: "It is unlawful for any person, firm, corporation

28   or association ... to make or disseminate or cause to be made or disseminated before the public

in this state ... any statement ...  Which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading."  Section 17500 has been broadly construed to proscribe "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002).  In determining whether a statement is misleading under the statute, "the primary evidence in a false advertising case in the advertising itself."  *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (2006) (citing *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).  "The 'misleading character' of a given representation 'appears on applying its words to the facts.'"  *Id.* (citing *People v. Wahl*, 39 Cal. App. 2d Supp. 771, 774 (1940)).

A private plaintiff bears the burden of producing evidence and demonstrating that "members of the public are likely to be deceived."  *Id.* (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  False advertising under the FAL is governed by the "reasonable consumer" test.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  Under the reasonable consumer standard, a plaintiff must "show that members of the public are likely to be deceived."  *Id.* (quotation marks and citations omitted).  "A 'reasonable consumer' is 'the ordinary consumer acting reasonably under the circumstances' and 'is not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture....'"  *Colgan*, 135 Cal. App. 4th at 682 (citations omitted).

Plaintiff argues that the multiple indications on the cans of Blue Sky soda that the canning and/or product originated in Santa Fe, New Mexico are literally false and therefore inherently misleading.  In *POM Wonderful LLC v. Purely Juice, Inc.*, the Central District of California court, having determined that the misrepresentations regarding the purity of the defendant's juice were literally false, found that deception was therefore presumed under the Lanham Act.  2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008).  The court found that "[t]he fact that [defendant's] false advertising pertained to the very nature of its juice product establishes its materiality."  *Id.* (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts,*

8

United States District Court

For the Northern District of California

1   *Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002)) ("A plaintiff may establish this materiality

2   requirement by proving that the defendants misrepresented an inherent quality or characteristic

3   of the product.")  The Court finds that the presumption of deception found in *POM Wonderful*

4   was clearly premised upon the materiality of the literally false representations.  That is, the

5   presumption of deception is warranted where the literally false representation is about an

6   inherent quality or characteristic of the product, and not where the representation is peripheral

7   or would likely be considered immaterial.  Because, here, the issue of materiality, based on the

8   judgment of a reasonable consumer, remains the subject of disputed fact, the Court cannot grant

9   summary judgment as to the first cause of action for false advertisement under Section 17200.[3]

10          **2.      Second Cause of Action for Unfair Competition Under Section 17200.**

11          Plaintiff claims that Defendants violated California's Unfair Competition Law ("UCL"

12   or "Section 17200"), California Business and Professions Code section 17200 *et seq.*, based on

13   Defendants' allegedly "unlawful" business practices.  *See Berryman v. Merit Property*

14   *Management*, 152 Cal. App. 4th 1544, 1554 (2007) (holding that the 'unlawful' prong of the

15   UCL "borrows violations of other laws ... and makes those unlawful practices actionable.")  The

16   unlawful prong of the UCL prohibits "anything that can properly be called a business practice

17   and that at the same time is forbidden by law."  *Cel-Tech Communications, Inc. v. Los Angeles*

18   *Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999).  By proscribing unlawful business

19   practices, the UCL permits injured consumers to "borrow" violations of other laws and treat

20   them as unfair competition that is independently actionable.  *Id.*  A practice may be actionable

21   under the UCL "if it violates any law civil or criminal, statutory or judicially made, federal,

22   state or local."  *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1474 (2006)

23   (citations omitted).  Plaintiff maintains that Defendants' business practices are unlawful because

24   they violation Section 17500, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

25

26          [3] The Court is not persuaded by Defendants' contentions that the label on the canned
beverage, normally placed on the shelves facing away from the consumer, does not constitute
27   an advertisement.  *See Nagel v. Twin Laboratories, Inc.*, 109 Cal. App. 4th 39, 51 (2003)
(finding that list of product's ingredients on the label was subject to provisions of California
28   Business and Professions Code 17200); *see also Williams v. Gerber Products Co.*, 523 F.3d
934, 936 (9th Cir. 2008) (finding product packaging subject to Section 17200).

1    because they constitute misbranding under the Food, Drug and Cosmetic Act ("FDCA"), 21

2    U.S.C. § 343.

3                   **a.      UCL Liability Premised Upon Violation of Section 17200.**

4           As the Court has already found that it cannot grant summary judgment on the Plaintiff's

5    cause of action under Section 17500, there is no viable claim to grant summary judgment

6    premised upon that liability under Section 17200.

7                   **b.      UCL Liability Premised Upon Violation of the Lanham Act.**

8           Plaintiff alleges that Defendants' practices are unlawful under the UCL because they

9    violate Section 43(a) of the Lanham Act which bars "false or deceptive statements in a

10   commercial advertisement." *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829,

11   834-35 (9th Cir. 2002).  Defendants correctly contend that Plaintiff would not have standing to

12   allege a Lanham Act violation himself as a consumer. *See Barrus v. Sylvania*, 55 F.3d 468, 470

13   (9th Cir. 1995) ("As consumers, [plaintiffs] have alleged neither commercial injury nor

14   competitive injury.  Therefore ... they lack standing.") Defendants contend that Plaintiff cannot

15   sue for unlawful business practices under the UCL where he cannot state a claim under the

16   underlying legal predicate.

17          However, a "plaintiff suing under section 17200 does not have to prove he or she was

18   directly harmed by the defendant's business practices.  An action may be brought by any

19   'person acting for the interests of itself, its members or the general public.'" *Saunder v.*

20   *Superior Court of Los Angeles County*, 27 Cal. App. 4th 832, 839 (1994) (citing Cal. Bus. &

21   Prof. Code § 17204).  While it is "true that a plaintiff may not 'plead around an absolute bar to

22   relief' by recasting the cause of action as a claim under the UCL, ... California courts have

23   repeatedly stated that a plaintiff may bring a UCL claim even when the conduct alleged to

24   constitute unfair competition violates a statute that does not provide a private right of action."

25   *Ferrington v. McAfee, Inc.*, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) (citations

26   omitted).  In order to forestall an action under the UCL, another predicate law's provision must

27   actually bar the action.  *Id.* (citing *Cel-Tech*, 20 Cal. 4th at 183).  "Thus, if a statute indicates

28   that exclusive enforcement authority shall lie with the government and explicitly precludes

**United States District Court**
For the Northern District of California

1   private enforcement, or if a statute expressly provides immunity for the conduct alleged, a

2   plaintiff may not plead around this bar by bringing a claim under the UCL." *Id.*

3   In this claim, however, Plaintiff predicates his UCL allegations on a violation of Section

4   43(a) of the Lanham Act, which permits "private enforcement by individuals and business who

5   have suffered competitive or commercial injuries, and while the courts have determined that

6   standing is limited to such persons, Defendant cites no authority suggesting that this limitation

7   constitutes an express, absolute bar" to recovery. *See id.* at *15. Accordingly, the Court finds

8   that Plaintiff may predicate their UCL claim on the Lanham Act although they have no

9   independent right of action under the Lanham Act itself.

10  Nevertheless, the Court finds that Plaintiff has failed to demonstrate that the undisputed

11  facts in the record establish that Defendants' conduct is unlawful under the Lanham Act's

12  provisions. Section 43(a) provides a federal cause of action for false advertising and requires a

13  prima facie showing that "(1) the defendant made a false statement either about the plaintiff's or

14  its own product; (2) the statement was made in a commercial advertisement or promotion; (3)

15  the statement actually deceived or has a tendency to deceive a substantial segment of its

16  audience; (4) the deception is material, in that it is likely to influence the purchasing decision;

17  (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff

18  has been or is likely to be injured as a result of the false statement." *Jarrow Formulas*, 304

19  F.3d at 835 n.4.

20  As the Court has already determined that there remain contested material facts regarding

21  the necessary elements of materiality and damages. The Court cannot grant summary judgment

22  under Section 17200 predicated on alleged violations of the Lanham Act.

23  **c.     UCL Liability Premised Upon Violation of the FDCA.**

24  Lastly, Plaintiff contends that Defendants' practices are unlawful under the UCL

25  because they violate provisions of the Food, Drug and Cosmetic Act. Section 403 of the FDCA

26  provides that a "food shall be deemed misbranded ... [i]f in package form unless it bear a label

27  containing (1) the name and place of business of the manufacturer, packer, or distributor ...." 21

28

United States District Court
For the Northern District of California

1    U.S.C. § 343.  Plaintiff alleges that the Blue Sky cans failed to contain this necessary

2    information accurately.

3          The FDCA, however, provides that "all such proceedings for the enforcement, or to

4    restrain violations, of this chapter shall be by and in the name of the United States."  21 U.S.C.

5    § 337(a).  Because of this express bar on private enforcement and the FDA's exclusive

6    regulatory authority over misbranding of food products, the Court finds Plaintiff may not state a

7    private cause of action under the UCL to attempt to enforce requirements of the FDCA.  *See*

8    *Ferrington*, 2010 WL 3910169, at *15.  Accordingly, the Court cannot grant summary

9    judgment under Section 17200 predicated on alleged violations of the FDCA or any other

10   claimed legal predicate.

11   **D.     Defendants' Motion to Decertify the Class.**

12         **1.     Legal Standard on Motion to Decertify.**

13         Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), an order certifying a class

14   "may be altered or amended before final judgment."  The party seeking decertification bears the

15   burden of demonstrating that certification is no longer proper, in that it no longer meets the

16   Rule 23 requirements.  *See Gonzales v. Arrow Financial Services, LLC*, 489 F. Supp. 2d 1140,

17   1153 (S.D. Cal. 2007).  Any doubts must be resolved in favor of ordering certification.  *Id.* at

18   1154.  The Court must determine whether there are common questions on the merits that can be

19   resolved at trial, not to weigh the evidence.  *See, e.g., Statan v. Boeing Co.*, 327 F.3d 938, 954

20   (9th Cir. 2003).

21         **2.     Factual Changes.**

22         Factually, Defendants contend that there are significant changes in the record regarding

23   Plaintiff's purchase of Blue Sky beverages after 2003.  Defendants contend that Plaintiff

24   admitted in his interrogatory responses that he purchased Blue Sky beverages with references to

25   Santa Fe, New Mexico after he had learned of the actual city of its canning.  Based on this

26   admission, Defendants argue that Plaintiff lacks standing and is therefore unfit to serve as a

27   class representative.  The Court has addressed the mistake in Plaintiff's interrogatory responses

28   and finds this argument unpersuasive.

12

3.     **Legal Changes.**

As a matter of legal changes since the Court ruled, Defendants essentially seek reconsideration, for a second time, of this Court's order dated June 18, 2010 which permitted this action to proceed as a nationwide class action of all purchasers of Blue Sky beverages for a period of four years.  Defendants seek to have the Court reconsider the same legal arguments it has already addressed both in its original certification original order and in its order dated November 22, 2010 denying Defendants' first motion for reconsideration.  Again, Defendants have not demonstrated that reconsideration of the Court's prior rulings is necessary or warranted.

Again, Defendants urge the Court to deny class certification because absent class members lack Article III standing.  Defendants contend that although the California Supreme Court has held that state courts may permit uninjured individuals to pursue UCL actions in state court, so long as the class representative has established standing, the Supreme Court's decision in *In re Tobacco II Cases* did not and could not remove the standing requirements set forth in Article III, including injury-in-fact and causation.  46 Cal. 4th 298, 324 (2009).  The Court does not read *Tobacco II* to hold that a class may include members who have not been injured by a defendant's conduct.  Rather, the *Tobacco II* court held that Proposition 64 "was not intended to, and does not, impose section 17204's standing requirement on absent class members in a UCL class action where class requirements have otherwise been found to exist." *Id.*  This holding appears to be in accord with federal authority construing Rule 23.  Indeed, the *Tobacco II* court relied heavily on federal cases interpreting the requirements of Rule 23.  Thus, it noted that, in general, "standing in a class action is assessed solely with respect to class representatives, not unnamed members of the class." *Id.* at 319 (quoting *In re General Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 310 (S.D. Ill. 2007)).

The *Tobacco II* court also relied on *Vuyanich v. Republic Nat'l Bank of Dallas*, 82 F.R.D. 420 (N.D. Tex. 1979).  In the *Vuyanich* case, the plaintiffs brought race and sex discrimination claims against their employer, and the court originally certified the plaintiffs' proposed class.  The employer subsequently moved to decertify the class or, alternatively, to

United States District Court

For the Northern District of California

1    narrow its scope.  To support its argument, the employer argued that the named plaintiffs only

2    had standing to raise claims that he or she would be able to assert individually.  The court

3    rejected the employer's argument and stated that the employer confused the requirements of

4    Article III with the requirements of Rule 23:

5        In a class action ... the trial court initially must address whether the named
         plaintiffs have standing under Article III to assert their individual claims.
6        If that initial test is met, the court must then scrutinize the putative class
         and its representatives to determine whether the relationship between them
7        is such that under the requirements of Rule 23 the named plaintiffs may
         represent the class.  The trial court generally need not address the final
8        question of whether the class itself, after certification, has standing.  If that
         court, guided by the nature and purpose of the substantive law on which the
9        plaintiffs base their claims, properly applies Rule 23, then the certified
         class must necessarily have standing as an entity.

10

11   *Vuyanich*, 82 F.R.D. at 428; *see also* 1 Newberg on Class Actions § 2:7 (4th ed.) ("In a class

12   action, those represented are, in the words of the Supreme Court, passive members of the class.

13   ...  These passive members need not make any individual showing of standing, because the

14   standing issue focused on whether the plaintiff is properly before the court, not whether

15   represented parties are absent class members are properly before the court."); *Cf. Avritt v.*

16   *Reliastar Life Ins. Co.*, 615 F.3d 1023, 1033-35 (8th Cir. 2010) (noting that if *Tobacco II* is read

17   to permit a single injured plaintiff to represent a class of individuals who might not have a cause

18   of action, "it is inconsistent with the doctrine of standing as applied by federal courts" and

19   noting that "[a]lthough federal courts do not require that each member of a class submit

20   evidence of personal standing, a class cannot be certified if it contains members that lack

21   standing") (internal quotations and citations omitted).[4]

22        The only new legal authority mentioned in the current motion before the Court is the

23   California Court of Appeal decision in *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010).

24   _____

25       [4]    The *Avritt* court upheld the district court's decision to deny a motion to certify
         a class under Section 17200, because it concluded that district court correctly concluded that
26       "issues of individual reliance would ... be relevant to establishing liability."  615 F.3d at
         1034-35.  However, in *Avritt*, unlike in this case, there was not evidence that the defendant
27       engaged in a uniform course of conduct.  *Id.* at 1035.  In addition, the case is not new law,
         but was proffered by Defendants to the Ninth Circuit when it determined not to certify the
28       certification order on appeal, and was briefed before this Court on Defendants' motion for
         reconsideration.

In *Target*, the plaintiff alleged that defendant falsely advertised in a notice on its website that its clothing was made exclusive in the United States, but as the evidence in the record revealed that only 17% of consumers actually saw the notice, and thus a majority of the class members were never exposed to the alleged misrepresentation, the court was mistaken in certifying the class. *Id.* at 926.  Because the evidence in that case conclusively demonstrated that members of the purported class were not actually exposed to the allegedly false advertising, the court determined that the proposed class was overbroad because, based on the evidence presented, "a substantial portion of the class would have no right to recover on the asserted legal claims." *Id.* at 923.

In this matter, there is no evidence before the Court that the consumers of Defendants' beverages were not exposed to the allegedly false labeling.  The only undisputed evidence before the Court is that all of the beverages included in the class definition did, in fact, have the notation that the beverages were canned in or under the authority of a company in Santa Fe, New Mexico.  Although there is dispute of fact as to whether any particular class member may have been affected by the geographic disclosure on the cans or whether the allegedly premium pricing was as a result of the geographic designation, there is no dispute that the proposed class representative alleges both that he purchased the beverages based on the representations on the cans and that he would not have otherwise paid the additional price the particular beverages cost to him.  The Court finds, again, that although *Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution," it "allows a class representative who actually relied on the defendants' misleading advertising campaign to represent other class members who may have lost money by means of the unfair practice."  *See Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632 (2010).  Here, because the evidence in this matter indicates that absent class members were exposed to the same labeling which affected the class representative, there is no basis for decertification of the class.  *See also Stearns v. Ticketmaster Corp.*, --- F.3d ---, 2011 WL 3659354, at *5 (9th Cir. Aug. 22, 2011) (holding that class does not lack standing under Article III where it has not been shown that class members have

15

suffered actual injury in fact connected to the conduct of defendants; case law "keys on the representative party, not all of the class members"). All class members – those who purchased the subject beverages during the time of their alleged mislabeling – were apparently exposed to the labels equally. *See Webb v. Carter's Inc.*, 272 F.R.D. 489, 499-500 (C.D. Cal. 2011) (holding that it was improper to certify a class of consumers under a breach of warranty theory where product did not contain a defect that was substantially certain to result in injury to all class members). The theory of liability in this case is the unfair business practice of mislabeling beverages which, if demonstrated to affect purchasers of the product, should affect all members of the class as defined in this Court's order certifying the class. On this record, the Court cannot decertify the class.

**E.     Defendants' Request to Certify an Interlocutory Appeal.**

In their reply papers, Defendants request that, should the Court deny their motion for decertification of the class, the Court should immediately certify the issue for interlocutory appeal. Pursuant to 28 U.S.C. § 1292(b), the Court has discretion to certify an interlocutory order for appeal when (1) the order involves a controlling issue of law; (2) there is substantial ground for differences of opinion as to that question; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Certification for interlocutory appeal should be applied sparingly and only granted in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation. *See, e.g., Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982); *United States v. Woodbury*, 263 F.2d 784, 788 n.11 (9th Cir. 1959). The party seeking certification of an interlocutory order has the burden of establishing the existence of such exceptional circumstances. *Coopers & Lybrand*, 437 U.S. at 475. A court has substantial discretion to decide whether to grant a motion for certification. *Valdovinos v. McGrath*, 2007 WL 2023505 at *2 (N.D. Cal. July 12, 2007) (citing *Brown v. Oneonta*, 916 F. Supp. 176, 180 (N.D.N.Y. 1996)). The Court concludes that Defendants have not met this burden. Specifically, Defendants fail to demonstrate that granting an interlocutory appeal here would avoid protracted and expensive litigation or that exceptional circumstances

United States District Court

For the Northern District of California

16

exist which warrant an interlocutory appeal.  The Ninth Circuit has already declined to hear this precise issue on appeal.  Accordingly, Defendants' request to certify an interlocutory appeal is DENIED.

       **IT IS SO ORDERED.**

Dated: September 27, 2011



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

17