**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CHRIS CHAVEZ, an individual, on behalf of himself, the general public and those similarly situated<br><br>    Plaintiff,<br><br>    v.<br><br>BLUE SKY NATURAL BEVERAGE CO., a foreign corporation; HANSEN NATURAL CORP., a foreign corporation; HANSEN BEVERAGE COMPANY, a foreign corporation; AND DOES 1 THROUGH 10<br><br>    Defendants | Case No. CV-06-06609 (JSW)<br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: February 24, 2012<br>Time: 9:00 am<br>Place: Courtroom 11, 19th Floor<br>Judge: Hon. Jeffrey S. White |

-1-

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................2

II. BACKGROUND FACTS AND DETAILS OF SETTLEMENT .............................................4

    A. LITIGATION HISTORY................................................................................................4

    B. SETTLEMENT NEGOTIATIONS..................................................................................6

    C. THE PROPOSED SETTLEMENT .................................................................................8

        1. Monetary and Injunctive Relief ............................................................................8

        2. Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards ..........................................................................................................9

        3. Notice ..................................................................................................................9

III. ARGUMENT ....................................................................................................................10

    A. PRELIMINARY APPROVAL IS WARRANTED .......................................................10

        1. The Settlement is Presumed Fair .......................................................................10

        2. Other Factors Also Demonstrate the Fairness of the Settlement ......................11

            a) The Strength of Plaintiff's Case and the Risks of Further Litigation ..................................................................................................11

            b) The Amount Offered in Settlement .......................................................12

    B. THE PROPOSED NOTICE IS ADEQUATE................................................................13

IV. DATES FOR THE FINAL APPROVAL PROCESS...........................................................15

V. CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .................................................................... 14

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). .......................................... 11

*Class Plaintiff v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ................................................. 10

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1974) ................................................................. 13

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. 2008) ............................... 11

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ....................................... 12

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) . 4, 10, 11, 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................. 12

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 13

*Rosenburg v. I.B.M.*, 2007 WL 128232 (N.D. Cal. 2007) ........................................................... 13

*Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 (N.D. Cal. July 30, 2009) .................. 3, 10

*Simpao v. Gov't of Guam*, 369 Fed. Appx. 837 (9th Cir. 2010) .................................................. 13

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D. Cal. 2009) ........................... 13

## RULES

Fed. R. Civ. Proc., Rule 23(c)(2)(B) ............................................................................................. 13

## TREATISES

4 A Conte & H. Newberg, Newberg on Class Actions ("Newberg") (4th ed. 2002) ......................................................................................................................................... 10

7A Wright & Miller, Federal Practice & Procedure (3d ed. 2008) ..................................... 13

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 24, 2012, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 11, 19th Floor, before the Honorable Jeffrey S. White, the parties shall move the Court for an order preliminarily approving a class action settlement between Plaintiff and Defendants as follows:

(1) Preliminary approval of the settlement of this class action as set forth in the class action Settlement Agreement dated January 27, 2012 ("Settlement Agreement" or "Agreement");

(2) Entry of an order directing the dissemination of notice in the form and manner set forth in the Settlement Agreement; and

(3) Setting a Final Approval hearing on May 11, 2012, at 9:00 a.m. or as soon thereafter as the Court's schedule permits. (A copy of the [Proposed] Order For Preliminary Approval is attached to the Settlement Agreement as Exhibit C and submitted separately herewith.)

This Motion is based on Federal Rule of Civil Procedure 23, this notice, the supporting Memorandum of Points and Authorities, the Declaration of Seth A. Safier, and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   INTRODUCTION

This is a proposed global settlement of a class action that has been pending for over five years.  Plaintiff Chris Chavez ("Plaintiff" or "Chavez") and Defendants Monster Beverage Corporation (formerly known as Hansen Natural Corporation), Monster Energy Company (formerly known as Hansen Beverage Company), and Blue Sky Natural Beverage Co. (collectively "Hansen" or "Defendants") have jointly moved for preliminary approval.

Plaintiff filed his complaint on September 21, 2006.  The complaint alleges as follows.  During the Class Period, Defendants included on the side of every Blue Sky beverage the words, "CANNED FOR THE BLUE SKY BEVERAGE COMPANY SANTA FE, NM 87501 USA" or "CANNED UNDER THE AUTHORITY OF BLUE SKY NATURAL BEVERAGE CO. SANTA FE, NM USA www.blueskysoda.com."  On the bottom of every Blue Sky soda can sold during the Class Period, Defendants also stated, "SANTA FE, NEW MEXICO" or "SANTA FE NM."  During the Class Period, Defendants further provided a Santa Fe-based phone number and address on their website, www.blueskybeverages.com, while surreptitiously forwarding all calls and mail to their headquarters in Corona, California.  Defendants then redesigned the cans during the Class Period, and created new cans for newly introduced beverages, to give all of them a "Southwestern look and feel" using imagery indigenous to the Santa Fe region, and Defendants emphasized their supposed connection to Santa Fe and the Southwest in their advertising and promotional materials.  Plaintiff alleges that Defendants' statements and activities were false and misleading and violated state and federal requirements for the labeling of beverages, because during the Class Period, canning authority over the beverages was exercised from Corona, California (not from Santa Fe, New Mexico) by Hansen Beverage Company (not Blue Sky Beverage Company or Blue Sky Natural Beverage Company).

In its defense, Hansen denies that there is any factual or legal basis to Plaintiff's allegations.  Hansen also denies that Plaintiff and any other member of the Settlement Class have suffered damage and that there exists evidence sufficient to support a finding of liability.

The Settlement was reached after extensive litigation including a motion to dismiss, an

appeal to the Ninth Circuit Court of Appeals, a motion to strike, a motion for partial summary judgment on the affirmative defense of preemption, a motion for class certification, a Rule 26(f) petition to the Ninth Circuit Court of Appeals, dissemination of notice to the class, protracted discovery battles, a motion to decertify the class, and cross-motions for summary judgment of liability and damages. Settlement discussions began before the case was filed and continued sporadically throughout the litigation, culminating in several months of intense negotiations leading up to the Settlement.  At the time of Settlement, a pretrial conference and trial were set for June 18, 2012 and July 9, 2012, respectively.

The proposed Settlement provides for cash refunds on a claims-made basis, plus an agreement to continue changes in labeling practices that Defendants implemented after, and as a result of, this litigation.  A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Seth Safier in Support of Motion for Preliminary Approval of Class Action Settlement ("Safier Decl.").  For each Beverage purchased during the Class Period and listed in the Claim Form for which a Settlement Class Member provides valid Proof of Purchase, the Settlement Class Member will receive 50% of the purchase price of the beverage, up to a maximum of $100.00 per Household.  For all Beverages purchased during the Class Period and listed in the Claim Form for which a Settlement Class Member provides no valid Proof of Purchase, the Settlement Class Member will receive an amount equal to 50% of the claimed purchase price of the beverage, up to a maximum of $6.00 per Household.  There is no pre-set limit on the total dollar amount that Defendants are obligated to pay in claims.

As a result of this litigation, Defendants removed all statements of "Santa Fe" and "New Mexico" from their Blue Sky cans and marketing materials, including the Blue Sky website. They have agreed not to reintroduce such references on the beverage labels for at least two years and to comply with applicable labeling requirements regarding geographic representations on non-alcoholic beverages.

The proposed Settlement falls within the standard for preliminary approval. *See Ross v. Trex Co., Inc.*, 2009 U.S. Dist. LEXIS 69633 at *9 (N.D. Cal. July 30, 2009) (standard for preliminary approval is whether proposed settlement is "within range of reasonableness").

Indeed, class settlements that are reached after sufficient discovery and arms-length negotiations are presumed fair. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Numerous other factors also strongly favor the proposed Settlement, including the risks of further litigation and the informed opinion of experienced counsel on all sides who have negotiated (and approved) it based upon their views of the strengths and weaknesses of the claims and defenses. *See id*. (finding that experienced counsel's views regarding settlement are entitled to great weight).

Accordingly, the parties have requested that the Court preliminarily approve the proposed Settlement, order that the proposed Notice be disseminated, and schedule a final approval hearing.

## II.     BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.     LITIGATION HISTORY

On September 21, 2006, Plaintiff filed a Complaint against Defendants in the Superior Court of California, County of San Francisco, Case No. GCG-06-456369, alleging claims for: unfair business practices under California Business and Professions Code sections 17200, *et seq.*; false advertising under California Business and Professions Code sections 17500, *et seq.*; violations of the CLRA; and fraud, deceit and/or misrepresentation.

On October 24, 2006, Defendants removed the case, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. 1332(d), et seq., to the United States District Court for the Northern District of California. On October 31, 2006, Defendants moved to dismiss Plaintiff's Complaint. On November 2, 2006, Defendants moved to transfer the litigation to the District Court for the Central District of California. On April 6, 2007, the Court (Conti, J.) required Plaintiff to submit additional evidence regarding the motion to dismiss, including exemplars of the packaging and information about the locations of manufacture. Plaintiff complied with the order on April 12, 2007. On June 11, 2007, the Court granted Defendants' motion to dismiss and denied the motion to transfer as moot.

On June 22, 2007, Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit from the order of dismissal. After full briefing, the appeal was argued on January 14,

2009. On June 23, 2009, the Ninth Circuit reversed the dismissal and remanded for further proceedings. On remand, Judge Conti recused himself, and the case was reassigned to the Honorable Vaughn Walker.

On July 20, 2009, Defendants answered the Complaint. On July 31, 2009, Plaintiff moved to strike almost all of Defendants' affirmative defenses. In response, Defendants filed an amended answer on September 3, 2009. On September 23, 2009, the Court issued an order to show cause as to why the motion to strike should not be granted as to remaining defenses. On October 19, 2009, the motion to strike was denied.

On December 11, 2009, Plaintiff moved for partial summary judgment regarding Defendants' affirmative defense of preemption. On April 22, 2010, Plaintiff moved for class certification. On May 12, 2010, Defendants filed a motion for summary judgment or judgment on the pleadings. On June 18, 2010, the Court granted Plaintiff's motion for partial summary judgment, granted Plaintiff's motion for class certification, and denied Defendants' motion for summary judgment and judgment on the pleadings. The certified class (hereinafter, the "Class") was defined as:

> All persons who, any time between May 16, 2002 and June 30, 2006, purchased in the United States any beverage bearing the Blue Sky mark or brand.

The class notice, approved by order dated September 24, 2010, confirms that "purchases for purposes of resale are excluded from the Class."

On July 2, 2010, Defendants filed a petition with the United States Court of Appeal for the Ninth Circuit, seeking permission to appeal from the Court's order certifying the class. On July 14, 2010, Plaintiff filed a brief opposing issuance of the petition. On August 27, 2010, the Ninth Circuit denied the petition.

On July 19, 2010, Plaintiff moved to approve his proposed plan of class notice. Defendants moved to stay issuance of class notice pending resolution of the above-mentioned petition to the Ninth Circuit. On July 29, 2010, Defendants also sought leave to seek reconsideration of the order of class certification and further stay of class notice. On September 24, 2010, the Court denied the motion for stay and the motion for leave to seek

reconsideration and approved a plan of class notice. The Court directed that notice be disseminated by "(1) publication in the USA Today, Albuquerque Journal, Santa Fe New Mexican and Las Cruces Sun News; (2) publication on www.gutridesafier.com, www.blueskysodaclassaction.com and www.hansensclassaction .com; (3) a press release issued by Gutride Safier LLP; (4) publication on www.blueskysoda.com and www.drinkbluesky.com"; and (5) "first class mail to 'any retailer or distributor of Blue Sky beverages from May 16, 2002 to the present.'" Notice was disseminated as ordered in the late summer of 2010. No class members opted out of the class.

On November 11, 2010, Plaintiff moved for partial summary judgment of liability on the UCL and CLRA claims. On the same day, Defendants moved for summary judgment on all claims and to decertify the class.

On January 31, 2011, due to the retirement of Judge Walker, the case was reassigned to the Honorable Jeffrey S. White. On September 27, 2011, the Court denied all parties' motions for summary judgment and denied Defendants' motion to decertify the class. On October 21, 2011, the Court set a pretrial conference for June 18, 2012 and trial for July 9, 2012.

Throughout the case, Plaintiff filed motions to compel production and testimony from Defendants and for sanctions, resulting in orders by the Honorable Judge Vaughn Walker, Magistrate Judge Edward Chen, and Magistrate Judge Jacqueline Scott Corley, dated December 17, 2009; December 30, 2009; August 16, 2010; August 25, 2010; December 22, 2010; January 26, 2011; February 1, 2011; April 12, 2011; and October 12, 2011. As a result of these efforts, Plaintiff obtained from Defendants, and ultimately reviewed, tens of thousands of documents as well as answers to hundreds of interrogatories and requests for admission. (Safier Decl., ¶ 4.) He also took more than a dozen depositions of Defendants' employees. (Id.) Plaintiff also engaged in third-party discovery including examining third parties' documents and deposing the founder of the Blue Sky Beverage Company. Plaintiff also retained, and Defendants deposed, an expert witness. (Id.)

**B. SETTLEMENT NEGOTIATIONS**

The proposed Settlement was reached following many rounds of arms-length talks. (Id., ¶

5.) Settlement discussions began six months before the case was filed and led to a full-day mediation on September 11, 2006, before the Honorable Justice Howard Wiener (retired). The mediation was unsuccessful. Over the course of the litigation, the parties periodically held additional settlement discussions, but were not successful. Following the Court's denial of the parties' cross-motions for summary judgment and Defendants' motion to decertify the class, the settlement negotiations intensified. The parties were finally able to reach agreement on terms of a class benefit, notice, and claims administration on December 13, 2011. The parties then discussed attorneys' fees, costs and incentive awards, on which they reached agreement or about December 30, 2011. In the days following the agreement, the formal settlement documents were drafted. At the time of settlement, all counsel had full knowledge of the strengths and weaknesses of the claims and defenses due to the extensive discovery and motion practice that had preceded the settlement talks. (Safier Decl., ¶¶ 5-6.)

Based on their reasoned judgment, Class Counsel believes the proposed Settlement is fair and reasonable and should be approved by this Court. (Safier Decl., ¶ 7.) The evidence obtained in discovery showed that Defendants' labels and marketing materials were false and that Defendants knew of the falsity. In response to Plaintiff's motion for summary judgment, however, the Court ruled that Plaintiff would also need to show that the statements were material to reasonable consumers. Further, both this Court and the Court of Appeal focused on the question of whether class members had paid a "premium" that could be tied to the misrepresentations. Plaintiff and Class Counsel concluded that while it was possible to prove both materiality and a premium, the premium might be quite small, and there was no guarantee of success. Further, any judgment in Plaintiff's favor would likely be appealed. Thus, even in the best case, it could take years to get relief for class members. (Id., ¶ 8.)

With this Settlement, Plaintiff has achieved his desired goal in this litigation—i.e., removal of the "Santa Fe" and "New Mexico" references from Defendants' marketing materials and the Blue Sky beverage cans and a refund of significant amount of the purchase price. (Id.) Plaintiff believes that a refund of 50% of the purchase price (which equates to close to 66% of the wholesale price earned by Hansen) is an exceedingly good result, as good or better than the likely

recovery at trial.  (Id., ¶¶ 7-8.)

Hansen, while continuing to deny all allegations of wrongdoing, also believes the Settlement is in its interest to avoid further expense, inconvenience, and interference with its ongoing business operations.

### C.     THE PROPOSED SETTLEMENT

The Settlement Agreement provides for cash refunds on a claims-made basis.  (Safier Decl., ¶ 2; Ex. 1.)  The Settlement Class comprises all persons who, any time between May 16, 2002 and June 30, 2006, purchased in the United States any beverage bearing the Blue Sky mark or brand.  (Id., Ex. 1.)[1]

Approximately three million cases of Blue Sky beverages were sold during the Class Period, at a wholesale price of approximately $23 million.  It is not known the number of persons or households to whom the Beverages were sold.  It also is not known the total retail price at which the Beverages were sold, but it estimated that the retail amount exceeded $35 million.  Thus, the theoretical maximum amount that Hansen might have to pay is approximately $17.5 million, but this maximum would only be reached in the unlikely event that (1) a claim was filed and Proof of Purchase submitted for every purchase made during the Class Period, and (2) no Household's total purchases exceeded $200.  The true amount likely to be paid in claims is far lower, but is not known.

#### 1.     Monetary and Injunctive Relief

Class members can file a claim for a cash refund pertaining to their Blue Sky beverage purchases during the Class Period.  For each Beverage purchased during the Class Period and listed in the Claim Form for which a Settlement Class Member provides valid Proof of Purchase, the Settlement Class Member will receive 50% of the purchase price of the beverage, up to a maximum of $100.00 per Household.  For all Beverages purchased during the Class Period and listed in the Claim Form for which a Settlement Class Member provides no valid Proof of

---

[1] Excluded from the Settlement Class are Blue Sky distributors and retailers, purchases for purposes of resale, the Honorable Jeffrey S. White, any member of his immediate family, and all persons who timely exclude themselves from the Class.

Purchase, the Settlement Class Member will receive an amount equal to 50% of the claimed purchase price of the beverage, up to a maximum of $6.00 per Household.

Class members will also enjoy changed practices. Defendants no longer place statements of "Santa Fe" and "New Mexico" on their Blue Sky beverages and have removed all references to "Santa Fe" and "New Mexico" from their marketing materials, including the Blue Sky website. Defendants have also agreed, for at least two years following the Effective Date, not to place any references to "Santa Fe" or "New Mexico" on the beverage labels and to comply with applicable laws and regulations regarding geographic labeling on non-alcoholic beverages.

### 2. Administrative Expenses, Attorneys' Fees and Costs, Incentive Awards

As part of the proposed Settlement, Hansen will pay all costs of notice and administration of the Settlement.[2] In addition, Class Counsel will request, and Hansen will not object to, attorneys' fees, expenses and incentive award in the combined total amount of $900,000. This amount was negotiated only after the parties had reached agreement on all terms of the class benefit. Payment will in no way reduce any settlement benefits available to class members. Plaintiff intends to request approval for an incentive award of $10,000 for Plaintiff and $890,000 in fees and costs to Class Counsel. The requested fee award equates to less than half of Class Counsel's lodestar to date. Plaintiff has also spent close to $100,000 on this litigation, including the cost of notice regarding certification of the class. The request for fees, costs and incentive awards will be the subject of a separate motion to be filed at least 35 days before the final approval hearing.

### 3. Notice

Notice of the settlement is to be provided to the class in the same method that this Court previously approved for notice of class certification. (Dkt.# 151.) In particular, notice will be (1) published one time in the *USA Today, Albuquerque Journal, Santa Fe New Mexican and Las Cruces Sun News*, (2) distributed in the form of a press release on a national wire service,

---

[2] If those costs exceed $50,000, either party may terminate the settlement. As of the filing of this motion, the parties were close to retaining a Claim Administrator to perform the notice and administration duties for a flat fee not that does not exceed $50,000.

(3) published on the home page of the Defendants' Websites with a link to the Settlement Website, (4) published on Class Counsel's website with a link to the Settlement Website and (5) sent via first class mail to all retailers and distributors of Blue Sky beverages to whom notice was previously sent (approximately 2000 outlets), with a request that it be publicly posted for viewing by consumers. In addition, the Claim Administrator will establish the Settlement Website, which shall contain the settlement notices, a Contact Information page that includes address and telephone numbers for the Claim Administrator and the Parties, the Settlement Agreement, the signed order of Preliminary Approval, a printable version of the Claim Form, and (when it becomes available) Class Counsel's application for attorneys' fees, costs, expenses and incentive awards.

## III. ARGUMENT

### A. PRELIMINARY APPROVAL IS WARRANTED

Rule 23(e) requires court approval of a class settlement. There is, however, a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiff v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *DIRECTV*, 221 F.R.D. at 526, *citing* 4 A CONTE & H. NEWBERG, NEWBERG ON CLASS ACTIONS ("Newberg") § 11.50 at 155 (4th ed. 2002). At the preliminary approval stage, the Court's role is to determine, on a preliminary basis, whether the settlement is within the range of what might be considered "fair, reasonable, and adequate" to allow notice to the proposed settlement class to be given and a hearing for final approval to be set. *See Ross*, 2009 U.S. Dist. LEXIS 69633 at *9.

#### 1. The Settlement is Presumed Fair

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV*, supra, 221 F.R.D. at 528; 4 Newberg at § 11.24. Before reaching the Settlement, the parties engaged in extensive, highly adversarial factual investigation, which included numerous depositions, document production and interrogatories. (Safier Decl., ¶¶ 4-6.) At time of Settlement, there had been extensive briefing

-10-

and argument, and orders on, virtually all significant legal issues.  Indeed, there had been a written opinion by the Ninth Circuit, plus detailed written opinions of this Court regarding class certification (and decertification) and two rounds of summary judgment.  The parties were fully informed as to the viability of the claims and the risks to both sides if the case did not settle.

The parties negotiated the proposed Settlement in good faith, including months of intense negotiations. (Safier Decl., ¶¶ 5-6.)  Furthermore, counsel for each side, who are experienced class action attorneys, have fully evaluated the strengths, weaknesses, and equities of the parties' respective positions.  (Id.)  Their belief that the proposed Settlement fairly resolves their respective differences is entitled to considerable weight.  *See In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *4 (N.D. Cal. 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *DIRECTV*, 221 F.R.D. at 528 ("great weight" normally given to opinion of counsel regarding class settlement).

### 2. Other Factors Also Demonstrate the Fairness of the Settlement

In addition to being presumptively valid, the settlement meets the "fairness" criteria considered by courts in evaluating class action settlements under Rule 23(e), even in the context of final approval.  Some of these final settlement approval criteria are discussed below.  *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

#### a) The Strength of Plaintiff' Case and the Risks of Further Litigation

These factors survey the potential risks and rewards of proceeding with litigation, to weigh the likelihood of success against the benefits of an immediate settlement. At the time the Settlement was reached, the parties' cross-motions for summary judgment had been denied.  The litigation had been highly contentious, and the parties strongly disagreed on Plaintiff's ability to prove liability and damages.  While Plaintiff is confident in his positions and believe his claims are strong, Class Counsel is also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement.

This uncertainty is highlighted by the fact that Hansen has maintained throughout the litigation that the Blue Sky beverages were not sold at a premium relative to beverages that did not bear the Santa Fe labels. Further, Hansen argued that after the "Santa Fe" and "New Mexico" references were removed in late 2006, there was no decrease in sales or price, thereby establishing that the references were immaterial to customers and had no effect on pricing. While Plaintiff disputes (and has adduced evidence to undermine) Hansen's arguments, it was far from clear how the arguments would be resolved. It also is clear that even before Hansen acquired the Blue Sky company in the year 2000, the beverages themselves were not being manufactured in New Mexico, and that Hansen continued to use the same factories and formulas (ingredients) as had been used before the acquisition. Thus, a jury could determine, as Hansen has argued, that the New Mexico representations were meaningless. (Safier Decl., ¶¶ 7-8.)

### b) The Amount Offered in Settlement

This factor "assess[es] the consideration obtained by the class members in a class action settlement." *DIRECTV*, 221 F.R.D. at 527. "[I]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527,*citing Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Under the proposed Settlement, Settlement Class members are eligible to make claims for cash equal to 50% of the purchase price they paid, up to $100 with proof of purchase or $6 without proof of purchase. While a jury could conceivable require Hansen to refund the entire purchase price paid by every class member, such a result is far from guaranteed. (Safier Decl., ¶ 8.) Further, in a contested proceeding, class members without proof of purchase might not recover anything at all, because they would be unable to substantiate their purchases. It is expected that most class members will no longer have proof of purchase, since the purchases must have occurred before the middle of 2006. Moreover, all class members (and the general public) benefit from Defendants' agreements to remove the "Santa Fe" and "New Mexico"

references from their Beverages and not to reintroduce such terms for at least two years following the Effective Date.

### B.     THE PROPOSED NOTICE IS ADEQUATE

The proposed Notice Plan and Claim Form ("Notice") comports with the procedural and substantive requirements of Rule 23. Under Rule 23, due process requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. Proc., Rule 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("individual notice must be provided to those class members who are identifiable through reasonable effort"). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, 2007 WL 128232 at *5 (N.D. Cal. 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement).

The proposed notice plan contemplates disseminating notice to the Settlement Class Members in the same manner as the class was originally notified of certification. (Dkt.# 151.) Specifically, notice will be disseminated by (1) publication in the *USA Today, Albuquerque Journal, Santa Fe New Mexican and Las Cruces Sun News*; (2) publication on Class Counsel's website, www.gutridesafier.com, (3) publication on Defendants' wesites, www.blueskysoda.com and www.drinkbluesky.com, (4) publication on the settlement website; (5) a press release on a nationwide wire service; and (6) first class mail to approximately 2000 retailers and distributors of Blue Sky beverages who were sent the original class notice. (Safier Decl., Ex. 1.)

This multi-communication method remains the best notice practicable and is reasonably designed to reach the Settlement Class Members. The notice plan is the same one the Court previously approved. (Dkt.# 151.) As the Court already has found, it is consistent with notice plans approved by numerous state and federal courts and is, under the circumstances of this case, the best notice practicable. *See, e.g.*, *Simpao v. Gov't of Guam*, 369 Fed. Appx. 837, 838 (9th Cir. 2010) (notice plan was "best notice practicable" where direct notice was mailed to class members

-13-

and supplemented by published notice in multiple media outlets); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126-27 (E.D. Cal. 2009) (direct mailed notice supplemented by published notice in newspapers of general circulation in areas and languages designed to reach potential class members provided "best possible notice" to class members of settlement); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 56-59 (2008) (emailed summary notice directing class members to settlement website satisfied due process requirements).

The proposed published notice informs Class Members about the proposed Settlement; their right to opt out or object; the need to file a claim; a summary of settlement benefits; the prospective request for attorneys' fees, costs and incentives; and the fact that they will be bound by the judgment if they do not opt out. It refers them to the Settlement Website where they can obtain the long-form notice, which further provides details about the case and the settlement, the procedures for opting out or objecting, a fuller discussion of the release, and methods to obtain additional information. The Settlement Website also contains a copy of the full settlement agreement and will contain the fee application when filed. (Safier Decl., Ex. 1.)

Settlement Class Members who seek benefits under the Settlement simply need to download, print and complete a Claim Form, sign it in ink, and send it in via first class mail during the Claim Period. On the Claim Form, the Settlement Class Member must certify the following under the penalty of perjury:

1. Class Member's name and physical address;
2. For each purchase on which a claim is submitted:
   The type or name, and flavor, of the Beverage purchased;
   The quantity purchased;
   The price paid;
   The month and year of purchase;
   The name of vendor;
   The city where the purchase was made;
3. A statement that the Class Member would not have purchased the Beverage if the Class Member had known that the Beverage was not from Santa Fe,

    New Mexico and was canned under the authority of a company based in
    Corona, California and t that the Class Member has not previously received
    any credit or refund for the claimed purchase(s).

(Id.)  Each of these requirements is reasonably directed to ensuring that the claimants are class members and that they actually made qualifying purchases during the class period. Because the parties have no records that would show if a particular person is a class member, and because cash benefits are being provided even without proof of purchase, the claim form is reasonably designed to avoid fraudulent claims.

## IV. DATES FOR THE FINAL APPROVAL PROCESS

Plaintiff request that in connection with preliminary approval, this Court set a date for a final approval hearing to consider the fairness of the Settlement and to hear any comments from the Settlement Class Members, as well as dates for mailing and publishing Notice and deadlines for objections and opting out of the Settlement Class.  Plaintiff proposes the following schedule:

| Item | Due Date |
| --- | --- |
| Initiate Notice | 14 days after Preliminary Approval |
| Motion for Final Approval; Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award | 35 days before Final Approval hearing |
| Objections, Requests to Appear, Requests to Intervene; opt-outs | 21 days before Final Approval hearing |
| Replies in support of Final Approval and motion for attorneys' fees, costs and incentive awards; response to objections and requests to intervene | 14 days before Final Approval Hearing |
| Final Approval Hearing | May 11, 2012 |
| Claims | 30 days after Final Approval |

## V. CONCLUSION

For the foregoing reasons, Plaintiff requests that this motion for preliminary approval be granted.

DATE:  January 30, 2012

| | |
|---|---|
| 1 | GUTRIDE SAFIER LLP |
| 2 | /s/ Adam Gutride |
| | Adam Gutride |
| 3 | Seth A. Safier |
| | Attorneys for Plaintiff |

**PROOF OF SERVICE**

I, Seth A. Safier, declare:

My business address is 835 Douglass Street, San Francisco, California. I am employed in the County of San Francisco, where this mailing occurs. I am over the age of 18 years and not a party to the within cause.

On January 30, 2012, I served the following documents:

**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**DECLARATION OF SETH A. SAFIER IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**[PROPOSED] ORDER GRANTING UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

on the following person(s) in this action by placing a true copy thereof as follows:

William Kammer, Esq.
Norman Smith, Esq.
Alison Pivonka, Esq.
Solomon Ward et al
401 B St #1200
San Diego, CA 92101
apivonka@swsslaw.com; nsmith@swsslaw.com; wkammer@swsslaw.com

[x]   BY ELECTRONIC MAIL. I caused said documents to be transmitted by electronic mail to the email address indicated after the address(es).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on January 30, 2012 at San Francisco, California.

/s/Seth A. Safier
_____
Seth A. Safier, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff